Jeremy A. Fielding, *pro hac vice* admission pending
Texas Bar No. 24040895
jfielding@lynnllp.com
Jonathan D. Kelley, *pro hac vice* admission pending
Texas Bar No. 24090202
jkelley@lynnllp.com
ccowan@lynnllp.com
LYNN PINKER COX & HURST, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800

Daniel E. DeCicco
New York Bar no. 4669925
ddecicco@deybllp.com
DARGER ERRANTE YAVITZ & BLAU LLP
116 East 27th St., 12th Floor
New York, NY 10016
(212) 452-5300

Attorneys for Plaintiff, Aptive Environmental, LLC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
**CENTRAL ISLIP DIVISION**

| | | |
|---|---|---|
| **APTIVE ENVIRONMENTAL, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **NO. 2:19-cv-03365** |
| | § | |
| **VILLAGE OF EAST ROCKAWAY,** | § | |
| **NEW YORK** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S AMENDED VERIFIED COMPLAINT AND REQUEST FOR**
**DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES**

Plaintiff Aptive Environmental, LLC ("Aptive" or "Plaintiff") brings this Amended Complaint against the Village of East Rockaway (the "Village") for a Declaratory Judgment, Injunctive Relief, and Damages, and seeks as follows:

(1)     a declaration that the Village's solicitation ban, found in Section 171-14 of the Village Code (the "Solicitation Ban" or "Ban"), violates the First-Amendment commercial speech rights of Aptive, others similarly situated, and Village residents, both facially and as applied;

(2)     a declaration that the Village's 5:00 p.m. Solicitation Curfew (§171-18) violates the First-Amendment commercial speech rights of Aptive, others similarly situated, and Village residents, both facially and as applied;

(3)     a declaration that the Village's $2,500 Solicitor Bond Requirement (§171-16) violates the First-Amendment commercial speech rights of Aptive, others similarly situated, and Village residents, both facially and as applied;

(4)     preliminary and permanent injunctions barring enforcement of the Solicitation Ban, Curfew and Bond Requirement; and

(5)     damages in the form of lost earnings, lost profits, and other consequential damages caused by the Village's Solicitation Ban, Curfew and Bond Requirement.

## NATURE OF THE CASE

1.     Aptive brings this action for a declaratory judgment, damages, and injunctive relief to restrain the Village from enforcing its unconstitutional Solicitation Ban, Solicitation Curfew, and Solicitation Bond Requirement, found at Village Code §§ 171-14, 171-18 and 171-16,

respectively.[1] The Ban, Curfew and Bond Requirement infringe the First Amendment commercial speech rights of Aptive and other businesses and individuals similarly situated. The Ban, Curfew and Bond Requirement separately deprive Village citizens of their First Amendment right to receive information. Aptive therefore brings this action to prevent the Village from acting to deprive Aptive, similarly situated persons, and residents of the Village of rights and privileged secured to them by the free speech provisions of the United States Constitution.

## JURISDICTION

2.     Aptive brings this action to redress the Village's deprivations of its commercial speech rights under the First and Fourteenth Amendments of the U.S. Constitution.

3.     Jurisdiction is therefore conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983.

## VENUE

4.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Aptive's claims occurred in the Eastern District of New York.

## DECLARATORY RELIEF

5.     Under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, this Court has authority to enter the declaratory relief sought by Aptive.

6.     Aptive is entitled to recover its reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

---

[1] The relevant sections of the East Rockaway Village Code are attached as <u>Exhibit A</u>. Aptive requests the Court to invalidate and enjoin enforcement of Code §§ 171-14, 171-18 and 171-16.

---

## PARTIES

7.      Plaintiff Aptive Environmental, LLC is a limited liability company organized under Utah law having its principal place of business in Utah. Affidavit of P. Baldwin, attached hereto as Exhibit B, ¶ 3.  Aptive intends to engage in activities regulated by Village Code §§ 171-14, 171-16, and § 171-18 (the "Code").  *See id.*

8.      Defendant, the Village of East Rockaway, New York, is a municipal corporation of the State of New York. The Village may be served by delivering a copy of the summons and of this complaint to the mayor, administrator, clerk, or deputy clerk of such corporation.

