## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK
## CENTRAL ISLIP DIVISION

| | | |
|---|---|---|
| **APTIVE ENVIRONMENTAL, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **VILLAGE OF EAST ROCKAWAY,** | § | **No. 2:19-cv-03365-SJF-SIL** |
| **NEW YORK,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

---

## PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES

---

Plaintiff Aptive Environmental, LLC ("Aptive" or "Plaintiff") brings this Second Amended Verified Complaint against the Village of East Rockaway (the "Village") for Declaratory Judgment, Injunctive Relief, and Damages, and seeks as follows:

(1)    a declaration that the Village's $200 Solicitation Fee, found at §§ 171-3 and 171-5(A) of the recently amended Village Code (the "Fee"), violates the First-Amendment commercial speech rights of Aptive, others similarly situated, and Village residents, both facially and as applied;

(2)    preliminary and permanent injunctions barring enforcement of the Fee; and

(3)    damages in the form of lost earnings, lost profits, and other consequential damages caused by the Village's Fee.

### NATURE OF THE CASE

---

1.      Aptive brings this action for declaratory judgment, damages, and injunctive relief to restrain the Village from enforcing its unconstitutional $200 Solicitation Fee, found at §§ 171-3 and 171-5(A) of the recently amended Village Code.[1] ***Until September 2019, the Village charged just $20 per annual solicitor license***. Doc. 12-1, at 2-3. But under the recently amended Code, ***the Village now inexplicably charges a $25 process fee and $200 annual license Fee—for each solicitor***.

2.      The Village's prior fee structure displays the new $200 Fee for what it is—a direct tax on First Amendment activity: it is unrelated to administrative costs, and it is designed to ban solicitation in the Village. This intention is clear, considering the $200 Fee is charged only to applicants who *receive* licenses, Ex. R, § 171-3, and thus only to applicants who will be involved in the speech the Village disfavors. Notably, the Village does not charge the same $200 Fee to applicants whose qualifications are reviewed but who are subsequently denied a license to solicit. Those applicants who are denied are not charged the Fee, even though their applications presumably present the same (or greater) administrative, processing, and background-check review burdens as the applications of solicitors who are granted the license. This disparity reveals that the Fee is not designed to defray the cost of legitimate regulations but is instead a punitive measure "collected as a condition to the pursuit of activities whose enjoyment is guaranteed by the First Amendment." *Murdock v. Pennsylvania*, 319 U.S. 105, 114 (1943).

3.      Therefore, East Rockaway cannot credibly argue that the $200 Fee covers administrative costs. Indeed, the Village's Amended Ordinance includes a $25 fee that expressly covers administrative expenses associated with processing the licenses. *See* Ex. R, § 171-3 ("All applications must be accompanied by a twenty-five-dollar process fee payable to the Clerk, Village

---

[1] The relevant sections of the recently amended East Rockaway Village Code are attached as Exhibit R.

of East Rockaway."). Aptive does not challenge this $25 fee because it is ostensibly meant to cover administrative expenses and thus meets the standard articulated by the U.S. Supreme Court. The existence of the $25 fee, however, means there is no administrative basis for the separate $200 Fee paid once an applicant is issued a license.

4.      The $200 Fee infringes the First Amendment commercial speech rights of Aptive and other businesses and individuals similarly situated. The Fee separately deprives Village citizens of their First Amendment right to receive information. Aptive therefore brings this action to prevent the Village from acting to deprive Aptive, similarly situated persons, and residents of the Village of rights and privileged secured to them by the free speech provisions of the United States Constitution.

## JURISDICTION

5.      Aptive brings this action to redress the Village's deprivations of its commercial speech rights under the First and Fourteenth Amendments of the U.S. Constitution.

6.      Jurisdiction is therefore conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983.

## VENUE

7.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Aptive's claims occurred in the Eastern District of New York.

## DECLARATORY RELIEF

8.      Under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, this Court has authority to enter the declaratory relief sought by Aptive.

9.      Aptive is entitled to recover its reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

## PARTIES

10.      Plaintiff Aptive Environmental, LLC is a limited liability company organized under Utah law having its principal place of business in Utah. Aptive intends to engage in activities regulated by Village Code §§ 171-3 and 171-5(A).  *See* Exhibit S, Dec. of Pierce Baldwin, ¶¶ 6, 10, 12.

11.      Defendant, the Village of East Rockaway, New York, is a municipal corporation of the State of New York. The Village may be served by delivering a copy of the summons and of this complaint to the mayor, administrator, clerk, or deputy clerk of such corporation.

