UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

| | | |
|---|---|---|
| APTIVE ENVIRONMENTAL, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| VILLAGE OF EAST ROCKAWAY, | § | No. 2:19-cv-03365-SJF-SIL |
| NEW YORK, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

---

## PLAINTIFF'S L.R. 56.1 STATEMENT OF MATERIAL FACTS

---

Plaintiff Aptive Environmental, LLC ("Plaintiff" or "Aptive") submits this Statement of Material Facts under L.R. 56.1, in support of its Cross-Motion for Summary Judgment and Opposition to the Motion for Summary Judgment filed by Defendant, the Village of East Rockaway, New York ("Defendant" or the "Village").

1.     Aptive is a pest control services company with offices throughout the country. Aptive's market includes cities throughout the state of New York, including the Village of East Rockaway, New York. Doc. 12-2, ¶ 3; Doc. 44-6, ¶ 10.

2.     Aptive's sales are made primarily through door-to-door solicitation by its sales representative employees. Doc. 12-2, ¶ 3.

3.     Aptive has learned through its business experience that other forms of less-personal marketing are simply not an effective means for establishing or maintaining a personal relationship with its customers. Doc. 12-2, ¶ 3; Doc. 44-7, ¶ 3.

4.      Aptive requires its sales representative employees to apply for, and receive, solicitation licenses in any city, town, or village that requires solicitors to possess such licenses prior to soliciting. Doc. 12-2, ¶¶ 6-7; Doc. 44-7, ¶ 6.

5.      Ordinances that impose overly burdensome license fees have a direct and substantial impact on Aptive's business, its employees, and its sales representatives. Doc. 44-7, ¶¶ 10-15; Doc. 12-2, ¶ 10.

6.      Until June of 2019, the Village enforced both a 5:00 p.m. solicitation curfew and a $2,500 bond on solicitation, which worked irreparable harm to Aptive's door-to-door business. Doc. 12-1, at 2-3; Doc. 12-2, ¶¶ 10-12; Doc. 5; Doc. 14.

7.      The Village Ordinance in effect up until June of 2019 required only $20 for an annual solicitor license. Doc. 12-1, at 2-3 (§ 171-17).

8.      On July 16, 2019, the Court issued an Opinion and Order, granting Aptive's request for a Preliminary Injunction and enjoining and restraining the Village from enforcement of its de facto ban enacted through a permit moratorium, as well as its curfew and bond requirements. Doc. 24, at 18-19.

9.      In September 2019, the Village Council amended Chapter 171 of the Code, eliminating the curfew and bond requirements (the "Ordinance" or "Chapter 171"), but including a new $200 fee for a solicitor license (the "Fee"). Doc. 44-6 (§§ 171-3 and 171-5(A)).

10.     The Ordinance has since been amended once again, but still includes the unconstitutional $200 Fee, payable by each applicant for a solicitor license, regardless of whether the applicant receives the license or ever solicits in the Village. *See* Def.'s Mot. SJ, Ex. A (§ 171-3).

11.     Section 171-3 requires that "all applications must be accompanied by a $200 fee payable to the clerk." *Id.*

12.     Section 171-5(A) of the Ordinance states that license approval is subject to "payment by the applicant of the license fee of $200.00." Doc. 44-6, at 4 (§ 171-5(A)).

13.     Aptive is a "Solicitor" as defined by Chapter 171 and is therefore subject to the Fee. Doc. 44-7, ¶¶ 12-15; Doc. 44-6, at 3 (§ 171-1).

14.     Aptive has suffered and continues to suffer significant ongoing harm from enforcement of the Fee. Doc. 44-7, ¶¶ 12-15.

15.     Due to the Fee, Aptive has lost the ability to conduct speech for its business by being prohibited from going door to door in the Village. *Id.* ¶¶ 12-15.

16.     The Fee has caused Aptive significant financial harm because it functions as a ban on solicitation for Aptive, making it prohibitively expensive for Aptive to conduct door to door sales in the Village. *Id.* ¶ 12.

