## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK
## CENTRAL ISLIP DIVISION

| | | |
|---|---|---|
| **APTIVE ENVIRONMENTAL, LLC,** | § § § | |
| **Plaintiff,** | § | |
| v. | § § | |
| **VILLAGE OF EAST ROCKAWAY, NEW YORK,** | § § § | **No. 2:19-cv-03365-SJF-SIL** |
| **Defendant.** | § § § § § | |

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Aptive Environmental, LLC ("Aptive" or "Plaintiff") submits this Memorandum of Law in Support of its Cross-Motion for Summary Judgment and in opposition to Defendant's Motion for Summary Judgment. Plaintiff incorporates its L.R. 56.1 Statement of Material Facts, L.R. 56.1 Counterstatement of Material Facts, Declaration and attached exhibits, and the evidence previously on file with the Court, and seeks as follows:

(1) Judgment as a matter of law that the $200 solicitation fee of the Village of East Rockaway, New York (the "Village"), found at §§ 171-3 and 171-5(A) of the Village Code, violates the First Amendment rights of Aptive, others similarly situated, and Village residents, both facially and as applied; and

(2) A permanent injunction barring enforcement of the $200 Solicitation Fee found at §§ 171-3 and 171-5(A) of the Village Code.

## <u>INTRODUCTION</u>

Aptive initiated this action to restrain the Village from enforcing its unconstitutional $200 solicitation license fee, found at §§ 171-3 and 171-5(A) of the recently amended Village Code (the

"Fee"). A municipality may charge a license fee for First Amendment activity, but only fees precisely tailored to the administrative expenses of the permit or license are permissible. *Citizens Action Group v. Powers*, 723 F.2d 1050, 1056 (2d Cir. 1983) ("Licensing fees used to defray administrative expenses are permissible, but only to the extent necessary for that purpose."). Written discovery and a deposition of the Village have revealed that the Village has ***no support*** for its conclusory assertions that the new $200 Fee was designed to defray its administrative expenses. Instead, the Fee was arbitrarily determined and simply copied directly from another municipal ordinance, without any connection whatsoever to the actual costs borne by the Village to license solicitors.

The Village has "the burden of proving that the fee equals the costs associated with the regulatory scheme." *Turley v. New York City Police Dep't*, 988 F. Supp. 667, 674 (S.D.N.Y. 1997) (citing *E. Connecticut Citizens Action Grp. v. Powers*, 723 F.2d 1050, 1056 (2d Cir. 1983)). Despite having ample opportunity in discovery, the Village has not adduced any evidence or performed any research on its administrative costs to justify the Fee. The Fee is an arbitrary amount, lifted from another Village's ordinance, with no specific justification tied to East Rockaway, and is thus manifestly unconstitutional. Simply put, no genuine issue of material fact exists. The Court should therefore grant summary judgment that the Fee is unconstitutional, and permanently enjoin its enforcement.

## FACTUAL BACKGROUND

### A.    Aptive's Interest in Door-to-Door Solicitation and Injury from the License Fee.

Aptive is a pest control services company with offices throughout the country. Aptive's market includes cities throughout the state of New York, including the Village of East Rockaway, New York. Doc. 12-2, ¶ 3; Doc. 44-6, ¶ 10. Aptive's sales are primarily made through door-to-

door solicitation by its sales representative employees. Doc. 12-2, ¶ 3. Aptive requires its sales representatives to apply for, and receive, solicitation licenses in any municipality that requires solicitors to possess such licenses prior to soliciting. *Id.* ¶¶ 6-7; Doc. 44-7, ¶ 6. Accordingly, ordinances that impose overly burdensome fees on solicitation licenses have a direct and substantial impact on Aptive's business and its sales representative employees. Doc. 44-7, ¶¶ 10-15; Doc. 12-2, ¶ 10.

**B.    While the Court Has Already Enjoined the Village's Unconstitutional Solicitation Restrictions, the Village Responded with an Amended Ordinance and an Unconstitutional $200 License Fee.**

Until June of 2019, the Village enforced both a 5:00 p.m. solicitation curfew and a $2,500 bond requirement, which caused irreparable harm to Aptive's door-to-door business. Doc. 12-2, ¶¶ 10-12. On June 6, 2019, Aptive filed its Original Complaint and request for temporary restraining order ("TRO") to enjoin the Village's enforcement of its unconstitutional curfew and bond requirements. *See* Docs. 1, 3. The Court granted Aptive's request for a TRO and signed an Order to Show Cause, enjoining the Village's enforcement of the curfew and bond requirements. Doc. 5. Following the TRO, the Village passed a resolution ***banning all solicitation*** by prohibiting the issuance of licenses. Doc. 12-12 (Permit Moratorium). On June 12, 2019, Aptive filed an Amended Verified Complaint and Brief in Support of a Temporary Restraining Order to enjoin the Village's enforcement of this license prohibition (a de facto ban), in addition to the curfew and bond requirements. *See* Docs. 12–13. The Court granted Aptive's amended request for a TRO and signed the Order to Show Cause, enjoining the Village's enforcement of its de facto ban (permit moratorium), as well as the curfew and bond requirements. *See* Doc. 14.