## FACTUAL ALLEGATIONS

### Aptive's Interest in Door-to-Door Solicitation

9.      Aptive is a large residential pest control services company with offices throughout the United States.  Aptive conducts or seeks to conduct business in municipalities throughout New Jersey, including the Village. Ex. B, ¶¶ 4-5.  Aptive's sales are made almost exclusively through door-to-door solicitation. *Id.* ¶ 5.

10.     During its annual summer selling season, Aptive typically solicits door-to-door between the daylight hours of 10:00 a.m. and dusk.  *Id.*  Most of Aptive's sales, however, occur after 5 p.m. because most residents have work, school, or other activities that keep them away from their homes during typical working hours.  Accordingly, ordinances that impose solicitation curfews affecting evening hours have a direct and substantial impact on Aptive's business, its employees, and its Sales Representatives.  *Id.* ¶ 7.

**The Solicitor Permit Ordinance of East Rockaway**

11.     The Village adopted its ordinance regulating "Solicitors and Canvassers" on July 27, 1959.  *See generally* <u>Ex. A</u>.  Importantly, the code offers no justification and identifies no state interests ostensibly advanced by the Curfew or Bond.  *Id.*

12.     ***Solicitation Ban*** .   Section 171-14 of the Village Code provides that "[n]o person shall engage in business as a solicitor or canvasser in the village without first obtaining a license therefore." Ex. A, § 171-14.  Notwithstanding this requirement, however, the Village does not maintain any process by which a prospective solicitor can obtain a license. *See generally*, <u>Exhibit J</u>, Supp. Aff. of P. Baldwin.  This provision, therefore, is enforced by the Village as a *de facto* ban on solicitation.

13.     ***Curfew.***  The Code instructs: "It shall be unlawful for any person to enter upon private property for the purpose of peddling or soliciting before the hour of 9:00 a.m. of any day or after the hour of 5:00 p.m. of any day. . ." *Id.* § 171-18.  Depending upon the time of year, the Curfew prohibits solicitation during several hours of daylight in the evening.  For instance, on July 1st of each year, sunset in East Rockaway occurs at 8:29 p.m., and dusk/nighttime[2] begins at 8:59 p.m.  Indeed, during the late spring and summer months of March through September (Aptive's active selling season), the Curfew prohibits between three and four hours of daylight solicitation after 5:00 p.m. each day – and all during the most productive sales hour of the day, when most people have returned home from work.

---

[2] Dusk begins at the end of civil twilight, which occurs "when the center of the Sun is geometrically 6 degrees below the horizon." *See* US Naval Observatory "Rise, Set, and Twilight Definitions" (located at http://aa.usno.navy.mil/faq/docs/RST_defs.php).   Generally, this is 30 minutes after sundown. *See, e.g.,* https://www.timeanddate.com/sun/usa/castle-rock.

14.      **Bond.**  The Code also requires every applicant for a solicitation license who is "not a resident of the [V]illage" to "file with the Village Clerk a surety bond, running to the village in the amount of $2,500 with surety given by a recognized insurance carrier."  *Id.* § 171-16.  The bond must "guarantee[] to any resident of the village that all money paid as a down payment will be accounted for and applied according to the representations of the solicitor and that any property purchased will be delivered in compliance with the representations made by the solicitor."  *Id.*

**The Village Refuses to Repeal or Suspend the Curfew and Bond**

15.      Aptive intends to solicit within the Village during its 2019 sales season. Exhibit B, ¶¶ 3, 8.  Accordingly, counsel for Aptive reviewed the Ordinance and relevant case law on commercial speech restrictions.  This review revealed the existence of the unconstitutional Curfew and Bond.  Accordingly, counsel for Aptive sent a letter to the Village Attorney, John Ryan, on May 20, 2018, specifying these concerns with the constitutionality of the Ordinance.  *See id.* ¶ 4; Exhibit C, Letter from J. Fielding to J. Ryan, dated May 20, 2019; Exhibit D, Affidavit of J. Fielding ¶ 3.  The letter identified the Curfew and Bond as constitutionally infirm and demanded that the Village cease and desist enforcement of these Code sections, or provide assurances of its efforts to do so, within one week of the date of the Letter.  *Id.*