## FACTUAL ALLEGATIONS

### A.  Aptive's Interest in Door-to-Door Solicitation.

12.      Aptive is a large pest control services company with offices throughout the country. Aptive's market includes cities throughout the state of New York, including the Village of East Rockaway, New York. Doc. 12-2, ¶ 3.  Aptive's sales are made almost exclusively through door-to-door solicitation by its sales representative agents, *id.*, whom Aptive authorizes to engage in door-to-door solicitation on Aptive's behalf ("Sales Representatives").

13.      Because most residents have work, school, or other activities that keep them away from their homes during typical working hours, more than half of Aptive's sales occur between the hours of 5:00 p.m. and dusk.  *Id.* ¶ 11. Accordingly, ordinances that impose solicitation curfews affecting evening hours have a direct and substantial impact on Aptive's business, its employees, and its Sales Representatives. *Id.* ¶¶ 11-12.

14.      Most of Aptive's Sales Representative travel in multiple states to perform their sales activities. *Id.* ¶ 5. In New York, a typical Aptive Representative might sell in twenty or more municipalities over the course of a given summer. *Id.* It is necessary to sell in numerous locations

---

because many New York communities are relatively small, some with populations numbering only a few thousand. But each of these New York municipalities regulates door-to-door solicitation. *Id.* In fact, nearly every New York municipality where Aptive does business (or seeks to do business) requires solicitors to obtain licenses to solicit. *Id.*

15.     Aptive requires its Sales Representatives to apply for, and receive, solicitation licenses in any city, town, or village that requires solicitors to possess such licenses prior to soliciting. *Id.* ¶¶ 6-7; Ex. S, ¶ 6. Accordingly, ordinances that impose overly burdensome fees have a direct and substantial impact on Aptive's business, its employees, and its Sales Representatives. Ex. S, ¶¶ 10-15.

**B.  East Rockaway Maintained a Restrictive Solicitation Curfew and Bond.**

16.     The Village adopted its ordinance regulating "Solicitors and Canvassers" on July 27, 1959. *See generally* Doc. 12-1. Importantly, the Code offered no justification and identified no state interests ostensibly advanced by the Curfew or Bond.  *Id.*

17.     With respect to the Curfew, the Code instructed: "It shall be unlawful for any person to enter upon private property for the purpose of peddling or soliciting before the hour of 9:00 a.m. of any day or after the hour of 5:00 p.m. of any day. . ." *Id.* § 171-18.  Depending upon the time of year, the Curfew prohibited solicitation during several hours of daylight in the evening.  For instance, on July 1st of each year, sunset in East Rockaway occurs at 8:29 p.m., and dusk/nighttime[2] begins at 8:59 p.m. Indeed, during the late spring and summer months of March through September (Aptive's active selling season), the Curfew prohibited between three and four

---

[2] Dusk begins at the end of civil twilight, which occurs "when the center of the Sun is geometrically 6 degrees below the horizon." *See* US Naval Observatory "Rise, Set, and Twilight Definitions" (located at http://aa.usno.navy.mil/faq/docs/RST_defs.php).  Generally, this is 30 minutes after sundown.

hours of daylight solicitation after 5:00 p.m. each day – and all during the most productive sales hour of the day, when most people have returned home from work.

18.    With respect to the Bond, the Code also required every applicant for a solicitation license who is "not a resident of the [V]illage" to "file with the Village Clerk a surety bond, running to the village in the amount of $2,500 with surety given by a recognized insurance carrier." *Id.* § 171-16.  The bond was required to "guarantee[] to any resident of the village that all money paid as a down payment will be accounted for and applied according to the representations of the solicitor and that any property purchased will be delivered in compliance with the representations made by the solicitor." *Id.*

19.    Aptive's Sales Representatives constituted "Solicitors" as defined by § 171-15 of the Code and were thus subject to both the Curfew and the Bond requirement. Doc. 12-1; Doc. 12-2, ¶¶ 10-12.

**C. The Village Refuses to Repeal or Suspend the Curfew and Bond.**

20.    Aptive has intended to solicit within the Village in 2019. Doc. 12-2, ¶ 8. Accordingly, counsel for Aptive reviewed the Ordinance and relevant case law on commercial speech restrictions. Doc. 12-4, ¶ 3. This review revealed the existence of the unconstitutional Curfew and Bond. *Id.*  Accordingly, counsel for Aptive sent a letter to the Village Attorney, John Ryan, on May 20, 2018, specifying these concerns with the constitutionality of the Ordinance. *See* Doc. 12-3; Doc. 12-4, ¶ 3.  The letter identified the Curfew and Bond as constitutionally infirm and demanded that the Village cease and desist enforcement of these Code sections, or provide assurances of its efforts to do so, within one week of the date of the Letter. Doc. 12-3.