17.     Aptive has lost and continues to lose thousands of dollars in revenue each day the Fee functionally prevents it from soliciting in the Village, amounting to thousands of dollars in lost profits. *Id.* ¶¶ 12-13.

18.     By encumbering Aptive's ability to solicit residents of the Village in person with a prohibitive Fee, the Village Code directly interferes with Aptive's ability to effectively and efficiently serve its current and future customers. *Id.* ¶¶ 12-15.

19.     The Fee substantially restricts the free speech rights of the many residents of the Village who do not object to door-to-door solicitation and wish to receive Aptive's speech and learn about its services. *Id.* ¶ 12.

20.     The Village has not taken estimates from any background check companies to determine the Village's cost for performing a background check for a solicitor license applicant. Ex. A,[1] Village Dep. 118:14-119:9.

21.     The Village does not know the amount of time it would take to issue a solicitor license, because it has not yet issued any licenses. Ex. A, Village Dep. 28:20-29:9.

22.     The Village does not have any evidence to support its view that background checks cost one hundred dollars per applicant. Ex. A, Village Dep. 118:14-119:19.

23.     The Village did not research the costs of enforcement relative to solicitation before it set the $200 Fee. Ex. A, Village Dep. 125:6-9.

24.     The Village has not done any studies to support its estimates about its administrative costs for solicitor licenses. Ex. A, Village Dep. 135:2-15.

25.     Aptive served multiple interrogatories and requests for production to elicit all documents and communications relied on by the Village in determining the amount of the $200 Fee. Ex. B, at 4-6 (Interrogatory Nos. 1, 3, 4; Req. for Production Nos. 1-9).

26.     The Village did not object to these requests, but responded to each of Aptive's discovery requests that it had no responsive documents or communications, beyond identifying the Village Attorney as involved in determining the Fee. Ex. C, at 1-4 (Responses to Interrogatory Nos. 1, 3, 4 and Req. for Production Nos. 1-9).

27.     Aptive's Request for Production No. 1 sought "All documents and communications reflecting any research, studies, investigations, analysis, accounting reports, memoranda, or other data related to the processing costs incurred by the Village in licensing solicitors." Ex. B, at 6 (RFP

---

[1] Ex. A, Ex. B, and Ex. C refer to exhibits attached to the Declaration in support of Plaintiff's Cross-Motion for Summary Judgment.

1). The Village did not object, but simply responded: "Other than the work product of the Village Attorney, no such documents exist." *See* Ex. B, at 6 (RFP 1); Ex. C, at 3 (response to RFP 1).

28.     Aptive's Request for Production No. 2 requested "All documents and communications reflecting any research, studies, investigations, analysis, or accounting reports, memoranda, or other data related to the costs incurred by the Village in enforcing Chapter 171 of the Village Code." Ex. B, at 6 (RFP 1). The Village responded that "no such documents exist" beyond the Village Attorney's work product. Ex. B, at 6 (RFP 1); Ex. C, at 3 (response to RFP 2).

29.     Aptive's Request for Production 5 requested "All documents and communications considered by the Village in determining the $200 Fee amount." Ex. B, at 6 (RFP 5). The Village responded that "no such documents exist" beyond the Village Attorney's work product. *See* Ex. B, at 6 (RFP 5); Ex. C, at 4 (Response to RFP 5).

30.     Aptive's Request for Production 9 sought "All documents and communications related to or concerning the Village's determination of the $200 Fee amount." Ex. B, at 6 (RFP 9). The Village responded that "no such documents exist" beyond the Village Attorney's work product. *See* Ex. B, at 6 (RFP 9); Ex. C, at 4 (Response to RFP 9).

31.     The Village has no documents or communications that show any research, studies, investigations, analyses, accounting reports, memoranda, or other data related to its costs for processing solicitor licenses. Ex. A, Village Dep. 75:13-18.

32.     The Village has no documents or communications that show any research or studies or investigations or analyses or accounting reports or memoranda or other data to support its cost figures regarding enforcement costs for Chapter 171 of the Village Code. Ex. A, Village Dep. 75:19-76:1.