On July 16, 2019, the Court issued an Opinion and Order, granting Aptive's request for a Preliminary Injunction and enjoining and restraining the Village from enforcement of its de facto ban and curfew and bond requirements. Doc. 24, at 18-19. On July 30, 2019, counsel for the

Village indicated that the Village would amend its solicitation ordinance to include a $200 solicitation license fee. *See* Doc. 44-1, at 10. Counsel for Aptive repeatedly communicated to the Village's counsel that the $200 fee was unconstitutional because it failed to tie directly to administrative costs for the processing of licenses—the constitutional standard articulated by the U.S. Supreme Court. Doc. 44-4, at 3-5; Doc. 44-1, at 11. The new $200 Fee is a 900% increase, as the Ordinance in effect up until June of 2019 required only $20 for an annual solicitor license. Doc. 12-1, at 2-3 (§ 171-17).

Despite the repeated warnings from Aptive's counsel, the Village Council amended Chapter 171 of the Code, eliminating the curfew and bond requirements (the "Ordinance" or "Chapter 171"), but including the unconstitutional $200 Fee. *See* Doc. 44-6 (§§ 171-3 and 171-5). The Ordinance has since been amended once more, but still includes the unconstitutional $200 Fee, payable by each applicant for a solicitor license, regardless of whether the applicant receives the license or ever solicits in the Village. *See* Def.'s Mot. SJ, Ex. A. The $200 Fee is located in two Ordinance provisions. Section 171-3 states "all applications must be accompanied by a $200 fee payable to the clerk." *Id.* And Section 171-5(A) of the Ordinance states that license approval is subject to "payment by the applicant of the license fee of $200.00." Doc. 44-6, at 4.

**C.     The Fee Has Caused Irreparable Harm to Aptive.**

Because Aptive is a "Solicitor" as defined by Chapter 171 and is therefore subject to the Fee, Aptive has suffered — and continues to suffer — significant harm from enforcement of the Fee. Doc. 44-7, ¶¶ 12-15; Doc. 44-6, at 3 (§ 171-1). First, Aptive has lost the ability to exercise its valuable commercial speech rights, and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see* Doc. 44-7, ¶¶ 12-15. Second, the Fee has caused and will continue to cause significant financial harm to Aptive. The prohibitive amount of the Fee functions as a *de facto* ban

on solicitation in the Village. Doc. 44-7, ¶ 12. Aptive has lost and continues to lose thousands of dollars in revenue each day the Fee functionally prevents it from soliciting in the Village, amounting to thousands of dollars in lost profits. *Id.* ¶¶ 12-13. Third, the Fee unreasonably restricts Aptive from soliciting in the Village, restraining all the exercise of its First Amendment rights in this municipality and denying Aptive significant business. *Id.* ¶¶ 12-15.

Just as significant, however, are the effects of the Fee on Aptive's relationship with its customers. *Id.* ¶¶ 14-15; Doc. 12-2, ¶ 3. Aptive's unique business model is predicated upon establishing a personal and trusting relationship with its customers, getting to know their homes and their individual needs to customize and tailor the services it provides. *Id.* Less-personal forms of marketing are simply not effective means for establishing or maintaining a personal relationship with Aptive's customers. Doc. 12-2, ¶ 3; Doc. 44-7, ¶ 3. By encumbering Aptive's ability to solicit residents of the Village in person with a prohibitive Fee, the Village Code directly interferes with Aptive's ability to effectively and efficiently serve its current and future customers. Doc. 44-7, ¶¶ 12-15.

Finally, the Fee substantially restricts the free speech rights of the many residents of the Village who do not object to door-to-door solicitation and wish to receive Aptive's speech and learn about its services. *Id.* ¶ 12. By restricting the solicitation of such residents, *see id.* ¶ 14, the Village is violating the First Amendment rights of these residents to receive commercial speech.

## LEGAL STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Gallo v. Prudential Residential Servs. L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994). To meet the initial burden under Rule 56, "the party seeking summary judgment always bears the

initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible * * *, or 'upon the mere allegations or denials of the [nonmoving] party's pleading,' Fed. R. Civ. P. 56(e)." *Longi v. Cty. of Suffolk*, No. CV025821SJFWDW, 2008 WL 858997, at *4 (E.D.N.Y. Mar. 27, 2008) (J. Feuerstein) (citing *Geyer v. Choinski*, No. 07–0190–pr, 2008 WL 190504, at *1 (2d Cir. Jan. 23, 2008) (holding that reliance upon conclusory statements or mere allegations is not sufficient to defeat summary judgment)).

The standard to be applied when deciding cross-motions for summary judgment is the same as that for individual motions for summary judgment, and the court must consider each motion independent of the other. *Kindle v. Dejana*, 238 F. Supp. 3d 353, 365–66 (E.D.N.Y. 2017) (J. Feuerstein).

## ARGUMENT

A.     **License Fees for First Amendment Activity are Constitutional Only When Tailored to Substantiated Administrative Costs.**

It is beyond cavil that door-to-door solicitation is a form of expression that is entitled to First Amendment protection. *See Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980); Doc. 24, at 9. While protected, the law allows for governmental licensing, but the licensing schemes are subject to scrutiny under the First Amendment. A government cannot profit from imposing licensing or permit fees on the exercise of a First Amendment right. *Murdock v. Pennsylvania,* 319 U.S. 105, 113–14 (1943). Only fees up to or equaling the proven administrative expenses of the municipality are permissible. *Citizens Action Group v. Powers*, 723 F.2d 1050, 1056 (2d Cir. 1983) ("Licensing fees used to defray administrative expenses are permissible, but only to the extent necessary for that purpose."). "Subsequent cases have thus analyzed the permissibility of fees imposed on the exercise of expressive activities by examining whether those fees were *designed to defray, and did not exceed, the administrative costs* of regulating the protected activity."[1] *Kwong v. Bloomberg*, 876 F. Supp. 2d 246, 254 (S.D.N.Y. 2012), *aff'd*, 723 F.3d 160 (2d Cir. 2013). A fee exceeding the amount necessary to offset these costs is unconstitutional. *Eastern Connecticut Citizens Action Group v. Powers*, 723 F.2d 1050, 1056 (2d Cir. 1983).