16.      The Village's attorney – John Ryan – emailed back that same day.  Exhibit E, Email chain between J. Ryan and Aptive Counsel dated May 20, 2019.  Based on his previous experience with similarly constitutionally infirm ordinance, Mr. Ryan stated that he would "recommend to the East Rockaway Trustees that they amend their Code the same way Floral Park, Bellerose and other Villages in New York have in response to the same letters sent to them by your firm." *Id.*  He requested that "Mr. Fielding advise whether he thinks that will be necessary." *Id.*  Mr. Fielding

subsequently contacted him and confirmed that such an amendment would avoid the need for a lawsuit. Ex. D, ¶ 6. Mr. Ryan promised to pass his recommendation along to his client and confirm that it had been accepted. *Id.*

17.     Unfortunately, the Village refused to do so. When several days passed without the promised confirmation, Aptive's counsel followed up again, underscoring Aptive's desire to avoid a lawsuit but noting that it also could not wait indefinitely for the Village to act. Exhibit F, email from J. Kelley to J. Ryan, dated June 4, 2019. Accordingly, Aptive notified the Village Attorney that unless it received confirmation of the Village's decision to suspend or repeal the Curfew and Bond by June 6, 2019, it would have no choice but to bring suit and seek a TRO. *Id.* Aptive's counsel sent another follow-up email to Mr. Ryan, emphasizing "how much we wish to avoid litigation with East Rockway — and every other city and town with similarly unconstitutional ordinances," and asking for a call to further discuss. Exhibit G, email from J. Fielding to J. Ryan, dated June 4, 2019. Mr. Ryan responded not by providing the confirmation he'd earlier promised or proposing some other compromise accommodation. Exhibit H, email from J. Ryan to J. Kelley, dated June 5, 2019. Instead, he threatened sanctions if such a lawsuit was filed. *Id.*

18.     Aptive, having attempted—on several occasions over a two-week period—to resolve this matter with the Village, was left with no choice but to file this suit and seek a temporary restraining order.

**Aptive Files Suit, the Court Enjoins the Village's Curfew and Bond, and the Village Refuses to Allow Aptive to Solicit**

19.     On June 6, 2019, Aptive filed a complaint and request for a temporary restraining order ("TRO") to enjoin the Village's enforcement of its Curfew and Bond requirement. The Court

granted Aptive's request for a TRO and signed an Order to Show Cause, enjoining the Village's enforcement of the Curfew and Bond requirements.

20.     After serving the Village with copies of the TRO, counsel for Aptive emailed counsel for the Village, informing him of Aptive's intention to begin solicitation within the Village.  Exhibit K, email from J. Fielding to J. Ryan, dated June 8, 2019.  Counsel for Aptive further noted that he had carefully reviewed the Village's website and had found no application for solicitation. *Id.*  The only condition mentioned in the Code for obtaining a solicitation license, counsel noted, was the payment of a fee ($20/year, per Village Code § 171-17), and as such, counsel assumed that upon payment of the $20 fee a license would automatically issue. *Id.*

21.     Counsel for the Village responded later that same day, asserting that Aptive "is not authorized to [] undertake any soliciting in East Rockaway." *Id.*

22.     Counsel for Aptive sought further clarification from counsel for the Village in no less than three separate emails, asking again what steps the Village required Aptive to take to obtain a solicitation license. *Id.*  Counsel for the Village refused to clarify or otherwise explain, inexplicably concluding that he would "no longer . . . communicate with [Aptive's counsel] by e-mail." *Id.*

23.     With no direction from the Village attorney, on June 11, 2019, Aptive's Long Island branch manager, Pierce Baldwin, brought the Village a check for the total solicitation license fee for each Aptive representative who wished to Solicit in East Rockaway. Ex. J, ¶ 4.  Upon speaking with the clerk, Mr. Baldwin was informed that the Village would not take Aptive's solicitation license payment. *Id.* at ¶ 5.  Mr. Baldwin then asked what steps Aptive needed to take to receive a

solicitation license with the Village and was told that there was no process, and he would need to speak with the Village's counsel, Mr. Ryan. *Id.* ¶¶ 6, 7.