21.    The Village's attorney – John Ryan – emailed back that same day. *See* Doc. 12-5. Based on his previous experience with a similarly constitutionally infirm ordinance, Mr. Ryan

stated that he would "recommend to the East Rockaway Trustees that they amend their Code the same way Floral Park, Bellerose and other Villages in New York have in response to the same letters sent to them by your firm." *Id*. He requested that "Mr. Fielding advise whether he thinks that will be necessary." *Id*. Mr. Fielding subsequently contacted him and confirmed that such an amendment would avoid the need for a lawsuit. Doc. 12-4, ¶ 6. Mr. Ryan promised to pass his recommendation along to his client and confirm that it had been accepted. *Id*.

22.     Unfortunately, the Village refused to do so. When several days passed without the promised confirmation, Aptive's counsel followed up again, underscoring Aptive's desire to avoid a lawsuit but noting that it also could not wait indefinitely for the Village to act. Doc. 12-6. Accordingly, Aptive notified the Village Attorney that unless it received confirmation of the Village's decision to suspend or repeal the Curfew and Bond by June 6, 2019, it would have no choice but to bring suit and seek a TRO. *Id*. Aptive's counsel sent another follow-up email to Mr. Ryan, emphasizing "how much we wish to avoid litigation with East Rockaway — and every other city and town with similarly unconstitutional ordinances," and asking for a call to further discuss. Doc. 12-7. Mr. Ryan responded, but did not provide the confirmation he had earlier promised and did not propose any other compromise accommodation. Doc. 12-8. Instead, Mr. Ryan threatened sanctions if such a lawsuit were filed. *Id*. Aptive, having attempted—on several occasions over a two-week period—to resolve this matter with the Village, was left with no choice but to file suit and seek a temporary restraining order.

**D. Aptive Files Suit, the Village's Curfew and Bond are Enjoined, but the Village Refuses to Allow Aptive to Solicit and Institutes a Total Ban on Solicitation.**

23.     On June 6, 2019, Aptive filed its Original Complaint and request for a temporary restraining order ("TRO") to enjoin the Village's enforcement of its Curfew and Bond requirement. *See* Docs. 1, 3. The Court granted Aptive's request for a TRO and signed an Order

to Show Cause, enjoining the Village's enforcement of the Curfew and Bond requirements. Doc. 5. After serving the Village with copies of the pleadings and TRO, counsel for Aptive emailed counsel for the Village, informing him of Aptive's intention to begin solicitation within the Village. *See* Doc. 12-11, email from J. Fielding to J. Ryan, dated June 8, 2019. Counsel for Aptive further noted that he had carefully reviewed the Village's website and had found no application for solicitation. *Id.* The only condition mentioned in the Code for obtaining a solicitation license, counsel noted, was the payment of a fee ($20/year, per § 171-17 of the prior ordinance), and as such, counsel assumed that upon payment of the $20 fee a license would automatically issue. *Id.*

24.     Counsel for the Village responded later that same day, asserting that Aptive "is not authorized to [] undertake any soliciting in East Rockaway." *Id.* Counsel for Aptive sought further clarification from counsel for the Village in no less than three separate emails, asking again what steps the Village required Aptive to take to obtain a solicitation license. *Id.*  Counsel for the Village refused to clarify or otherwise explain, inexplicably concluding that he would "no longer . . . communicate with [Aptive's counsel] by e-mail." *Id.*

25.     With no direction from the Village attorney, on June 11, 2019, Aptive's Long Island branch manager, Pierce Baldwin, brought the Village a check for the total solicitation license fee for each Aptive representative who wished to Solicit in East Rockaway. Doc. 12-10, ¶ 4. Upon speaking with the clerk, Mr. Baldwin was informed that the Village would not take Aptive's solicitation license payment. *Id.* at ¶ 5. Mr. Baldwin then asked what steps Aptive needed to take to receive a solicitation license with the Village and was told that there was no process, and he would need to speak with the Village's counsel, Mr. Ryan. *Id.* ¶¶ 6, 7.

26.     Finally, later on June 11, 2019, the Village's counsel sent counsel for Aptive a Resolution adopted by the Village Counsel on June 10th, formally suspending the issuance of all

licenses required under Section 171-14 of the Village Code. *See* Doc. 12-12, Resolution of Village Council, dated June 10, 2019. This Resolution clarified that the Village had banned solicitation in its entirety because it is not issuing any licenses under § 171-14 of the Code. *Id.*

27.     On June 11, 2019, Aptive filed an Amended Verified Complaint and Brief in Support of a Temporary Restraining Order to enjoin the Village's enforcement of Section 171-14 of the Code (the "Licensing Requirement"), in addition to the Bond and Curfew. *See* Docs. 12 – 13. The Court granted Aptive's amended request for a TRO and signed the Order to Show Cause, enjoining the Village's enforcement of the Licensing Requirement, the Curfew, and the Bond. Doc. 14.