33.     The Village did not research the costs of enforcement relative to solicitation before it set the $200 Fee. Ex. A, Village Dep. 124:24-125:9.

34.     The Village does not know how much it spent on enforcement costs related to solicitation in the years 2017-2019, and the amount spent for enforcement costs for each of those years could be zero. Ex. A, Village Dep. 45:5-46:10.

35.     The Village does not know its administrative costs for issuing a commercial solicitation license because it has never issued a commercial solicitation license. Ex. A, Village Dep. 43:3-12; 81:17-82:4; 83:15-84:8; 113:10-21; 135:2-15.

36.     The Village's projections for administrative costs for solicitor licenses are not based on any studies. Ex. A, Village Dep. 135:2-15.

37.     The Village Clerk is the person most knowledgeable about the administrative expenses that the Village incurs related to solicitation. Ex. A, Village Dep. 63:2-6.

38.     The Village did not consult the Village Clerk's office about the administrative costs associated with licensing solicitors prior to passing the $200 Fee into law. Ex. A, Village Dep. 60:2-63:13.

39.     The Village did not consult any documents or individuals beyond the Village Attorney (John Ryan) in determining the $200 Fee. Ex. B, at 7 (RFA 1); Ex. C, at 4 (Response to RFA 1 – "Admit"); Ex. A, Village Dep. 79:20-24.

40.     The Village did not consult or rely on any documents, witness statements, studies, analyses, data, accounting reports, legislative findings, police reports, Village Clerk memoranda, or other information of any kind to determine the $200 Fee amount. Ex. B, at 4 (Interrogatory 1); Ex. C, at 1 (Response to Interrogatory 1); Ex. A, Village Dep. 77:13-17; 79:21-24.

41.     The Village did not consult or involve any Village employee, representative, official, or third party in determining the $200 Fee, besides the Village Attorney John Ryan. Ex. B, at 4 (Interrogatory 2); Ex. C, at 1 (Response to Interrogatory 2).

42.     The Village did not undertake any process to draft or amend Chapter 171 of the Village Code in 2019, and no person besides the Village Attorney John Ryan was involved in drafting or amending the Ordinance. Ex. B, at 5 (Interrogatory 9); Ex. C, at 3 (Response to Interrogatory 9).

43.     The Village has not performed or done any research or studies or investigations or analyses or any accounting reports or furnished any memoranda or compiled any data related to its processing costs for licensing solicitors. Ex. A, Village Dep. 78:3-8.

44.     The Village has not performed or done any research or studies or investigations or analyses or any accounting reports or furnished any memoranda or compiled any data related to its enforcement costs related to solicitation. Ex. A, Village Dep. 78:9-20; 124:24-125:9.

45.     The Village does not have any documents or communications which relate to the Village Clerk's procedures for processing and investigating applications for solicitor licenses. Ex. A, Village Dep. 79:16-20.

46.     The Village did not consult the Village Clerk's office in determining that its enforcement costs for each solicitor would be approximately $75. Ex. A, Village Dep. 106:13-24.

47.     The Village copied its $200 Fee amount from the ordinance of another municipality, the Village of Floral Park, New York. Ex. B, at 8 (RFA 10); Ex. C, at 4 (Response to RFA 10); Ex. A, Village Dep. 71:8-72:2.

Dated: March 31, 2020                          Respectfully submitted,

Daniel E. DeCicco, Esq.
DARGER ERRANTE YAVITZ & BLAU LLP
116 East 27th Street at Park Avenue
New York, NY 10016
(212) 452-5300

*/s/ Kent D. Krabill*
Kent D. Krabill, admitted *pro hac vice*
Texas Bar No. 24060115
kkrabill@lynnllp.com
Samuel Clinton Cowan, admitted *pro hac vice*
Texas Bar No. 24109760
ccowan@lynnllp.com
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800

**Attorneys for Plaintiff**
**Aptive Environmental, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2020, a true and correct copy of the above and foregoing was served on all counsel of record via email, and a cover letter filed on ECF, in compliance with the Court's Bundle Rule.

*/s/ Kent D. Krabill*
Kent D. Krabill