As the proponent of the fee, the government bears the burden of substantiating the fee amount by adducing specific evidence of the administrative costs purportedly defrayed. "The

---

[1] *See also Int'l Women's Day March Planning Comm. v. City of San Antonio,* 619 F.3d 346, 369–71 (5th Cir. 2010); *Sullivan v. City of Augusta*, 511 F.3d 16, 37–38 (1st Cir. 2007); *Nationalist Movement v. City of York*, 481 F.3d 178, 183 (3d Cir. 2007); *Mainstream Mktg. Servs., Inc. v. F.T.C.,* 358 F.3d 1228, 1247–48 (10th Cir. 2004); *N.E. Ohio Coal. for Homeless v. City of Cleveland,* 105 F.3d 1107, 1109–10 (6th Cir. 1997); *Nat'l Awareness Found. v. Abrams,* 50 F.3d 1159, 1165–66 (2d Cir. 1995); *Ctr. for Auto Safety, Inc. v. Athey,* 37 F.3d 139, 144–46 (4th Cir. 1994); *South–Suburban Hous. Ctr. v. Greater S. Suburban Bd. of Realtors,* 935 F.2d 868, 897–98 (7th Cir. 1991).

entity imposing a permit or license fee has the burden of proving that the fee equals the costs associated with the regulatory scheme." *Turley*, 988 F. Supp. at 674. "It is the government's burden to demonstrate that its licensing fee is reasonably related to recoupment of the costs of administering the licensing program." *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1314 (11th Cir. 2003); *see also Nat'l Awareness Found. v. Abrams*, 50 F.3d 1159, 1166 (2d Cir. 1995); *Northeast Ohio Coalition for the Homeless v. Cleveland*, 105 F.3d 1107, 1110 (6th Cir. 1997) (same); *Fernandes v. Limmer*, 663 F.2d 619, 633 (5th Cir. 1981) (same); *Moffett v. Killian*, 360 F. Supp. 228, 232 (D. Conn. 1973) (same). "Where, as here, a municipal ordinance imposes a fee which threatens to interfere with a right guaranteed by the First Amendment, the burden of proving the reasonableness of that fee rests with those seeking to enforce it." *Chester Branch, Nat'l Ass'n for Advancement of Colored People v. City of Chester*, 253 F. Supp. 707, 712 (E.D. Pa. 1966).

Without evidence that "the administrative fee charged and to be charged is equal to the cost incurred or to be incurred by [the municipality] . . . the administrative fee cannot be sustained." *E. Connecticut Citizens Action Grp. v. Powers*, 723 F.2d 1050, 1056 (2d Cir. 1983). The burden of justifying restrictions on First Amendment activity is not satisfied by "mere speculation or conjecture." *Edenfield v. Fane*, 507 U.S. 761, 770 (1993). The Village may not carry its evidentiary burden by relying upon "conclusory assertion[s] by an interested party, particularly when unsupported by any statistics or firsthand knowledge." *City of Watseka*, 796 F.2d 1547, 1556 (7th Cir. 1986), *aff'd*, 479 U.S. 1048 (1987); *see also Edenfield*, 507 U.S. at 771. Instead, the Village must produce concrete evidence supporting its regulation of First Amendment rights. *New York Youth Club v. Town of Harrison*, 150 F. Supp. 3d 264, 273 (S.D.N.Y. 2015) (Town failed to set forth sufficient documentary or testimonial evidence to show its governmental interests were actually served by or justify the solicitation regulation).

**B.      The Village Has No Evidence Connecting the $200 Fee to its Administrative Expenses, and Thus Fails to Carry its Constitutional Burden.**

The Village has adduced no evidence whatsoever demonstrating it designed the $200 Fee to defray the precise amount of its administrative expenses related to solicitation. The Village can make no showing that the Fee equals the costs associated with its solicitation regulatory scheme. Indeed, the Village has not even *calculated* any of its administrative expenses prior to setting its ordinance—and still has not done so. *See* Ex. A,[2] Village Dep. 118:14-119:19; 125:6-9; 135:2-15. The Village has not carried its burden to justify the Fee under the First Amendment. Because there is no genuine material fact issue, the Court should grant summary judgment that the Fee is unconstitutional and permanently enjoin it.

**1.      The Village Cannot Secure Summary Judgment Through an Untimely Attorney Affidavit Conflicting with the Village's 30(b)(6) Testimony.**

During discovery, Aptive served multiple interrogatories and requests for production to elicit all documents and communications relied on by the Village in determining the amount of the Fee. The Village did not object but responded to each that it had *no evidence*. Indeed, each time the Village responded that it had no such documents or communications. Ex. B, at 4-6; Ex. C, at 1-4.