24.     Finally, later on June 11, 2019, the Village's counsel sent counsel for Aptive a Resolution adopted by the Village Counsel on June 10th, formally suspending the issuance of all licenses required under Section 171-14 of the Village Code. *See* Exhibit L, Resolution of Village Council, dated June 10, 2019.  This Resolution only made explicit the apparent purpose of Section 171-14 of the Code: solicitation in East Rockaway is banned in its entirety.


**The Ban, Curfew, and Bond Have Caused Irreparable Harm to Aptive**

25.     Because Aptive is a "Solicitor" as defined by the Code and is therefore subject to the Solicitation Ban, Bond and 5:00 p.m. Curfew, Aptive has suffered — and continues to suffer — significant harm.

26.     *First*, Aptive has lost the ability to exercise its valuable commercial speech rights, and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

27.     *Second*, the Solicitation Ban, Bond and Curfew have caused and will continue to cause significant financial harm to Aptive. The prohibitive amount of the Bond functions as a *de facto* ban on solicitation in the Village.  Aptive has lost and continues to lose thousands of dollars in revenue each day the Bond functionally prevents it from soliciting in the Village of East Rockaway, amounting to tens of thousands of dollars in lost profits.  Ex. B, ¶ 11.  Likewise, because the majority of Aptive's sales are made between 5:00 and 9:00 p.m., even if Aptive was willing and able to post a $2,500 bond for each of its Sales Representatives, the Curfew would

directly and substantially impact its Aptive's revenue and profits. *Id.* Finally, the Solicitation Ban prohibits Aptive from soliciting altogether in the Village, eliminating all exercise of its First Amendment rights in the Village and denying Aptive significant business.

28.     Just as significant, however, are the effects of the Solicitation Ban, Curfew, and Bond Requirement on Aptive's relationship with is customers.  Ex. B, ¶ 11.  Aptive's unique business model is predicated upon establishing a personal and trusting relationship with its customers, getting to know their homes and their individual needs so as to customize and tailor the service it provides. *Id.*  Aptive's and its founder's many years in the industry have underscored that other forms of less personal marketing—including phone solicitation, email campaigns, and web advertisements—are simply not an effective means for establishing or maintaining this necessary personal relationship with its customers. *Id.*

29.     By encumbering Aptive's ability to solicit residents of the Village of East Rockaway in person with a prohibitive Bond, and by prohibiting all commercial solicitation after 5:00 p.m. and now prohibiting commercial solicitation entirely, the Bond, Solicitation Curfew, and Solicitation Ban directly interfere with Aptive's ability to effectively and efficiently serve its current and future customers.  *Id.*, ¶¶ 13-15.

30.     Finally, the Solicitation Ban, Bond, and Curfew substantially restrict the free speech rights of the many residents of the Village of East Rockaway who do not object to post-Curfew door-to-door solicitation and wish to receive Aptive's speech and learn about its services. By restricting the solicitation of such residents, the Village is violating the First Amendment rights of these residents to receive speech.  *See, e.g., City of Watseka v. Illinois Public Action Counsel*, 796 F.2d 1547 (7th Cir. 1986) (observing that door-to-door solicitation restrictions improperly

"derogate the First Amendment rights of [the company] and those of [the City's] residents who would be willing recipients of [the company's] message . . . to the nuisance concerns of those residents who would not be willing listeners").

## COUNT ONE:
## UNCONSTITUTIONAL SOLICITATION BAN, CURFEW, AND BOND REQUIREMENT

31.     Plaintiff restates and re-alleges all prior paragraphs and incorporates the same by reference as if fully set out herein.