28.     On July 16, 2019, the Court issued an Opinion and Order, granting Aptive's request for a Preliminary Injunction and enjoining and restraining the Village of East Rockaway from enforcement of the Licensing Requirement, Curfew, and Bond. Doc. 24.

29.     On July 30, 2019, counsel for the Village indicated that East Rockaway would amend its solicitation ordinance to include a $200 solicitation license fee. *See* Exhibit M, at 11. Counsel for Aptive responded, noting that the $200 fee was unconstitutional, and that "Aptive will only agree to a processing fee that covers administrative costs for the processing of licenses, which is the constitutional standard articulated by the Supreme Court." *Id.* (citing *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941)).

30.     On August 5, 2019, counsel for the Village of East Rockaway sent Aptive's counsel a copy of a Local Law Filing with the New York Department of State, amending Chapter 171 of the East Rockaway Code. *See* Exhibit N; Exhibit O (the "Amended Ordinance"). Section 171-3 of the Amended Ordinance – titled "License fee" – includes two separate fees each solicitor is required to pay prior to issuance of a solicitation license: first, a $25 "process fee payable to the

Clerk, Village of Floral Park,"[3] and second, a $200 fee "paid to the Village of Floral Park" after "approval of the license." Ex. O, §§ 171-3; 171-5(A). Counsel for the Village noted that the Amended Ordinance had not been passed into law by the Village Council, but that it would be passed in September. *See* Ex. N, at 2.

31.     Counsel for Aptive responded to Mr. Ryan, asserting that East Rockaway's $200 Fee was unconstitutional as a tax on First Amendment activity. *See id.* at 3. Counsel for Aptive urged the Village not to pass the Amended Ordinance with the Fee included, noting that "East Rockaway's proposed amendment . . . only introduces another problem in the form of an unconstitutional fee." *Id.* Aptive "far prefer[red] to avoid further use of judicial resources and expenditure of attorneys' fees, and for those reasons urge[d] the Village not to pass an amendment that includes such a clearly unconstitutional provision." *Id.* Counsel for the Village responded that Aptive's assertions regarding the fee were "absurd." *Id.* at 2.

32.     The parties engaged in a telephonic Rule 26(f) conference on August 5, 2019. Thereafter, counsel for the Village refused to provide any input on the parties' Joint Rule 26(f) report because he was on vacation. *See* Ex. M, at 3. Aptive therefore filed its own Rule 26(f) Report on August 19, 2019. Doc. 27. In this Report, Aptive noted that East Rockaway planned to amend its Ordinance to include an unconstitutional $200 fee, and that "***if East Rockaway amends its ordinance in such a manner, Plaintiff will amend its pleadings to challenge the fee as unconstitutional***." *Id.* at § 5 (emphasis added).  Aptive also made clear that it would seek discovery related to the $200 fee if it were included in an amended ordinance. *Id.* at § 6.b.

---

[3] East Rockaway appears to have copied verbatim the solicitation ordinance passed by Floral Park, a fact evidenced by the numerous references to "Floral Park," instead of "East Rockaway" included in the version of East Rockaway's Amended Ordinance filed with the New York Department of State. *See* Ex. O. This requirement that the Fee be paid to "the Village of Floral Park" is one such reference. *Id.* at 4 (§ 171-3). These were corrected in the version of the Amended Ordinance passed by the Village Counsel on September 9th, *see* Ex. R, but they further undercut any argument proffered by East Rockaway that passage of the $200 Fee was necessary to cover the administrative expenses of *East Rockaway*, specifically (as opposed to some other municipality).

33.     From September 2–4, 2019, counsel for Aptive sent Mr. Ryan numerous emails imploring the Village not to pass the Amended Ordinance with the $200 Fee, noting that if the Fee became law, Aptive would have no choice but "to amend our suit and seek injunctive relief with respect to that fee." *See* Exhibit P, at 7. Counsel for Aptive included numerous citations to federal cases, each standing for the proposition that a municipality cannot charge a fee for the issuance of a license to engage in commercial speech unless that fee covers administrative expenses, only. *Id.* at 4. Aptive further noted that – of the hundreds of municipalities its lawyers interacted with over the past several years – the average fee to cover administrative expenses for solicitation permits was $20-$50. *Id.* at 4-5; *see also* Ex. S, ¶ 8. If, however, the Village somehow did incur $200 in administrative expenses per licensee (unrelated to the separate $25 "process fee"), Aptive invited the Village to provide "some documentation substantiating your claim" so the parties could avoid further litigation. *Id.*  The Village has refused to provide any such documentation.