Now, the Village has moved for summary judgment based solely on a naked attorney affidavit. *See* Def.'s Mot. SJ Aff. Several reasons support the Court in striking this scant evidence and denying the Village's Motion. *First*, this attorney affidavit is not a Statement of Material Facts in compliance with L.R. 56.1. *Second*, the attorney affidavit is not based on personal knowledge, which is a fundamental requirement of Rule 56(c)(4). *See* Def.'s SJ Aff. This evidence is therefore improper for summary judgment. *Rohlehr v. Brookdale Univ. Hosp. & Med. Ctr.*, 390 F. Supp. 2d

---

[2] Ex. A, Ex. B, and Ex. C refer to the exhibits attached to the Declaration in support of Plaintiff's Cross-Motion for Summary Judgment.

207, 208 (E.D.N.Y. 2005) ("Affidavits in opposition to summary judgment must be made on personal knowledge . . . An attorney affidavit does not meet this standard and is insufficient to defeat a summary judgment motion. Accordingly, facts recited in the defendant's Rule 56.1 statement are deemed admitted, to the extent they are supported by citation to admissible evidence.") (emphasis supplied). The Court may disregard the Village's factual assertions in the Affidavit and Memorandum of Law on these bases alone and admit the factual assertions in Aptive's Statement of Material Facts. *Rohlehr*, 390 F. Supp. 2d at 208. The Village's Memorandum of Law is not a proper vehicle through which to present facts to the Court. *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence."); *Giannullo v. City of N.Y.*, 322 F.3d 139, 142 (2d Cir. 2003) (stating that a memorandum of law "is not evidence at all"); *Knight v. Nassau Cty.*, No. 17CV0958SFJSIL, 2019 WL 3817392, at *5 (E.D.N.Y. Aug. 14, 2019) (J. Feuerstein) ("Naturally, any *factual statements must cite to the record with specificity* in the first instance.") (emphasis original).

*Third*, the Village's attorney affidavit flatly contradicts the Village's sworn 30(b)(6) testimony. The Village testified earlier that it does not know the amount of time it would take to issue a solicitor license, because it has not yet issued any licenses. Ex. A, Village Dep. 28:20-29:9. Yet here, the Village Attorney introduces through affidavit an estimate of 2 hours. Def.'s Aff., ¶¶ 8-9. The Village testified earlier that it does not have any evidence to support its view that background checks cost one hundred dollars per applicant and has not researched any background check companies. Ex. A, Village Dep. 118:14-119:19. Yet here, the Village Attorney introduces through affidavit an estimate of at least $100. Def.'s Aff. ¶ 7. This contradictory affidavit is improper. "[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous

deposition testimony." *Hayes v. New York City Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* The post-hoc affidavit submitted by the Village Attorney cannot establish any facts tying the Fee to administrative costs.

    ***Finally***, the Federal Rules prevent the Village from using the unproduced factual assertions in the attorney affidavit (*see* Def.'s Mot. SJ Aff. ¶¶ 7-10) to support or contest a dispositive motion. The factual assertions in ¶¶ 7-10 were requested during discovery, but the Village did not provide them. *Compare* Ex. B (Interrogatories 1-4) *with* Ex. C (Responses to Interrogatories 1-4). Rules 26 and 37 preclude the admission of responsive factual material withheld during discovery. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The intention of this preclusionary measure is to prevent the practice of 'sandbagging' an opposing party with new evidence, and it applies on motions for summary judgment." *Hooks v. Forman Holt Eliades & Ravin LLC*, No. 11 Civ. 2767 (LAP), 2015 WL 5333513, at *4 (S.D.N.Y. Sept. 14, 2015); *see also Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254 (S.D.N.Y. 2016) (exhibits appended to witness declaration that had not been produced to defendant during discovery would not be considered on motion for summary judgment).

    The Village must be held to its discovery responses, in which Aptive requested the ***exact*** information the Village now belatedly attempts to introduce by affidavit.

## 2.      The Village Has Not Produced Any Evidence to Support the Fee.

The Village must be held to its discovery responses in the record. And the record before the Court shows the Village has adduced *no evidence* to support the Fee. It has no witness statements, studies, analyses, accounting reports, legislative findings, police reports, memoranda, or other data to support its Fee amount. The written discovery responses demonstrate this fact. Aptive's Request for Production No. 1 sought "All documents and communications reflecting any research, studies, investigations, analysis, accounting reports, memoranda, or other data related to the processing costs incurred by the Village in licensing solicitors." This discovery sought evidence of the administrative costs of the Village to process applications. The Village did not object, but simply responded: "Other than the work product of the Village Attorney, *no such documents exist.*" *See* Ex. B, at 6 (RFP 1); Ex. C, at 3 (Response to RFP 1).

Aptive's Request for Production No. 2 requested "All documents and communications reflecting any research, studies, investigations, analysis, or accounting reports, memoranda, or other data related to the costs incurred by the Village in enforcing Chapter 171 of the Village Code." Aptive issued this request to discover evidence used by the Village in assessing administrative enforcement costs. Again, the Village responded that "*no such documents exist*" beyond the Village Attorney's work product. Ex. B, at 6 (RFP 2); Ex. C, at 3 (Response to RFP 2).

Aptive's Request for Production 5 requested "All documents and communications considered by the Village in determining the $200 Fee amount." Again, the Village responded that "*no such documents exist*" beyond the Village Attorney's work product. *See* Ex. B, at 6 (RFP 5); Ex. C, at 4 (Response to RFP 5).