32.     On its face and as applied, the Solicitation Ban, Bond and Curfew (as applied to daylight hours between 5:00 p.m. and "Dusk" (30 minutes after sunset)) violate the First and Fourteenth Amendments to the United States Constitution. *See, e.g., Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969) ("[A] law subjecting the exercise of *First Amendment* freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional."); *Project 80's Inc. v. City of Pocatello*, 942 F. 2d 635 (9th Cir. 1991) (rejecting total ban on commercial solicitation); *Vill. of Shaumburg v. Citizens for a Better Env't*, 444 U.S. 620 (1980) (invalidating municipal ordinance that prohibited door-to-door solicitation); *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1231–32 (10th Cir. 2005) (invalidating a $1,000 bond as unconstitutional); *New Jersey Citizen Action v. Edison Township*, 797 F.2d 1250 (3d Cir. 1986) (invalidating 5:00 p.m. and 9:00 p.m. door-to-door curfews); *Wisconsin Action Coalition v. City of Kenosha*, 767 F.2d 1248 (7th Cir. 1985) (invalidating 8:00 p.m. curfew); *City of Watseka v. Illinois Public Action Counsel*, 796 F.2d 1547 (7th Cir. 1986) (invalidating a 5:00 p.m. solicitation curfew); *Association of Community Organizations for Reform v. City of Frontenac*, 714 F.2d 813 (8th Cir. 1983) (invalidating a 6:00

p.m. curfew); *Big Hat Books v. Prosecutors*, 565 F.Supp.2d 981 (S.D. Ind. 2008) (finding $250 fee – even if only paid once – to be an unconstitutional restriction on free speech). The holdings of these cases indicate that the Solicitation Ban, Curfew, and Bond imposed by the Village are unconstitutional.

**COUNT TWO:**
**DECLARATORY JUDGMENT**

33.     Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

34.     Plaintiff has alleged an actual controversy between it and Defendant regarding the constitutionality and enforceability of the Code.  This Court may thus declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.  28 U.S.C. § 2201(a).

35.     Plaintiff requests that the Court declare that the Village's Bond Requirement, Solicitation Ban and Curfew – as applied to daylight hours between 5:00 p.m. and "Dusk" (30 minutes after sunset) – violate the First and Fourteenth Amendments to the United States Constitution both facially and as applied to Aptive.

**COUNT THREE:**
**PRELIMINARY INJUNCTION**

36.     Plaintiff realleges all prior paragraphs as if fully set forth herein.

37.     ***Irreparable Harm.***   The harm, loss, and injury resulting from the Village's enforcement of the Solicitation Ban, Curfew, and Bond Requirement are great, immediate, and irreparable, because Aptive and others similarly situated are being—and will continue to be— deprived of rights secured by the First and Fourteenth Amendments of the U.S. Constitution.

Aptive has been deprived of its commercial speech rights by the Ordinance's enforcement. Infringements of free speech are irreparable injuries *per se*. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

38.    ***Inadequate Remedy at Law.***   No remedy at law suffices to redress Aptive's grievances.  A monetary judgment will not compensate Plaintiff for its loss of constitutionally protected rights.

39.    ***Substantial Likelihood of Success.***   The likelihood of Plaintiff ultimately succeeding on the merits is great, because the actions of Defendant, and the Solicitation Ban, Curfew, and Bond Requirement constitute an infringement upon Plaintiff's First and Fourteenth Amendment rights.

40.    The Bond is unconstitutional. Numerous federal courts have held that a fee cannot be charged if the fee is arbitrary or is a method of preventing free speech from taking place. *See, e.g.*, *Forsyth County, Georgia v. Nationalist Movement*, 505 U.S. 123 (1992); *Big Hat Books v. Prosecutors*, 565 F.Supp.2d 981 (S.D. Ind. 2008) (finding $250 fee – even if only paid once – to be an unconstitutional restriction on free speech); *Ohio Citizen Action v. City of Mentor-on-the-Lake*, 272 F. Supp.2d 671 (N.D. Ohio 2003); *American Target Advertising, Inc. v. Giani*, 199 F.3d 1241 (10th Cir. 2000); *Collin v. Smith*, 447 F.Supp. 676 (N.D. Ill. 1978). Generally, the government may not tax the exercise of a constitutionally protected right. *Ne. Ohio Coalition for the Homeless v. City of Cleveland*, 105 F.3d 1107, 1109 (6th Cir. 1997).  East Rockaway's Bond constitutes precisely such a tax. Further, for a license fee to be permissible under the First Amendment, a municipality may charge *no more* than the amount necessary to cover