34.     On September 11, 2019, counsel for the Village sent counsel for Aptive a copy of the Amended Ordinance, noting that the Village Council passed the Amended Ordinance into law on September 9, 2019. *See* Exhibit Q, at 2. The Amended Ordinance includes the $200 solicitation Fee and the $25 processing fee, and references the $200 fee twice: first, in requiring that a "fee of $200.00 shall be paid to the Village of East Rockaway" upon approval of any solicitation license; and second, in referencing that such approval is subject to "payment by the applicant of the license fee of $200.00." *See* Exhibit R, §§ 171-3; 171-5(A). In short, the Amended Ordinance includes the $25 "process fee" necessary to cover administrative expenses – which Aptive does not challenge – but also includes the unconstitutional $200 solicitation Fee Aptive had advised the Village repeatedly against passing.

35.     Aptive intended to solicit in the Village from March – September 2019 but was prevented from doing so by the $200 license fee. Ex. S, ¶ 10; *see also* Doc. 12-2, ¶ 8. Aptive also intends to apply yet again for solicitor licenses in February 2020. Ex. S, ¶ 10. The Village's $200 Solicitation Fee is prohibitively high and would require Aptive to expend thousands of dollars simply to secure solicitation licenses in the Village. Ex. S, ¶¶ 12-15. For this reason, Aptive is prohibited from soliciting in East Rockaway while the Fee is being enforced. *Id.* ¶ 12.

36.     Notwithstanding the passage of the Fee into law, the Village's counsel demanded that Aptive's lawsuit "be discontinued forthwith," Ex. Q, at 2, leaving Aptive with no option but to file this Second Amended Complaint and seek relief from the Village's $200 Solicitation Fee.[4]

**E. The Fee Has Caused Irreparable Harm to Aptive**

37.     Because Aptive is a "Solicitor" as defined by the Code and is therefore subject to the Solicitation Fee, Aptive has suffered — and continues to suffer — significant harm. Ex. S, ¶¶ 12-15.

38.     *First*, Aptive has lost the ability to exercise its valuable commercial speech rights, and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see* Ex. S, ¶¶ 12-15.

39.     *Second*, the Fee has caused and will continue to cause significant financial harm to Aptive. The prohibitive amount of the Fee functions as a *de facto* ban on solicitation in the Village. Ex. S, ¶ 12. Aptive has lost and continues to lose thousands of dollars in revenue each day the Fee functionally prevents it from soliciting in the Village of East Rockaway, amounting to thousands of dollars in lost profits. *Id.* ¶¶ 12-13. Finally, the Fee prohibits Aptive from soliciting in the

---

[4] Counsel for Aptive conferred with counsel for the Village regarding an amendment to challenge the Fee. The Village's counsel does not consent to the amended pleading. *See* Doc. 31-1, at 5. The Village's counsel confirmed his opposition at the October 24, 2019 Status Conference.

Village, eliminating all exercise of its First Amendment rights in the Village and denying Aptive significant business. *Id.* ¶¶ 12-15.

40.     Just as significant, however, are the effects of the Fee on Aptive's relationship with its customers. *Id.* ¶¶ 14-15; Doc. 12-2, ¶ 3. Aptive's unique business model is predicated upon establishing a personal and trusting relationship with its customers, getting to know their homes and their individual needs to customize and tailor the service it provides. *Id.* Aptive's and its founder's many years in the industry have underscored that other forms of less personal marketing—including phone solicitation, email campaigns, and web advertisements—are simply not an effective means for establishing or maintaining this necessary personal relationship with its customers. Doc. 12-2, ¶ 3; Ex. S, ¶ 3.

41.     By encumbering Aptive's ability to solicit residents of the Village of East Rockaway in person with a prohibitive Fee, the Village Code directly interferes with Aptive's ability to effectively and efficiently serve its current and future customers. Ex. S, ¶¶ 12-15.

42.     Finally, the Fee substantially restricts the free speech rights of the many residents of the Village of East Rockaway who do not object to door-to-door solicitation and wish to receive Aptive's speech and learn about its services. Doc. 12-2, ¶ 12. By restricting the solicitation of such residents, *see* Ex. S, ¶ 14, the Village is violating the First Amendment rights of these residents to receive speech. *See, e.g.*, *City of Watseka v. Illinois Public Action Counsel*, 796 F.2d 1547 (7th Cir. 1986) (observing that door-to-door solicitation restrictions improperly "derogate the First Amendment rights of [the company] and those of [the City's] residents who would be willing recipients of [the company's] message . . . to the nuisance concerns of those residents who would not be willing listeners").