Finally, Request for Production 9 sought "All documents and communications related to or concerning the Village's determination of the $200 Fee amount." Once more, the Village responded that "**no such documents exist**" beyond the Village Attorney's work product. *See* Ex. B, at 6 (RFP 9); Ex. C, at 4 (Response to RFP 9).

The Village confirmed this lack of research, studies, investigations, analysis, accounting reports, memoranda, or other data in the 30(b)(6) deposition. There, the Village testified unequivocally that no documents exist to support its contention that $200 represents the administrative processing costs of each solicitor license:

> 13   Q    So the village doesn't have any documents or
> 14   communications that show any research, studies,
> 15   investigations, analyses, accounting reports, memoranda
> 16   or other data related to the processing costs that the
> 17   village has for solicitor licenses?
> 18   A    No.

Ex. A, Dep. 75:13-18. The Village further testified it had no evidence supporting its claims about enforcement costs relative to this Ordinance:

> 19   Q    I'm on number two now.
> 20        Are you aware of any documents or
> 21   communications that show any research or studies or
> 22   investigations or analyses or accounting reports or
> 23   memoranda or other data that the village has that are
> 24   related to the costs that it incurs for enforcing
> 25   Chapter 171 of the village code?

> 1    A    No.

Ex. A, Village Dep. 75:19-76:1. These are binding corporate admissions that the Village does not have evidence tying its Fee to administrative expenses. *Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*, No. 10 CIV. 4933 ALC GWG, 2013 WL 81263, at *7 (S.D.N.Y. Jan. 8, 2013) ("As

the Rule 30(b)(6) corporate deponent, Ms. Nadolna's testimony at her deposition is binding upon TVP.") (citing *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 268 (2d Cir. 1999)).

Courts have repeatedly invalidated First Amendment license fees where the municipality could not produce any accounting reports or other analyses showing the precise amount of administrative expense. In *Turley v. New York City Police Dep't*, the court invalidated a $45 fee for a sound device permit because the City did not adduce "sufficient evidence" of the time spent processing permits and the hourly salary of the city official doing the processing. 988 F. Supp. 667, 674–75 (S.D.N.Y. 1997). The City also "provided no evidence" of the hours spent or hourly salary of officials in doing other tasks incidental to enforcing the ordinance. Because the record did "not provide sufficient evidence from which to estimate these other costs" or the costs associated with processing, the fee was unconstitutional. *See also E. Connecticut Citizens Action Grp. v. Powers*, 723 F.2d 1050, 1056 (2d Cir. 1983) ("The court below found no evidence that the administrative fee charged and to be charged to plaintiffs is equal to the cost incurred or to be incurred by defendants . . . Absent such a showing, DOT's administrative fee cannot be sustained.").

The same is true here. The Village has produced ***no evidence at all*** to support its estimated processing costs and ***no evidence at all*** to support its estimated enforcement costs. Ex. A, Village Dep. 43:3-12; 45:5-46:10; 75-76; Ex. B, at 4-6; Ex. C, at 1-4. The municipality in *Turley* produced a detailed cost methodology with multiple exhibits, yet its evidentiary showing was still insufficient. By this measure, the Village's total lack of evidence for the Fee underscores its extreme unconstitutional and arbitrary nature. *See also Big Hat Books v. Prosecutors*, 565 F. Supp. 2d 981, 994–95 (S.D. Ind. 2008) ("Defendants have provided not a shred of evidence suggesting that the $250.00 fee is proportional to the amount of work required by the secretary of state's office

resulting from a filing, and we cannot fathom how 'notification of local officials' could justify such a fee. Such a requirement does not pass constitutional muster.").[3]

The Fifth Circuit echoed this clear requirement for evidence to justify the Fee amount. In *Limmer*, the court struck down even a small fee imposed on First Amendment activity at an airport, when the government had not produced evidence of the administrative expense purportedly defrayed by such fee. *Fernandes v. Limmer*, 663 F.2d 619 (5th Cir. 1981). There, the DFW airport claimed a $6.00 literature distribution and fund solicitation fee "was to be used in defraying the costs incurred by the Board in investigation and preparation of the permit and subsequent supervision." *Id.* at 632. But when challenged, the municipality could not produce "any support for its contention that the $6.00 fee is needed to defray the costs of operating the permit system." *Id.* at 633. The $6.00 fee failed First Amendment scrutiny because the government could not demonstrate a concrete link between the fee and the costs of the licensing process. *Id. See also Chester Branch, Nat'l Ass'n for Advancement of Colored People v. City of Chester*, 253 F. Supp. 707, 709 (E.D. Pa. 1966) ("Defendants have produced no evidence as to the relationship, or as to the reasonableness of the relationship, if any, between the twenty-five dollar fee imposed by Chester Ordinance No. 82-1955 and the cost of enforcing said ordinance.").

The Village's failure to produce any supporting documents for its Fee is fatal. The Village admits it has no documents, witness statements, studies, analyses, data, accounting reports, legislative findings, police reports, memoranda, or other information of any kind upon which it relied or consulted when passing this Fee. Ex. A, Village Dep. 75-76, 78. This failure to produce evidence dooms the Fee's constitutionality. *E.g.*, *AAK, Inc. v. City of Woonsocket*, 830 F. Supp.

---

[3] Like the Village (*see* Def.'s Mot. S.J. and Aff.), the municipality in *Big Hat Books* attempted to rely on the arguments of counsel as its "evidence" of administrative expense. The court held that this fell far short of justifying the license fee.