administrative costs. *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941) (no constitutional infirmity in license fee limited to expense incident to administration of statute and maintenance of public order in the matter licensed); *Baldwin v. Redwood City*, 540 F.2d 1360, 1371–72 (9th Cir. 1976), *Jacobsen v. Harris*, 869 F.2d 1172, 1174 (8th Cir. 1989). But nowhere does East Rockaway justify the $2,500 fee, and East Rockaway cannot show that each door-to-door solicitor imposes a $2,500 administrative burden to the Village.

41.     The prohibitive amount of the Bond – which must be posted for each Sales Representative – also makes its application unconstitutional because it functions as an effective ban on solicitation.   Bans on commercial solicitation are patently unconstitutional.  *Project 80's Inc. v. City of Pocatello*, 942 F. 2d 635 (9th Cir. 1991) (invalidating a city's ban on commercial solicitation).

42.     Finally, the Bond is unconstitutional because it fails the *Central Hudson* test. Under the U.S. Supreme Court's commercial speech jurisprudence, it is East Rockaway's burden to show that the Bond is narrowly tailored and advances substantial governmental interests. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980). Courts have invalidated ordinances where the government failed to set forth "objective evidence" demonstrating that the restrictions were narrowly tailored to serve the interests asserted. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51-52 (1986) (evidence relied upon by city in enacting ordinance abridging First Amendment rights must be "reasonably believed to be relevant to the problem that the city addresses"); *White River Amusement Pub, Inc. v. Town of Hartford*, 481 F.3d 163, 171–72 (2d Cir. 2007) (town relied on insufficient evidence of secondary effects of nude dancing when enacting public indecency ordinance); *Klein v. City of San Clemente*, 584 F.3d

1196, 1201–04 (9th Cir. 2009) (city enacting leafleting ordinance failed to provide any evidence that placing leaflets on cars resulted in litter, much less more-than-minimal amount of litter); *Krantz v. City of Fort Smith*, 160 F.3d 1214, 1221–22 (8th Cir. 1999) (no factual basis existed for concluding cause-and-effect relationship between placement of leaflets on parked cars and litter that impacted health, safety, or aesthetic well-being of City). The Tenth Circuit recently invalidated a $1,000 bond on precisely this basis, which is much lower than the Village's $2,500 bond. *Pac. Frontier*, 414 F.3d at 1231–32.

43.     The Village's Curfew is unconstitutional under the Supreme Court's affirmation of *City of Watseka v. Illinois Public Action Counsel*, 479 U.S. 1048 (1987), and the decisions of at least five circuit courts in *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564 (6th Cir. 2012); *City of Watseka v. Illinois Public Action Counsel*, 796 F.2d 1547 (7th Cir. 1986); *New Jersey Citizen Action v. Edison Township*, 797 F.2d 1250 (3d Cir. 1986); *Wisconsin Action Coalition v. City of Kenosha*, 767 F.2d 1248 (7th Cir. 1985); *Association of Community Organizations for Reform v. City of Frontenac*, 714 F.2d 813 (8th Cir. 1983). Each of these courts invalidated daylight curfews.

44.     The daylight Curfew is also unconstitutional on its face, violating the First Amendment rights of (1) other persons wishing to solicit in East Rockaway during the daylight hours between 5:00 p.m. and Dusk and (2) residents of East Rockaway who do not object to post-5:00 p.m., daylight, for-profit commercial solicitation and have the constitutionally protected First Amendment right to receive that speech. *See*, *e.g., Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 565 (2001) ("A speech regulation cannot unduly impinge on the speaker's ability to propose a commercial transaction and the adult listener's opportunity to obtain information about

products."); *Virginia Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 756-57 (1976) ("If there is a right to advertise, there is a reciprocal right to receive the advertising."); *In re Express-News Corp.*, 695 F.2d 807, 809 n.2 (5th Cir. 1982) (observing that "[t]he public right to receive information has been repeatedly recognized and applied to a vast variety of information").