## COUNT ONE:
## UNCONSTITUTIONAL SOLICITATION FEE

43.     Plaintiff restates and re-alleges all prior paragraphs and incorporates the same by reference as if fully set out herein.

44.     On its face and as applied, the Fee violates the First and Fourteenth Amendments to the United States Constitution. The Village's $200 Fee is an unconstitutional prior restraint on commercial speech because it is an arbitrary fee imposed for the purpose of discouraging speech, unsupported by any evidence that it relates to the Village's expenses in administering its commercial solicitation ordinance. Numerous federal courts have held that a fee cannot be charged if the fee is arbitrary or is a method of preventing free speech from taking place. *E.g.*, *Murdock v. Pennsylvania*, 319 U.S. 105, 114 (1943) (license fee unconstitutional because it was "a flat license tax levied and collected as a condition to the pursuit of activities whose enjoyment is guaranteed by the First Amendment"); *Big Hat Books v. Prosecutors*, 565 F.Supp.2d 981 (S.D. Ind. 2008) (finding $250 fee – even if only paid once – to be an unconstitutional restriction on free speech because "Defendants have provided not a shred of evidence suggesting that the $250.00 fee is proportional" to the state's administrative burden); *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1315 (11th Cir. 2003) ("Absent a record sufficient to support the City's claim that its licensing fee is constitutionally reasonable, we hold that the present fee is unconstitutional."). Generally, the government may not tax the exercise of a constitutionally protected right. *Ne. Ohio Coalition for the Homeless v. City of Cleveland*, 105 F.3d 1107, 1109 (6th Cir. 1997). East Rockaway's $200 Fee constitutes precisely such a tax. The holdings of these cases indicate that the Fee imposed by the Village is unconstitutional.

## COUNT TWO:
## DECLARATORY JUDGMENT

45.     Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

46.     Plaintiff has alleged an actual controversy between it and Defendant regarding the

constitutionality and enforceability of Code §§ 171-3 and 171-5(A).  This Court may thus declare

the rights and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought. Any such declaration shall have the force and effect of a final

judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201(a).

47.     Plaintiff requests that the Court declare that the Village's Fee violates the First and

Fourteenth Amendments to the United States Constitution, both facially and as applied to Aptive.

## COUNT THREE:
## PRELIMINARY INJUNCTION

48.     Plaintiff realleges all prior paragraphs as if fully set forth herein.

### *Irreparable Harm*

49.     The harm, loss, and injury resulting from the Village's enforcement of the

Solicitation Fee are great, immediate, and irreparable, because Aptive and others similarly situated

are being—and will continue to be—deprived of rights secured by the First and Fourteenth

Amendments of the U.S. Constitution. Aptive has been deprived of its commercial speech rights

by the Ordinance's enforcement. Ex. S, ¶¶ 12-15. Infringements of free speech are irreparable

injuries per se. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms,

for even minimal periods of time, unquestionably constitutes irreparable injury.").

### *Inadequate Remedy at Law*

50.     No remedy at law suffices to redress Aptive's grievances. A monetary judgment

will not compensate Plaintiff for its loss of constitutionally protected rights.

*Substantial Likelihood of Success on the Merits*

51.     The likelihood of Plaintiff's ultimately succeeding on the merits is great, because the actions of Defendant and the Fee constitute an infringement upon Plaintiff's First and Fourteenth Amendment rights.

52.     The Fee is unconstitutional because it is unrelated to any legitimate administrative expense of the Village. The Village has offered no evidence supporting a relationship between the Fee and the Village's expense in administering its commercial solicitation ordinance.

53.     Numerous federal courts have held that a fee cannot be charged if the fee is arbitrary or is a method of preventing free speech from taking place. *See, e.g.*, *Forsyth County, Georgia v. Nationalist Movement*, 505 U.S. 123 (1992); *Big Hat Books v. Prosecutors*, 565 F.Supp.2d 981 (S.D. Ind. 2008) (finding $250 fee – even if only paid once – to be an unconstitutional restriction on free speech); *Wendling v. City of Duluth*, 495 F. Supp. 1380, 1385 (D. Minn. 1980) (striking down a $500 license fee intended to finance enforcement of both licensing ordinance and a separate obscenity ordinance; a licensing authority must be "able to demonstrate that the fees were necessary to cover the reasonable costs of the licensing system, and that the fees were used for no other purpose than to meet those costs") (license fee held unconstitutional on the grounds that the city could use the fee only to recoup the cost of the licensing ordinance itself); *Eastern Connecticut Citizens Action Group v. Powers*, 723 F. 2d 1050, 1056 (2nd Cir. 1983) (invalidating $200 administrative fee charged for plaintiffs' demonstration on state property because the trial court found "no evidence that the administrative fee . . . [was] equal to the cost incurred by [the state] for processing plaintiffs' request to use the property"); *Collin v. Smith*, 447 F.Supp. 676, 685 (N.D. Ill. 1978); *Ne. Ohio Coalition for the Homeless v. City of Cleveland*, 105 F.3d 1107, 1109 (6th Cir.