99, 105 (D.R.I. 1993) ("The City has provided no estimates of projected man hours for enforcement of the provisions. Plaintiff has shown that there is no evidence at all in support of the differential license fee, and is therefore entitled to summary judgment."); *S.-Suburban Hous. Ctr. v. Greater S. Suburban Bd. of Realtors*, 935 F.2d 868, 897–98 (7th Cir. 1991) ("the City failed to present any specific evidence of dollar figures reflecting either the revenue it generated from its sign permit fees or its costs in administering its sign regulations. Because of the failure of Country Club Hills to demonstrate a reasonable relationship between its permit fees and administrative costs, we hold that the municipality's permit fee ordinance is unconstitutional."); *see also Covenant Media of Illinois, L.L.C. v. City of Des Plaines, Ill.*, No. 04 C 8130, 2005 WL 2277313, at *5 (N.D. Ill. Sept. 15, 2005) (invalidating billboard licensing fee because city failed to produce evidence of its costs of enforcing its permitting scheme or billboard restrictions).

3.    **The Village Did Not Conduct Any Research or Make Any Findings of its Administrative Expenses Prior to Setting the Fee.**

The Village concedes that it *performed no research, conducted no studies, and did no investigation* of its administrative expenses prior to setting the $200 Fee amount.

Courts uniformly hold that a city must conduct research and perform detailed studies of its administrative costs to justify a license fee. In *Fly Fish, Inc.*, the Eleventh Circuit enjoined a license fee for First Amendment adult entertainment expression because the city had no studies to support its claim that the fee amount matched its administrative expenses. 337 F.3d at 1315. The City conceded "that it ha[d] conducted no real accounting of the costs of administering its licensing program." *Id.* Instead, the City tried to justify its license fee (as the Village does here) based solely on the ipse dixit argument of counsel that the fee was "reasonable as a matter of law." *Id.* The Court rejected this justification and extended no deference to the municipality: "*Absent a record sufficient to support the City's claim that its licensing fee is constitutionally reasonable*, we hold

that the present fee is unconstitutional." *Id.* (emphasis added). Like the Village, the City of Cocoa

Beach claimed the licensing fee was justified by the cost of processing the application. But the

court held that, absent an evidentiary record showing that the fee was necessary to recoup the costs

of processing the license application, it was unconstitutional. *Id.*

As in *Fly Fish*, the Village did not investigate any of its administrative expenses and has

no record of them, so the $200 Fee cannot be constitutional. ***First***, the Village failed to consult the

Clerk's office prior to setting the Fee—even though that office handles all the administration for

solicitation licenses and is the only office that would know the administrative expenses of

licensing:

> 2    Q    You're the person who would be most
> 3    knowledgeable about the expenses that the village incur
> 4    related to solicitation; isn't that right?
> 5    A    Yes, I would be.  I suppose I could be the
> 6    person that would be able to figure out how much, yes.

Ex. A, Village Dep. 63:2-6.

> 10    Q    But you weren't asked about that in this
> 11    instance, were you?
> 12       MR. RYAN:  Objection.
> 13       Go ahead, you can answer.
> 14    A    They don't generally ask me if I
> 15    have comments, I just give the comments.  They don't ask
> 16    me about it.
> 17    Q    But the village knows that you're the person
> 18    or your office is in charge of administering this
> 19    ordinance, do they not?
> 20    A    Yes.
> 21    Q    But they don't have a pattern of asking you
> 22    about the contents of this ordinance, do they?
> 23    A    No.

Ex. A, Village Dep. 62:10-23; *see also id.* 60:2-63:13. And the Village repeatedly admitted this

lack of consultation in its discovery responses:

Request for Admission 1: "Admit that the Village did not consult any documents or individuals beyond the Village Attorney (John Ryan) in determining the $200 Fee." Ex. B, at 7.

> Response: "**Admit**." Ex. C, at 4.

Interrogatory 1: "Identify all documents, witness statements, studies, analyses, data, accounting reports, legislative findings, police reports, Village Clerk memoranda, or other information of any kind upon which the Village relied or which it consulted to determine the $200 Fee amount." Ex. B, at 4.

> Response: "Other than the work product of the Village Attorney, **no such documents exist.**" *See* Ex. C, at 1.

Interrogatory 2: "Identify each Village employee, Village representative, Village official, or third party involved or consulted by the Village in determining the $200 Fee amount, providing the contact information of each." Ex. B, at 4.

> Response: "John E. Ryan, Village Attorney." Ex. C, at 2.

Interrogatory 9: "Describe in detail the process undertaken by the Village in drafting and amending Chapter 171 of the Village Code in 2019. Include in your answer each person involved in the drafting and amendment process, as well as a description of his/her involvement." Ex. B, at 5.

> Response: "The Village Attorney." Ex. C, at 3.

The Village cannot carry its burden to show a tight fit between the Fee and its actual administrative expenses, when it failed to consult the only office possessing the information on such expenses.

*Second*, the Village wholly failed to conduct any other types of studies into its administrative expenses for processing licenses or regulating solicitation. The Village's 30(b)(6) representative admitted:

> 3    **Q    As to RFP number one, did the village do any**
> 4    **research or studies or investigations or analyses or do**
> 5    **any accounting reports or furnish any memoranda or**
> 6    **compile any data related to its processing costs**
> 7    **incurred by the village to license solicitors?**
> 8    **A    No.**

Ex. A, Village Dep. 78:3-8.