45.     The Solicitation Ban is unconstitutional. In a series of decisions, the Supreme Court and five federal circuit courts have uniformly held that municipal ordinances prohibiting door-to-door solicitation are unconstitutional. *See Project 80's Inc. v. City of Pocatello*, 942 F. 2d 635 (9th Cir. 1991) (rejecting total ban on commercial solicitation); *City of Watseka v. Illinois Public Action Council*, 479 U.S. 1048 (1987) (affirming that 5:00 p.m. curfew was unconstitutional); *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564 (6th Cir. 2012) (invalidating 6:00 p.m. curfew); *City of Watseka v. Illinois Public Action Counsel*, 796 F.2d 1547 (7th Cir. 1986) (invalidating 5:00 p.m. curfew); *New Jersey Citizen Action v. Edison Town*, 797 F.2d 1250 (3d Cir. 1986) (invalidating 5:00 p.m., 6:00 p.m. and sunset curfews); *Wisconsin Action Coalition v. City of Kenosha*, 767 F.2d 1248 (7th Cir. 1985) (invalidating 8:00 p.m. curfew); and *Association of Community Organizations for Reform v. City of Frontenac*, 714 F.2d 813 (8th Cir. 1983) (invalidating 6:00 p.m. curfew).

46.     The Ban is also unconstitutional on its face, violating the First Amendment rights of (1) other persons wishing to solicit in East Rockaway during the daylight hours until Dusk and (2) residents of East Rockaway who do not object to daylight, for-profit commercial solicitation until Dusk and have the constitutionally protected First Amendment right to receive that speech. *See*, *e.g., Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 565 (2001) ("A speech regulation cannot

unduly impinge on the speaker's ability to propose a commercial transaction and the adult listener's opportunity to obtain information about products."); *Virginia Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 756-57 (1976) ("If there is a right to advertise, there is a reciprocal right to receive the advertising.");  *In re Express-News Corp.*, 695 F.2d 807, 809 n.2 (5th Cir. 1982) (observing that "[t]he public right to receive information has been repeatedly recognized and applied to a vast variety of information").

47.     The Curfew and Ban fail the *Central Hudson* test for commercial speech regulations. Neither restriction serves any substantial governmental interests. The Village Code offers no purported justifications for a Ban or Curfew. *See generally* Ex. A. The Village has not presented *any* evidence of a threat to privacy or safety posed by commercial solicitation. And even if there were such evidence, the Village cannot show how the Ban and Curfew would serve those interests. The Curfew and Ban apply only to commercial solicitors, *i.e.* persons "soliciting and taking orders for the sale of goods [or] services." Ex. A, § 171-15.  This leaves a broad swath of door-to-door non-commercial solicitation unaffected, including religious, philanthropic, or political canvassing. Such door-to-door solicitation efforts may continue unabated at any time of day or night in the Village. In other words, for residents of East Rockaway who may dislike solicitation after 5:00 p.m. or at any other hour, the Curfew and Ban not end these disruptions. Thus, the Curfew and Ban do not further any interests potentially advanced by the Village. Merely reducing the total number of solicitors does not constitute evidence of furthering safety or privacy. Additionally, there are far less-restrictive ways to advance interests in safety and privacy. The Village Code already permits the posting of "no-soliciting" signs by Village residents, and could likewise pass an ordinance allowing residents to register on a municipal "no knock" list.

48.      *Plaintiff's Interests Balanced Against Those of Defendant and the Public.*

*First,* Defendant will suffer no harm if the Court enjoins enforcement of the Code §§ 171-14, 171-16, and 171-18.  The Code in its current form does not substantially serve a substantial governmental interest.   Moreover, other less-intrusive ways exist to achieve the purported governmental objectives, including by implementing constitutional reasonable background checks of solicitors and creating a Village "no knock" list allowing residents to "opt out" of solicitation. Enforcing the existing aspects of state and federal law address any possible concerns the Village may have with fraudulent business practices.  Conversely, if enforcement of the Code continues, it will work irreparable and immeasurable harm on Aptive's business, chilling its commercial speech and causing it to sustain thousands in damages for each day it is denied the chance to work in the Village.