1997). East Rockaway's Fee constitutes a tax on First Amendment expression and is therefore an invalid prior restraint.

54.     For a license fee to be permissible under the First Amendment, a municipality may charge *no more* than the amount necessary to cover administrative costs. *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941) (no constitutional infirmity in license fee limited to expense incident to administration of statute and maintenance of public order in the matter licensed). But nowhere does East Rockaway justify the $200 Fee, and East Rockaway cannot show that each door-to-door solicitor imposes a $200 administrative burden on the Village—***especially when the prior annual license fee, until September 2019, was just $20***. *See* Doc. 12-1, § 171-17.

55.     The prohibitive amount of the $200 Fee – which must be paid for each Sales Representative issued a license – also makes its application unconstitutional because it functions as an effective ban on solicitation. Ex. S, ¶ 12. Bans on commercial solicitation are patently unconstitutional.  *Project 80's Inc. v. City of Pocatello*, 942 F. 2d 635 (9th Cir. 1991) (invalidating a city's ban on commercial solicitation); *see also City of Watseka v. Illinois Public Action Counsel*, 479 U.S. 1048 (1987); *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564 (6th Cir. 2012); *City of Watseka v. Illinois Public Action Counsel*, 796 F.2d 1547 (7th Cir. 1986); *New Jersey Citizen Action v. Edison Township*, 797 F.2d 1250 (3d Cir. 1986); *Wisconsin Action Coalition v. City of Kenosha*, 767 F.2d 1248 (7th Cir. 1985); *Association of Community Organizations for Reform v. City of Frontenac*, 714 F.2d 813 (8th Cir. 1983).

56.     The Fee is also unconstitutional on its face, violating the First Amendment rights of (1) other persons wishing to solicit in East Rockaway and (2) residents of East Rockaway who do not object to commercial solicitation and have the constitutionally protected First Amendment right to receive that speech. *See*, *e.g.*, *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 565 (2001)

("A speech regulation cannot unduly impinge on the speaker's ability to propose a commercial transaction and the adult listener's opportunity to obtain information about products."); *Virginia Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 756-57 (1976) ("If there is a right to advertise, there is a reciprocal right to receive the advertising."); *In re Express-News Corp.*, 695 F.2d 807, 809 n.2 (5th Cir. 1982) (observing that "[t]he public right to receive information has been repeatedly recognized and applied to a vast variety of information").

57.     The Fee also fails the *Central Hudson* test for commercial speech regulations. Neither restriction serves any substantial governmental interests. The Village Code offers no purported justification for the Fee. *See generally* Ex. R. The Village has not presented *any* evidence of a threat to privacy or safety posed by commercial solicitation. And even if there were such evidence, the Village cannot show how the Fee would serve those interests. The Fee applies only to commercial solicitors or solicitors of funds. *Id.* § 171-10. This leaves a broad swath of door-to-door non-commercial activity unaffected, including religious, philanthropic, or political canvassing. Such door-to-door interactions may continue unabated without the requirement of a license or any municipal investigation of those involved in such activities. *Id.* § 171-10.

58.     The ordinance cannot advance interests in resident safety or privacy, when so many groups are exempted from its reach. *Id.* Merely reducing the total number of solicitors does not constitute evidence of furthering safety or privacy. Additionally, there are far less-restrictive ways to advance interests in safety and privacy. For one, the amended Village Code allows residents to register with a no-soliciting list. *Id.* § 171-6.

### Plaintiff's Interests Balanced Against Those of Defendant and the Public

59.     ***First,*** Defendant will suffer no harm if the Court enjoins enforcement of Code §§ 171-3 and 171-5(A). The Code in its current form does not substantially serve a substantial

governmental interest. Moreover, other less-intrusive ways exist to achieve any purported governmental objectives, including by implementing a background check and a lower Fee that is directly tied to those expenses. New York statewide background checks are less than $100 to administer. *See* Ex. S, ¶ 9. The 2019 fee charged by the New York Office of Court Administration for its statewide Criminal History Record Search is $95. *Id.* And in 2019, other municipalities on Long Island administer their solicitation licensing ordinances with annual license fees as low as $25. *Id.* ¶ 8. Indeed, Aptive's Long Island branch manager is unaware of any license fee exceeding $125, *see id.* ¶ 8, or even remotely approaching the total of $225 levied by the Village.