The Village now perplexingly claims it will need up to $100 to perform a background check on each applicant, *see* Def.'s Mot. SJ Aff. ¶ 7, yet it testified under oath that it has not taken estimates from any background check companies to determine the Village's cost for performing a background check. Ex. A, Village Dep. 118:14-119:9. Moreover, the Village has conceded that it is unaware of any documents or communications that would show the Village's procedure for conducting a criminal background check. Ex. A, Village Dep. 76:2-5, 78:16-20. And the Village further admitted that there has not been any background check done for solicitor licenses in the past three years. Ex. A, Village Dep. 27:2-10.

The Village also has no documents or communications that show any research or studies or investigations or analyses or accounting reports or memoranda or other data to support its figures regarding enforcement costs for Chapter 171 of the Village Code. Ex. A, Village Dep. 75:19-76:1; *see also id.* 78:9-20. The Village did not research enforcement costs prior to enacting the $200 Fee amount. Ex. A, Village Dep. 124:24-125:9. And the Village does not know how much it spent on enforcement costs related to solicitation in the years 2017–2019, and has conceded that the amount *could even be zero*. Ex. A, Village Dep. 45:5-46:10. "To prove enforcement costs, the City must provide evidence that its enforcement efforts are directly related to [the solicitor licensing scheme], and not to some other regulatory scheme." *Turley*, 988 F. Supp. at 675. The Village has not done so.

Without a record that it considered concrete evidence of administrative costs for processing licenses or enforcing its solicitation ordinance—or even showing that it consulted the very people charged with administration (the Clerk)—the Village cannot demonstrate the Fee is constitutional. The factual assertions in the post-hoc affidavit submitted by the Village Attorney (Def.'s Mot. and Aff. ¶¶ 7-10), which were not produced in discovery, cannot link the Fee to administrative costs.

*See* Section B.1, *supra*. The Village has already admitted it did not know the administrative costs when it passed the law. It conducted no research or investigation into this matter. The Fee is arbitrary.

### 4.    The Village's Most Recent Cost Estimates Are Entirely Speculative and Therefore Fail the Constitutional Standard.

The Village's estimates of different categories of expenses—***all of which were made months after the $200 was passed into law***—cannot carry its burden to show the Fee is reasonably related to actual administrative costs of licensing solicitors. *See* Def.'s Mot. and Aff. ¶¶ 5-10. None of the Village's recently concocted expense categories appeared in the September 2019 ordinance that enacted the $200 Fee, demonstrating that none of these categories were considered at the time of setting the Fee amount. ***Only after*** Aptive challenged the Fee did the Village amend its ordinance to state that the $200 Fee covers the following types of expenses: a) processing costs; b) criminal background checks; c) maintenance of the "No Knock" list; and d) enforcement of the provisions of this chapter of the Code. Def.'s Mot. SJ Aff. and Ex. A (§ 171-3) (January 2020). This post-hoc justification cannot carry the Village's burden.

Courts have repeatedly invalidated fees when the purported administrative costs are speculative. In *Baldwin v. Redwood City*, 540 F. 2d 1360, 1371-72 (9th Cir. 1976), the city sought to justify fees on political signs by introducing evidence purporting to show an average inspection cost of $10 per sign and an average removal cost of $25 per sign. On its face this evidence suggested the fees were not excessive. The court, however, held the city's cost estimates inadequate because the assumptions underlying them were unreasonable, bearing no relationship to actual time spent inspecting or removing signs. *Id.* The city's purported inspection and removal fees were "essentially arbitrary, bearing no relationship" to the actual cost of inspection. *Id.* The failure to apportion fees based on the city's ***actual costs*** demonstrated the fees were arbitrary.

In *Bayside*, the city offered far more evidence than the Village does here, but still failed to justify its license fee because the purported costs were speculative estimates, not based on actual cost records. Far exceeding the Village's proffer in this case, the city in *Bayside* introduced detailed testimony concerning its anticipated costs. City witnesses testified about the total annual enforcement costs with respect to additional police officer salaries, support staff, cars and other equipment to regulate the adult business at issue. *Bayside Enterprises, Inc. v. Carson*, 450 F. Supp. 696, 705–06 (M.D. Fla. 1978). But still the court rejected this evidence because it was speculative. "Although the City's witnesses explained their cost projections in terms of fixed manpower and equipment needs, none of the witnesses was able to tie his particular projections to specific administrative requirements in anything other than a speculative manner." *Id.* at 705.

The government must demonstrate that its cost estimate is based on reasonable, ***non-speculative*** assumptions. Otherwise the fee based on such an estimate is unconstitutional. *Id.* at 705. *See also Moffett v. Killian*, 360 F. Supp. 228, 232 & n.6 (D. Conn. 1973) (administrative costs based on estimates of clerk's annual salary were speculative because the "State failed to prove exactly what she did, and it leaves entirely to speculation whether or not all of her work was essential for the purposes of [the regulation]"). *See* Def.'s Mot. SJ Aff., ¶¶ 8-9 (speculation as to hours spent by Village Clerk to regulate solicitation).