*Second*, the constitutional right to free speech is the most significant interest involved in this matter.   The public has a strong interest in protecting the pathways of information and safeguarding free expression from governmental encroachment.  The Supreme Court has held that the First Amendment services

> significant societal interests wholly apart from the speaker's interest in self-expression. By protecting those who wish to enter the marketplace of ideas from government attack, the First Amendment protects the public's interest in receiving information. The identity of the speaker is not decisive in determining whether speech is protected. Corporations and other associations, like individuals, contribute to the discussion, debate, and the dissemination of information and ideas" that the First Amendment seeks to foster.

*Pac. Gas & Elec. Co. v. Pub. Utils. Com.*, 475 U.S. 1, 8 (1986) (internal citations and quotations omitted). The public interest lies in protecting the marketplace of ideas through issuance of injunctive relief.

49.     Plaintiff asks the Court to set its application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against the Village, enjoining enforcement of the Ban, Curfew, and Bond, found at Code §§ 171-14, 171-18 and 171-16.

## REQUEST FOR PERMANENT INJUNCTION

50.     Plaintiff asks the Court to set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to permanently enjoin enforcement of Code §§ 171-14, 171-16, and 171-18.

## DAMAGES

51.     As a direct and proximate result of Defendant's passage and enforcement of the Bond, the Solicitation Ban and the Curfew, Plaintiff has suffered: (a) lost earnings, (b) lost profits and other consequential damages, and (c) loss of Plaintiff's First Amendment freedoms.

## PRAYER

52.     WHEREFORE, Aptive respectfully requests that the Court issue:

a.  A preliminary injunction enjoining the enforcement of the Solicitation Ban, Curfew during daylight hours until Dusk, and enjoining the enforcement of the Bond, by Defendant, its agents, and its employees against Plaintiff and others similarly situated;

b.  A permanent injunction enjoining the enforcement of the Solicitation Ban, Curfew during daylight hours until Dusk, and enjoining the enforcement of the Bond, by Defendant, its agents, and its employees against Plaintiff and others similarly situated;

c.  A declaration that the Solicitation Ban, Bond and daylight Curfew violate the First and Fourteenth Amendments of the United States Constitution on their face;

    d.   A declaration that the Solicitation Ban, Bond and daylight Curfew violate the First and Fourteenth Amendments of the United States Constitution as applied to Plaintiff;

    e.   A declaration that Defendant has violated Plaintiff's constitutional rights, and that Plaintiff has suffered damages as a result;

    f.   A judgment awarding Plaintiff its damages caused by Defendant's unconstitutional actions;

    g.   An order requiring Defendant to pay all costs, interest, and attorneys' fees as may be incurred with this civil action pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920; and

    h.   An order providing such other and further relief as the Court deems just and proper and for the purpose of redressing Plaintiff's grievances.

Dated: June 12, 2019

Respectfully submitted,


/s/ Daniel DeCicco
Daniel E. DeCicco, Esq.
DARGER ERRANTE YAVITZ & BLAU LLP
116 East 27th Street at Park Avenue
New York, NY  10016
212 452-5300

Jeremy A. Fielding
*pro hac vice* admission pending
Texas Bar No. 24040895
jfielding@lynnllp.com

Jonathan D. Kelley
*pro hac vice* admission pending
Texas Bar No. 24040895
jfielding@lynnllp.com

**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201

(214) 981-3800

**Attorneys for Plaintiff, Aptive Environmental, LLC**

## VERIFICATION

State of _New York_, County of _Suffolk_

Pierce Baldwin, being duly sworn, deposes and says: I am the
Long Island Brand Manager of Aptive Environmental, LLC, the
plaintiff in this proceeding. I have read the foregoing
allegations of this Verified Amended Complaint and know the
contents to be true from my own knowledge.
I verify under penalty of perjury that the foregoing is true and
correct. Executed on this _12_ day of _June_, 2019.

Pierson Baldwin

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 11, 2019, a true and correct copy of the above and foregoing

**PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** was

filed with the Clerk of the court, and a copy of the summons and complaint were served on

Defendant by electronic service via Pacer.