60.     Enforcing existing aspects of state and federal law address any possible concerns the Village may have with fraudulent business practices. Conversely, if enforcement of the Fee continues, it will work irreparable and immeasurable harm to Aptive's business, chilling its commercial speech and causing it to sustain thousands in damages for each day it is denied the chance to work in the Village. Ex. S, ¶¶ 10-15.

61.     ***Second***, the constitutional right to free speech is the most significant interest involved in this matter.  The public has a strong interest in protecting the pathways of information and safeguarding free expression from governmental encroachment. The Supreme Court has held that the First Amendment serves

> significant societal interests wholly apart from the speaker's interest in self-expression. By protecting those who wish to enter the marketplace of ideas from government attack, the First Amendment protects the public's interest in receiving information. The identity of the speaker is not decisive in determining whether speech is protected. Corporations and other associations, like individuals, contribute to the discussion, debate, and the dissemination of information and ideas" that the First Amendment seeks to foster.

*Pac. Gas & Elec. Co. v. Pub. Utils. Com.*, 475 U.S. 1, 8 (1986) (internal citations and quotations omitted). The public interest lies in protecting the marketplace of ideas through issuance of injunctive relief.

62.    Plaintiff asks the Court to set its application for preliminary injunction for hearing at the earliest possible time following the close of discovery and, after hearing the request, to issue a preliminary injunction against the Village, enjoining enforcement of the Fee, found at Code §§ 171-3 and 171-5(A).

## REQUEST FOR PERMANENT INJUNCTION

63.    Plaintiff asks the Court to set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to permanently enjoin enforcement of Code §§ 171-3 and 171-5(A).

## DAMAGES

64.    As a direct and proximate result of Defendant's passage and enforcement of the Fee, Plaintiff has suffered: (A) lost earnings, (b) lost profits and other consequential damages, and (c) loss of Plaintiff's First Amendment freedoms. Ex. S, ¶¶ 11-15.

## PRAYER

65.    WHEREFORE, Aptive respectfully requests that the Court issue:

  a.  A preliminary injunction enjoining the enforcement of the Fee by Defendant, its agents, and its employees against Plaintiff and others similarly situated;

  b.  A permanent injunction enjoining the enforcement of the Fee by Defendant, its agents, and its employees against Plaintiff and others similarly situated;

  c.  A declaration that the Fee violates the First and Fourteenth Amendments of the United States Constitution on their face;

d.  A declaration that the Fee violates the First and Fourteenth Amendments of the United States Constitution as applied to Plaintiff;

e.  A declaration that Defendant has violated Plaintiff's constitutional rights, and that Plaintiff has suffered damages as a result;

f.  A judgment awarding Plaintiff its damages caused by Defendant's unconstitutional actions;

g.  An order requiring Defendant to pay all costs, interest, and attorneys' fees as may be incurred with this civil action pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920; and

h.  An order providing such other and further relief as the Court deems just and proper and for the purpose of redressing Plaintiff's grievances.


Dated: December 13, 2019                  Respectfully submitted,


                                          Daniel E. DeCicco, Esq.
                                          DARGER ERRANTE YAVITZ & BLAU LLP
                                          116 East 27th Street at Park Avenue
                                          New York, NY 10016
                                          (212) 452-5300


                                          */s/ Clint Cowan*
                                          Kent D. Krabill, admitted *pro hac vice*
                                          Texas Bar No. 24060115
                                          kkrabill@lynnllp.com
                                          Samuel Clinton Cowan, admitted *pro hac vice*
                                          Texas Bar No. 24109760
                                          ccowan@lynnllp.com
                                          **LYNN PINKER COX & HURST, LLP**
                                          2100 Ross Avenue, Suite 2700
                                          Dallas, Texas 75201
                                          (214) 981-3800


                                          **Attorneys for Plaintiff**
                                          **Aptive Environmental, LLC**

**VERIFICATION**

State of New York, County of Suffolk

I am the Long Island Brand Manager of Aptive Environmental, LLC, the plaintiff in this proceeding.  I have read the foregoing allegations of this Second Amended Complaint and know the contents to be true from my own knowledge.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 25th day of October, 2019.

PIERSON BALDWIN

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 13, 2019, a true and correct copy of the above and foregoing **PLAINTIFF'S SECOND AMENDED COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** was filed with the Court and served on all counsel of record via ECF.

*/s/ Clint Cowan*
Clint Cowan