Here, the Village's cost estimates are nothing more than a guess. The Village admitted that it does not know any of its administrative costs because ***it has never licensed a solicitor***:

```
10      Q      Has the village ever licensed a solicitor
11   before?
12      A      No.
13      Q      So what basis --
14      A      I'm using approximate in all my answers
15   because we have not done it.  So we're approximating the
16   costs.  We don't know for sure what the costs are until
17   we have one that we can process fully through the
18   application, and I don't know what the failure to pass
19   and be disapproved is because we haven't done that.
20             I'm approximating.  I'm guessing.  I'm not --
21   I don't know for sure because we haven't done it.
```

Ex. A, Village Dep. 113:10-21. The Village admits it has no way of knowing how much time (and therefore how much expense) it will take to issue a solicitor license. Ex. A, Village Dep. 28:20-29:9. A municipality cannot justify a license fee based on speculation about administrative costs. The First Amendment requires far more. And the Village cannot escape this burden simply because it has a new ordinance. Instituting a new licensing regime does not excuse the municipality from justifying its fee with reference to actual data. *See AAK, Inc. v. City of Woonsocket*, 830 F. Supp. 99, 105 (D.R.I. 1993) ("The City admits that it has no experience with implementing the ordinance's restrictions, because plaintiff is the only adult cabaret in Woonsocket and is exempt from those requirements. The City has provided no estimates of projected man hours for enforcement of the provisions. Plaintiff has shown that there is no evidence at all in support of the differential license fee, and is therefore entitled to summary judgment."). As the Village admitted, it is only providing "an approximation" because it has "performed no studies" as to its administrative costs for solicitors. The estimates are pure speculation:

```
 2      Q    Just to be clear, the village is only
 3   guessing about what its administrative costs would be
 4   with respect to solicitor licenses?
 5            MR. RYAN:  Object to the form of the
 6   question.
 7            You can answer.
 8      A    We're approximating.
 9      Q    But it has not done any studies --
10      A    Correct.
11      Q    -- to support it's approximation?
12            MR. RYAN:  Object to the form of the
13   question.  Asked and answered.
14            You can answer.
15      A    Correct.
```

Ex. A, Village Dep. 135:2-15; *see also id.* 43:3-12 (Village concedes no way to know cost to issue a solicitor license because Village has never issued one); *id.* 106:13-24 ("seventy-five dollar" enforcement cost estimate not made by Village Clerk; Village Clerk not consulted in making that approximation); *id.* 45:5-46:10 (Village has no knowledge of enforcement costs from 2017-2019 and conceded amount "could be zero").

The Court should also disregard the Village's administrative cost estimates as speculation because the Village did not even compute the $200 Fee with East Rockaway specifically in mind. Rather, the Fee was copied, *verbatim*, from another municipality's ordinance without any consideration of the Village's administrative costs:

```
 8      Q     And the request for admission asked the
 9   village whether it copied its ordinance from Floral
10   Park, --
11      A     Yes.
12      Q     -- you agree with me on that?
13      A     Yes.
14      Q     What was the Village of East Rockaway's
15   response to that question?
16      A     Admit.
17            MR. RYAN:  Asked and answered
18      Q     So if East Rockaway copied the ordinance of
19   Floral Park, that would include copying its fees.
20            Do you agree?
21      A     Yes.
22      Q     So the fees in the new East Rockaway
23   ordinance are really just the fees of Floral Park; is it
24   not?
25            MR. RYAN:  Objection to the form of the
```

```
 1   question.
 2      A     Yes.
```

Ex. A, Village Dep. 71:8-72:2. Because the Village copied and pasted the Fee from another municipality, the Court should reject any post-hoc justifications based on administrative expenses. All these newly asserted "costs" are speculation, created after the fact to justify a fee that was set without study, without research, without investigation, and without a constitutional basis. It is the Village's burden to justify the $200 amount. *Eastern Connecticut Citizens Action Group v. Powers*, 723 F. 2d 1050, 1056 (2nd Cir. 1983). It has not—and cannot—do so.

## CONCLUSION

The Court should invalidate this Fee under the well-established First Amendment standard. The Fee is arbitrary, which confirms its true intent: to discourage, or prohibit entirely, solicitation in the Village. The Village has now twice defied the Court's orders to allow reasonable commercial solicitation within its borders. The Village has adduced no evidence, and performed no investigation, prior to setting this Fee. Any cost computations offered by the Village came after discovery closed and have no evidentiary support. The Court should therefore declare the Fee,

found at Village Code §§ 171-3 and 171-5(A), unconstitutional as violative of the First Amendment, and permanently enjoin enforcement of Village Code §§ 171-3 and 171-5(A).

Dated: March 31, 2020                        Respectfully submitted,

                                             Daniel E. DeCicco, Esq.
                                             DARGER ERRANTE YAVITZ & BLAU LLP
                                             116 East 27th Street at Park Avenue
                                             New York, NY 10016
                                             (212) 452-5300

                                             /s/ Kent D. Krabill
                                             Kent D. Krabill, admitted *pro hac vice*
                                             Texas Bar No. 24060115
                                             kkrabill@lynnllp.com
                                             Samuel Clinton Cowan, admitted *pro hac vice*
                                             Texas Bar No. 24109760
                                             ccowan@lynnllp.com
                                             **LYNN PINKER COX & HURST, LLP**
                                             2100 Ross Avenue, Suite 2700
                                             Dallas, Texas 75201
                                             (214) 981-3800

                                             **Attorneys for Plaintiff**
                                             **Aptive Environmental, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2020, a true and correct copy of the above and foregoing was served on all counsel of record via email, and a cover letter filed on ECF, in compliance with the Court's Individual Rule 4(B).

                                             /s/ Kent D. Krabill
                                             Kent D. Krabill