## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK
## CENTRAL ISLIP DIVISION

| | | |
|---|---|---|
| **APTIVE ENVIRONMENTAL, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **VILLAGE OF EAST ROCKAWAY,** | § | **No. 2:19-cv-03365-SJF-SIL** |
| **NEW YORK,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

### DECLARATION OF CLINT COWAN

I, Clint Cowan, declare as follows:

1.       I am over the age of twenty-one (21). I have never been convicted of a felony. I am of sound mind and fully competent to make this Declaration. The facts stated herein are true and correct based on my personal knowledge.

2.       I am an attorney at the law firm of Lynn Pinker Cox & Hurst, LLP, located at 2100 Ross Ave., Ste. 2700, Dallas, TX, 75201. Together with other attorneys at this firm, I serve as counsel to Plaintiff Aptive Environmental, LLC in this matter. I am personally familiar with the matters set forth herein by virtue of my role as one of the attorneys in the above-captioned suit.

3.       Attached to this Declaration in support of Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment, are true and correct copies (or true and correct excerpts of such copies) of the following documents, produced in this case:

| Date | Exhibit | Description |
|---|---|---|
| 2/6/2020 | A | 30(b)(6) Deposition of the Village of East Rockaway, NY (excerpts) |
| 10/30/2019 | B | Plaintiff's First Set of Discovery Requests to Defendant |
| 1/6/2020 | C | Defendant's Responses to Plaintiff's First Set of Discovery Requests |

4.       Included in the documents previously filed with the Court (identified by ECF Doc. No.) are true and correct copies (or true and correct excerpts of such copies) of the following documents produced in this case:

| Date | Doc. (ECF) | Description |
|---|---|---|
| 6/6/2019 | 1 | Plaintiff's Complaint |
| 6/6/2019 | 3 | Plaintiff's Brief in support of Order to Show Cause for Temporary Restraining Order |
| 6/6/2019 | 5 | Order to Show Cause for a Temporary Restraining Order and Injunction re: §§ 171-16 and 171-18 of the Village Code |
| 6/12/2019 | 12 | Plaintiff's Amended Complaint |
| 6/6/2019 | 12-1 | Village Code Chapter 171 (excerpted), in effect until June 2019. |
| 6/6/2019 | 12-2 | Declaration of Pierson (Pierce) Baldwin, Long Island Branch Manager, Aptive Environmental, LLC |
| 6/10/2019 | 12-12 | Resolution Authorizing Village Moratorium re: Solicitation Permit Issuance |
| 6/12/2019 | 13 | Plaintiff's Amended Motion for Temporary Restraining Order |
| 6/14/2019 | 14 | Order to Show Cause for a Temporary Restraining Order and Injunction re: §§ 171-14, 171-16 and 171-18 of the Village Code |
| 7/16/2019 | 24 | Preliminary Injunction Opinion and Order, preliminarily enjoining §§ 171-14, 171-16 and 171-18 of the Village Code |
| 7/30/2019 – 8/16/2019 | 44-1 | Correspondence among Counsel re: Solicitation Fee and Rule 26(f) Conference |
| 9/9/2019 | 44-6 | Amended Ordinance of the Village of East Rockaway, NY, amending Chapter 171 of the Village Code (filed with the Court on 12/13/2019) |
| 10/25/2019 | 44-7 | Declaration of Pierson (Pierce) Baldwin, Long Island Branch Manager, Aptive Environmental, LLC (filed with the Court on 12/13/2019) |

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 31st day of March, 2020 in Dallas, Dallas County, Texas.

_____
Clint Cowan

# EXHIBIT A

Patricia Renner - February 6, 2020

```
 1
 2  UNITED STATES DISTRICT COURT
    FOR THE EASTERN DISTRICT OF NEW YORK
 3  CENTRAL ISLIP DIVISION
    --------------------------------------X
 4
    APTIVE ENVIRONMENTAL, LLC,
 5
                    Plaintiff,
 6
               - against -
 7
    VILLAGE OF EAST ROCKAWAY, NEW YORK,
 8
                    Defendants.
 9
10  NO.:  2:19-cv-03365-SJF-SIL
11  --------------------------------------X
12
                          131 Tulip Avenue
13                        Floral Park, New York
14                        February 6, 2020
                          10:02 A.M.
15
16
17
18          DEPOSITION OF PATRICIA RENNER,
19  a witness on behalf of the Defendant, taken by
20  the attorney for the Plaintiff, pursuant to Rule
21  30(b)(6), and held before Deborah Thier, a Notary
22  Public of the State of New York at the above-stated
23  time and place.
24
                    *    *    *    *
25
```

Patricia Renner - February 6, 2020

```
 1  A P P E A R A N C E S:
 2
 3       LYNN PINKER COX & HURST, LLP
                 Attorneys for the Plaintiff
 4               2100 Ross Avenue - Suite 2700
                 Dallas, Texas  75201
 5
         BY:  SAMUEL CLINTON COWAN, ESQ.
 6
 7
 8       RYAN, BRENNAN & DONNELLY, LLP
                 Attorneys for the Defendant
 9               131 Tulip Avenue
                 Floral Park, New York  11001
10
         BY:  JOHN E. RYAN, ESQ.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                    FEDERAL STIPULATIONS

2

3          IT IS HEREBY STIPULATED AND AGREED,

4     by and between the parties hereto, through

5     their respective Counsel, that the

6     certification, sealing and filing of the

7     within examination will be and the same are

8     hereby waived;

9

10         IT IS FURTHER STIPULATED AND AGREED

11    that all objections, except as to the form

12    of the question, will be reserved to the

13    time of the trial;

14

15         IT IS FURTHER STIPULATED AND AGREED

16    that the within examination may be signed

17    before any Notary Public with the same

18    force and effect as if signed and sworn to

19    before this Court.

20

21

22

23

24

25

Patricia Renner - February 6, 2020

1  for a background check to date?
2      A     Well, we do background checks only in
3  recreation for contractors, but not for solicitation
4  yet.  We've only received one application so far.
5      Q     So there were no background checks done from
6  the years 2017 through 2019?
7      A     No.
8      Q     There hasn't yet been any background check
9  done in 2020?
10     A     No.
11     Q     Are there any other people in other village
12 departments who might have any job tasks related to
13 solicitation?
14     A     No.
15     Q     It's only the village clerk's office
16 that regulates solicitation?
17     A     Correct.
18     Q     How many hours did the village spend in tasks
19 in relating to licensing solicitors in 2017?
20     A     Zero.
21     Q     What about in 2018?
22     A     Zero.
23     Q     2019?
24     A     I'm not sure in 2019.
25     Q     Can you give me a range of hours?

Patricia Renner - February 6, 2020

1     A     I may have spent some hours developing
2  the new form.  Several hours actually developing
3  the forms that would be used, but I'm not sure if
4  it was December or January of this year that I've
5  been doing that.
6     Q     Would you say two to three hours developing
7  the form?
8     A     No, longer.
9           Well, there was the -- the e-mails from
10 residents to be placed on a do not knock list and the
11 forms to be used for the applications.
12    Q     Would you say between three and five hours?
13    A     Between December and January I would say at
14 least seven hours.
15    Q     Between December of 2019 and January of 2020?
16    A     Yes.
17    Q     What about from January through November of
18 2019, how many hours did the village clerk spend on --
19    A     None.
20    Q     How many hours under the new ordinance does
21 it take the village clerk's office to create a solicitor
22 license?
23    A     To create the license?  I'm not sure I
24 understand.
25          To create the application or to generate the

Patricia Renner - February 6, 2020

1    application?

2        Q    After the application is submitted, how many

3    approximate hours of the village's time does it take

4    to --

5        A    I'm not sure because we haven't gotten any

6    applications submitted as of yet.

7        Q    So there's no way to know one way or the

8    other?

9        A    Correct.

10       Q    So we've spoken a little bit about licensing

11   and you mentioned an application.

12            In 2017 did the village have an application

13   for a solicitor's license?

14       A    No.

15       Q    What about in 2018?

16       A    No.

17       Q    In 2019?

18       A    That's when we developed it.

19       Q    That was developed in December of 2019?

20       A    Yes.

21       Q    So from January through November of 2019

22   there was not an application for a solicitor license in

23   the village?

24       A    From what?

25       Q    January through November of 2019.

```
 1              MR. RYAN:  Object to the form of the
 2       question.
 3       A      There were no commercial solicitation
 4  licenses issued ever since I've been there that
 5  I'm aware of.
 6       Q      So there's no way to know --
 7       A      Correct.
 8       Q      -- what the cost would be --
 9       A      Correct.
10       Q      -- because no commercial solicitation
11  licenses were issued by the village?
12       A      Correct.
13       Q      There are certain exemptions in the
14  ordinance.
15              Do you recall that?
16       A      No.
17       Q      Certain groups don't have to pay, 'cause I'm
18  looking at Section C of 171-17.
19       A      Yes.
20       Q      Do you know how much it cost the village in
21  2019 to issue a single solicitor license for a member of
22  a recognized village association of war veterans,
23  police, firemen, or religious or charitable
24  organization?
25       A      No license fee shall be charged.
```

1    Q    So you're not aware of any losses to the
2  budget of the village by issuing licenses to these
3  exempted groups?
4    A    No.
5    Q    So in fiscal year 2017 for the village, how
6  much money did the village spend on enforcement related
7  to solicitation?
8    A    In what year?
9    Q    2017.
10   A    I don't know.
11   Q    Can you give me an approximation?
12   A    I can't recall how many times the code
13 enforcement were called on a solicitation call or
14 complaint, so I wouldn't be able to calculate it if I
15 don't remember how many times it happened.
16   Q    Was it more than zero?
17   A    I don't know.
18   Q    So it could be zero?
19   A    It could be zero, it could be more.  I'm not
20 sure.
21   Q    What about in 2018, how much did the village
22 spend on enforcement related to solicitation?
23   A    I'm not really sure.
24        Again, anything that I would give you would
25 be approximate, and I don't really -- I never did a

1    calculation for it.

2         Q     So it could be zero?

3         A     Yes.

4         Q     What about in fiscal year 2019, how much

5    money did the village spend on enforcement related to

6    solicitation?

7         A     I don't know an amount.  I did not do a

8    calculation.  There were several complaints, however.

9         Q     But it could be zero?

10        A     It could be.

11        Q     So I also notice in this ordinance that

12   there's a Section 171-19.  I'm back on Exhibit 2.  It's

13   entitled posted premises.

14               What does this section mean?

15        A     You should not knock or ring the bell on any

16   premise that has a no knocking or no soliciting sign on

17   their premises.

18        Q     There are no magic words that have to be put

19   on a sign, it's just the meaning I don't want people to

20   knock on my door?

21               MR. RYAN:  Object to the form of the

22         question.

23               You can answer.

24        A     Can you repeat that, please?

25        Q     Sure.

1      A      Okay.

2      Q      You have in front of you what we've marked as

3   Exhibit 4, and this is a proposed Local Law Filing.

4             Have you seen this document before?

5      A      Yes.

6      Q      Can you identify this document?

7      A      This is the Local Law Number 7 of 2019.

8      Q      We see from the top line that this Local Law

9   is being presented to the Village of East Rockaway; is

10  that accurate?

11     A      Yes.

12     Q      Can you flip with me to page nine -- or page

13  eight of eight, excuse me.

14            The September date here, does that sound

15  about accurate as the time frame for this draft

16  ordinance?

17     A      Yes.

18     Q      Did anyone send you this draft before it was

19  presented to the board of trustees?

20     A      Yes, John Ryan does all our local laws for

21  us.

22     Q      So he sent it to you for your input and

23  comments prior to its presentation at the board of

24  trustees meeting?

25     A      I don't make any comments.  He just presents

1    it to me, we then present it to the board.

2        Q    When he presents it to you initially, that

3    happens at the board meeting; correct?

4        A    He e-mails it so that I can make copies for

5    the board at the board meeting.

6        Q    Does he send it to you and do you ever

7    provide comments on what the language ought to be in the

8    ordinance draft?

9        A    No.

10       Q    Has anyone from the village sought your input

11   on this draft amended ordinance?

12       A    No.

13       Q    Has anyone asked for your opinion on

14   the contents of this draft amended ordinance?

15       A    No.

16       Q    But you're the person in charge of

17   administering this ordinance as it relates to

18   solicitation; is that correct?

19       A    Yes.

20       Q    Do you find it strange at all that nobody

21   would consult you about this draft amended ordinance?

22            MR. RYAN:  Object to the form.

23            Do you understand the question?

24            THE WITNESS:  No, not really.

25            Strange, what does that mean?

Patricia Renner - February 6, 2020

1    Q    Do you think that as the person who is in
2  charge of administering this ordinance you should be
3  consulted about the task that it's going to require your
4  office to perform?
5    A    Yes.  If I have comments or if I think there
6  should be changes, I do make those comments and
7  recommendations to the board.
8    Q    Generally speaking; correct?
9    A    Correct, yes.
10    Q    But you weren't asked about that in this
11  instance, were you?
12        MR. RYAN:  Objection.
13        Go ahead, you can answer.
14    A    They don't generally ask me if I
15  have comments, I just give the comments.  They don't ask
16  me about it.
17    Q    But the village knows that you're the person
18  or your office is in charge of administering this
19  ordinance, do they not?
20    A    Yes.
21    Q    But they don't have a pattern of asking you
22  about the contents of this ordinance, do they?
23    A    No.
24        MR. RYAN:  Object to the form of the
25    question.

Patricia Renner - February 6, 2020

```
1              You answered.
2      Q     You're the person who would be most
3  knowledgeable about the expenses that the village incurr
4  related to solicitation; isn't that right?
5      A     Yes, I would be.  I suppose I could be the
6  person that would be able to figure out how much, yes.
7      Q     You know what these licenses cost to produce,
8  don't you?
9              MR. RYAN:  Which licenses, Counselor?
10             MR. COWAN:  The licenses that are referred to
11      in this draft amended Local Law at Exhibit 4.
12     A     If asked to give an approximation, then I
13  could.
14     Q     I want to turn with you in this draft law to
15  Section 171-2.
16              Do you see the reference in Section 171-2 to
17  another village?
18     A     Yes.
19     Q     If you look down with me at subsection
20  H, do you see in the last sentence of subsection H
21  that it refers to another village?
22     A     Yes.
23     Q     What village is that?
24     A     Village of Floral Park.
25     Q     Not the Village of East Rockaway;
```

Patricia Renner - February 6, 2020

1           I know what our fee is.  I don't know what
2    Lynbrook's fees are, I don't know what Valley Stream's
3    fees are, so I don't know that it was copied.  It's
4    possible, but I don't know that for a fact.
5        Q     But you agree with me that you just read a
6    request for admission?
7        A     Yes.
8        Q     And the request for admission asked the
9    village whether it copied its ordinance from Floral
10   Park, --
11       A     Yes.
12       Q     -- you agree with me on that?
13       A     Yes.
14       Q     What was the Village of East Rockaway's
15   response to that question?
16       A     Admit.
17             MR. RYAN:  Asked and answered.
18       Q     So if East Rockaway copied the ordinance of
19   Floral Park, that would include copying its fees.
20             Do you agree?
21       A     Yes.
22       Q     So the fees in the new East Rockaway
23   ordinance are really just the fees of Floral Park; is it
24   not?
25             MR. RYAN:  Objection to the form of the

Patricia Renner - February 6, 2020

1      question.

2      A     Yes.

3      Q     When the Village of East Rockaway took the
4  fees from the Floral Park ordinance, had it done any
5  studies about how high the fees would be under this new
6  licensing law?

7      A     No.

8      Q     Were you asked about the appropriate amount
9  of the twenty-five dollar process fee and two hundred
10 dollar license fee that are here in the East Rockaway
11 ordinance that we looked at earlier?

12     A     No.

13     Q     So you weren't asked for your input about how
14 high the fees ought to be?

15     A     No.

16     Q     Did you ever give an amount that you think
17 the fee ought to be?

18     A     No.

19     Q     Do you know why you weren't asked to give
20 input about the twenty-five dollar process fee and the
21 two hundred dollar license fee?

22     A     I do not set the fees for the village.

23     Q     But you are the person most knowledgeable
24 about what it would cost the village to issue these
25 licenses; isn't that right?

1    Q    If you could also look with me, Ms. Renner,
2  at Exhibit 5, and also turn to the requests for
3  production section of that document just so we have them
4  next to each other.
5         MR. RYAN:  Page six.
6    A    Requests for production?
7    Q    Yes.
8         Number one in the requests for production
9  that Aptive served, are you aware of any documents or
10  communications that the village has which would be
11  responsive to this request number one?
12    A    No, I'm not aware of any.
13    Q    So the village doesn't have any documents or
14  communications that show any research, studies,
15  investigations, analyses, accounting reports, memoranda
16  or other data related to the processing costs that the
17  village has for solicitor licenses?
18    A    No.
19    Q    I'm on number two now.
20         Are you aware of any documents or
21  communications that show any research or studies or
22  investigations or analyses or accounting reports or
23  memoranda or other data that the village has that are
24  related to the costs that it incurs for enforcing
25  Chapter 171 of the village code?

1      A      No.

2      Q      Number three, are you aware of any documents

3  or communications that would show the village's

4  procedure for conducting a criminal background check?

5      A      No.

6      Q      As to RFP number four, are you aware of any

7  documents and communications that the village has which

8  relate to your procedures in investigating an applicant

9  for a solicitor's license?

10     A      No.

11     Q      As to RFP number five, does the village have

12  any documents or communications that it considered in

13  determining the two hundred dollar fee amount?

14     A      No.

15     Q      As to RFP number six, does the village have

16  any documents or communications that it considered in

17  determining the twenty-five dollar process fee?

18     A      No.

19     Q      As to RFP number seven, does the village have

20  any documents or communications that would show its

21  total expense incurred in 2018 for licensing solicitors?

22     A      We're on number eleven?

23     Q      We're on number seven.

24     A      Sorry.

25     Q      No problem.

1      A      No.

2      Q      Just to be clear, the village doesn't have

3   any documents or communications that would show its

4   total expenses in 2018 for licensing solicitors?

5      A      Correct.

6      Q      What about as to RFP number eight, does the

7   village have any documents or communications which would

8   show its total expenses in 2019 for --

9      A      No.

10     Q      -- licensing solicitors?

11            Still no?

12     A      No.

13     Q      What about as to RFP number nine, does the

14  village have any documents or communications that are

15  related to or concern its determination of the two

16  hundred dollar fee amount?

17     A      No.

18     Q      As to RFP number ten, does the village have

19  any documents or communications that are related to its

20  determination of a twenty-five dollar process fee in the

21  new ordinance?

22     A      No.

23     Q      As to RFP number eleven, does the village

24  have any documents or communications that relate to or

25  concern the village's drafting, consideration or passage

1    of Local Law Number 7 to amend Chapter 171?

2        A    No.

3        Q    As to RFP number one, did the village do any

4    research or studies or investigations or analyses or do

5    any accounting reports or furnish any memoranda or

6    compile any data related to its processing costs

7    incurred by the village to license solicitors?

8        A    No.

9        Q    Related to number two, does the village have

10   any documents or communications that reflect any

11   research, studies, investigations, analyses or

12   accounting reports, memoranda or other data that it

13   considered or that relate to the costs incurred by the

14   village to enforce Chapter 171 of the village code?

15       A    No.

16       Q    Does the village have any documents or

17   communications which would show its procedure for

18   conducting criminal history or background checks on

19   applicants for solicitor licenses?

20       A    No.

21       Q    Does the --

22            MR. RYAN:  Just a second.  Didn't we

23       just go through this?

24            MR. COWAN:  We did, but I'm talking

25       about any documents that the village has.

Patricia Renner - February 6, 2020

```
1            MR. RYAN:  I thought you just went
2       through this in the prior set of questions.
3            MR. COWAN:  You can put your objection on the
4       record if you want.
5            MR. RYAN:  You're just asking the same
6       question.
7            MR. COWAN:  Do you want to object?
8       You're not asking me questions, that's not
9       how it works, as you know.
10           Do you want to object?
11           MR. RYAN:  I guess I'm objecting.
12           He's asking the same questions again.
13      I'd ask him not to ask the questions again,
14      but it's your game.
15           MR. COWAN:  Thank you.
16      Q    Does the village have any documents or
17 communications which relate to the village clerk's
18 procedures for processing and investigating applications
19 for solicitors licenses?
20      A    No.
21      Q    Does the village have any documents or
22 communications at all that it considered in determining
23 the two hundred dollar license fee amount?
24      A    No.
25           MR. COWAN:  Thank you.  You can put
```

Patricia Renner - February 6, 2020

```
 1        A     Yes.
 2        Q     It states here that the application for a
 3   license shall be in writing.
 4              Do you agree?
 5        A     Yes.
 6        Q     It also has to be addressed to the clerk.
 7              Do you also agree with that?
 8        A     Yes.
 9        Q     It also gives some information that must be
10   included in the application.
11              Do you see that?
12        A     Yes.
13        Q     That information is listed out in subsections
14   A through J.
15              Are you with me?
16        A     Yes.
17        Q     Does the village currently have an electronic
18   or paper application for a solicitor's license?
19        A     Yes.
20        Q     Where might an applicant find that
21   application?
22        A     You can request it in the clerk's office.
23   I'm not sure if we have it on line yet, because we're
24   still in the process of developing the solicitor's
25   application and procedures.
```

1          As I stated before, we've never issued any
2     prior -- have not issued one yet since I'm in the
3     village other than the non-for-profit, which just was a
4     letter.
5          Q    Was there a reason why the village never
6     previously gave licenses to for-profit solicitors?
7               MR. RYAN:  Objection.
8               You can answer.
9          A    There were never any requests for it.  We've
10    never received a request for it.
11         Q    Was there a policy against allowing it?
12         A    No, just never received any solicitors
13    requesting it other than the non-for-profits or
14    canvassing.
15         Q    In Section 171-2, the information that's
16    listed here in A through J, is all that information
17    requested on the current application that's been
18    recently developed?
19         A    I believe, I believe we have everything but
20    the vehicles that would be used in solicitation on the
21    application.  I missed that.
22         Q    Is the application still in draft form or can
23    an applicant get it right now?
24         A    They can get it.  We've sent one out to an
25    applicant.  As a result of a complaint, I sent one out

1   to Altice.

2       Q     Who is Altice?

3       A     Cablevision.

4       Q     So they were a company going door to door in

5   the village?

6       A     Correct.

7       Q     As you look through here at Section 171-2, do

8   you see any additional information that's included in

9   the new application that is not present here in the

10  ordinance?

11      A     No.

12      Q     So the village is not requesting any

13  information beyond what is here in the ordinance?

14      A     Correct.

15      Q     Currently if someone wanted to apply for a

16  solicitor license in the village, what would that person

17  have to do?

18      A     They'd have to request an application and

19  they would be sent a cover letter with the application,

20  and then once it's sent back into the village, then it

21  would be reviewed by the board.

22            Then we'd have to go through the procedures,

23  background check and review, and then have to send them

24  either a permit or -- which we haven't even made up the

25  permit yet, because this is brand new, and then -- oh,

Patricia Renner - February 6, 2020

1  and they would have to show us too whether they're, you

2  know, the corporation or a -- if they're there as the

3  non-for-profit, and then they would get the permit.

4       Q     Will the permit --

5       A     And I'm sorry I'm stuttering a little, it's

6  because we haven't done it yet, so I'm kind of just

7  muddling through.

8       Q     Understood.

9             Thank you for answering my questions, by the

10  way.

11             Do you think that the license itself, the

12  hard copy license, will be available by the fall of this

13  year?

14       A     Yes.  I see no reason why it wouldn't be.

15       Q     I want you to turn with me to subsection J in

16  that same section, and it says here such other

17  information as the board of trustees may require.

18             What do you take that section to mean?

19       A     That the board might require some additional

20  information and we would request it in writing.  After

21  reviewing, if they have any questions regarding what's

22  maybe not clear what goods they're going to be

23  soliciting, et cetera.

24       Q     Anything else?

25       A     I can't think of anything.

1  you've mentioned today?

2      A     Well, there's the e-mail that I would

3  receive, there's the e-mail -- then there's the e-mail

4  in response, and then there's adding the person's

5  information onto the list.

6      Q     So that's the ten to fifteen minute process

7  we discussed earlier?

8      A     Yes.

9      Q     And the village clerk's office has only done

10 or only sent the no knock list to one prospective

11 solicitor; is that correct?

12     A     Yes.

13     Q     So the fifty to seventy-five dollar figure is

14 just a guess from the village, is just an estimate of

15 the cost to the village it would incur?

16           MR. RYAN:  Objection to form.

17           You can answer.

18     A     It's an approximation, yes.

19     Q     Did you make that approximation or did

20 somebody else come up with that figure?

21     A     That was -- yeah, that was a figure that was

22 given to me.

23     Q     It was given to you by someone else?

24     A     Yes.

25     Q     Does the village have any documents or other

Patricia Renner - February 6, 2020

1   one hundred dollars, at least.  My time, the board's

2   time, the denial letter, those all are costs that we

3   incur.

4           So, no, twenty-five dollars is not the total

5   cost of that.

6       Q    What do you think the total cost is?

7       A    Approximately?

8       Q    Yes.

9       A    Two hundred dollars.

10      Q    Has the village ever licensed a solicitor

11  before?

12      A    No.

13      Q    So what basis --

14      A    I'm using approximate in all my answers

15  because we have not done it.  So we're approximating the

16  costs.  We don't know for sure what the costs are until

17  we have one that we can process fully through the

18  application, and I don't know what the failure to pass

19  and be disapproved is because we haven't done that.

20          I'm approximating, I'm guessing.  I'm not --

21  I don't know for sure because we haven't done it.

22      Q    The two hundred dollar fee is a guess?

23          MR. RYAN:  Object to the form of the

24      question.

25          You can answer.

Patricia Renner - February 6, 2020

```
1    to cover the cost caused by somebody who's violating the
2    ordinance?
3              MR. RYAN:  Object to the form of the
4         question.
5              You can answer.
6    A    Would that be enough is the question?
7    Q    To cover the cost of code enforcement.
8    A    I believe that would be enough.
9    Q    Can you look with me, please, at Exhibit 6.
10   Can you turn with me, please, to the village's response
11   to interrogatory number five.  Just let me know when
12   you're there.
13   A    I'm there.
14   Q    Do you agree, or does the village agree that
15   it costs it one hundred dollars, approximately, to do a
16   criminal background check for a solicitor's license
17   application?
18   A    Approximately, yes.
19   Q    For what reasons?
20   A    For what reasons?
21   Q    Yes.
22   A    Because we would have to hire a company to do
23   that.  So that cost is something that the company we
24   hire would receive and charge.
25   Q    What company does the village plan to hire?
```

Patricia Renner - February 6, 2020

1      A      I don't have a company as of yet.

2      Q      Has the village taken estimates from

3   different background check companies about what the cost

4   is?

5      A      No, not yet.

6      Q      Will the village be using a private

7   investigator to do the background checks for solicitor

8   applicants?

9      A      I don't know.  We haven't discussed that yet.

10     Q      Will the background check involve

11  fingerprinting?

12     A      I don't know.

13     Q      So the village doesn't currently have any

14  evidence to support its view that a background check

15  costs a hundred dollars per applicant?

16            MR. RYAN:  Object to the form of that

17        question.

18            You can answer it.

19     A      No.

20     Q      Why did the village decide to implement a

21  background check for solicitor applicants?

22     A      People knock on residents doors.  You want to

23  make sure that people in your neighborhood are -- don't

24  have any bad things in their background.

25     Q      Did the village receive any reports that

Patricia Renner - February 6, 2020

1       asked and answered.

2               You may answer.

3       A       The enforcement personnel for each

4  application, which we only had one, so it's an

5  approximate, it's not a definitive, and you have to keep

6  -- for every application that we -- well, the one

7  application that we've had so far has been as a result

8  of a complaint from a resident which then generated code

9  enforcement.

10              So I'm not going through the phonebook

11 looking for solicitors.  I'm going based on complaints

12 from residents.  So that generates a code enforcement

13 response.  So that's a salary for the code enforcement

14 person, and Tom Smith, the supervisor of the code

15 enforcement, they're being utilized.

16      Q       So Mr. Smith supervises and then there's a

17 full-time individual; correct?

18              MR. RYAN:  Objection.  Asked and answered.

19              You can answer.

20      A       Yes.

21      Q       And then four part-time, is that also

22 correct?

23      A       Yes.

24      Q       What research did the village do about

25 the cost of enforcement of its solicitation code

Patricia Renner - February 6, 2020

1  prior to setting the two hundred dollar fee?

2          MR. RYAN:  Object to the form of the

3      question.

4      A    Yeah, I'm not really sure that I can follow

5  that.

6      Q    Did the village research the cost of

7  enforcement relative to solicitation before it set this

8  two hundred dollar fee?

9      A    No.

10     Q    Have there been any reports from the code

11 enforcement department about how much cost they've

12 incurred related to solicitation?

13     A    No.

14     Q    Who enforces Chapter 171 of the village code?

15          MR. RYAN:  Objection.  It's asked and

16      answered.

17     A    Well, I oversee, and the superintendent of

18 buildings is the one who would send out code

19 enforcement, or he would go out on his own himself.  He

20 has more recently gone out himself rather than send

21 someone.

22     Q    Sometimes will the Nassau County Police

23 Department also be enforcing Chapter 171?

24          MR. RYAN:  Objection to the form.

25     A    Nassau County Police Department does not

Patricia Renner - February 6, 2020

1    don't know why they're charging less.
2        Q     Just to be clear, the village is only
3    guessing about what its administrative costs would be
4    with respect to solicitor licenses?
5              MR. RYAN:  Object to the form of the
6         question.
7              You can answer.
8         A    We're approximating.
9         Q    But it has not done any studies --
10        A    Correct.
11        Q    -- to support it's approximation?
12             MR. RYAN:  Object to the form of the
13        question.  Asked and answered.
14             You can answer.
15        A    Correct.
16             MR. COWAN:  I'm going to look at another
17        town's solicitation notice.  This will be Exhibit
18        10.
19             (Whereupon, Peddlers and Solicitors Ordinance
20        was marked as Plaintiff's Exhibit 10 for
21        identification, as of this date.)
22        Q    This is Exhibit 10.  This is the solicitation
23    ordinance of the Village of Valley Stream.
24             How far away is the Village of Valley Stream
25    from East Rockaway?

151

1               C E R T I F I C A T I O N

2

3          I, DEBORAH THIER, a Notary Public

4   of the State of New York do hereby certify:

5          That the testimony in the within

6   proceeding was held before me at the aforesaid

7   time and place.  That said witness was duly sworn

8   before the commencement of the testimony, and that

9   the testimony was taken stenographically by me,

10   then transcribed under my supervision, and that

11   the within transcript is a true record of the

12   testimony of said witness.

13          I further certify that I am not related

14   to any of the parties to this action by blood or

15   marriage, that I am not interested directly or

16   indirectly in the matter in controversy, nor am I

17   in the employ of any of the counsel.

18          IN WITNESS WHEREOF, I have hereunto set

19   my hand this 18th day of February, 2020.

20

21                    _____

22                         DEBORAH THIER

23

24

25

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

| | | |
|---|---|---|
| **APTIVE ENVIRONMENTAL, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **VILLAGE OF EAST ROCKAWAY,** | § | **No. 2:19-cv-03365-SJF-SIL** |
| **NEW YORK,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

_____

**PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS TO
DEFENDANT, THE VILLAGE OF EAST ROCKAWAY, NEW YORK**
_____

TO:     Defendant, Village of East Rockaway, New York, by and through its counsel of record, John E. Ryan, Esq., RYAN, BRENNAN & DONNELLY LLP, 131 Tulip Avenue, Floral Park, New York, 11001

Plaintiff Aptive Environmental, LLC ("Aptive") serves this First Set of Discovery Requests as authorized by the Federal Rules of Civil Procedure. In accordance with Rule 33, each interrogatory must be answered separately and fully in writing and under oath within 30 days of service. In accordance with Rules 34 and 36, please respond to each request for production or request for admission within 30 days of service.

## DEFINITIONS

As used herein, the following terms shall have the meanings indicated below. In each case, you will be charged with addressing all the elements or questions included in such defined words.

1.     The term **"East Rockaway," "Village," "You" or "Your"** means Defendant, the Village of East Rockaway, New York, and any of its subdivisions, affiliates, or constituent parts, and it includes its past and present agents, employees, and representatives, as well as all individuals and entities who act, have acted, purport to act, or have purported to act on behalf of East Rockaway.

_____

2.      The term "**Aptive**" or "**Plaintiff**" means Plaintiff Aptive Environmental, LLC, and it includes its past and present agents, employees, and representatives, as well as all individuals and entities who act, have acted, purport to act, or have purported to act on behalf of Aptive.

3.      The term "**Fee**" refers to the $200 solicitation license fee referenced in §§ 171-3 and 171-5(A) of Chapter 171 of the Village Code, as amended by Local Law No. 7 of the year 2019 (attached hereto as **Exhibit A**).

4.      The term "**document**" has the broadest meaning ascribed to it under the Federal Rules of Civil Procedure and includes the original and each non-identical copy of any written, printed, typed, filmed, recorded (electronically or otherwise), or other graphic matter of any kind or description, photographic matter, sound recordings, or reproductions, however produced or reproduced, whether draft or final, as well as any summarization, compilation, or index of any documents.  The term "document" includes, but is not limited to, letters, memoranda, reports, evaluations, x-rays, work records, studies, analysis, tabulations, graphs, logs, work sheets, work papers, medical records, correspondence, photographs, videotapes, films, slides, negatives, summaries, files, records, communications, agreements, contracts, invoices, checks, journals, ledgers, telegrams, telexes, handwritten notes, periodicals, pamphlets, computer or business machine printouts, accountants' work papers, accountants' statements and writings, notations or records of meetings, printers' galleys, books, papers, speeches, public relations issues, advertising, materials filed with government agencies, office manuals, employee manuals or office rules and regulations, reports of experts, and any other written matter.  Any electronically stored documents shall be produced in their native format and shall include any metadata or other data tags.

5.      The term "**person**" refers to any individual, corporation, general partnership, limited partnership, joint venture, association, joint-stock company, trust, incorporated organization, government, or political subdivision thereof, and any other non-natural person of whatever nature.

6.      The term "**all**" includes and encompasses "**any**." The term "any" includes and encompasses "all."

7.      The word "**and**" and the word "**or**" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

8.      The term "**communication**," or any variant thereof, means any contact between two or more persons by which any information or knowledge is transmitted or conveyed, or is attempted to be transmitted or conveyed, between two or more persons and shall include, without limitation, written contact by means such as letters, memoranda, telegrams, telecopies, telexes, e-mails, or any other document, and any oral contact, such as face-to-face meetings or telephone conversations.  Any electronically stored communications shall be produced in their native format and shall include any metadata or other data tags.

9.      The phrases "**relate to**," "**concerning**," and "**refer to**" or any variant thereof, include, but are not limited to, the following meanings: referring to, supporting, located in, considered in connection with, bearing, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, concerning, opposing, favoring, connected with, commenting on, in

respect of, about, regarding, discussing, showing, describing, reflecting, analyzing, constituting and being.

10.    Any reference to an individual person, either singularly or as part of a defined group, includes that person's past and present agents, legal representatives, non-legal representatives, personal representatives, attorneys, employees, heirs, successors, and assigns, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of such individual person.

11.    Any reference to a non-natural person includes that person's past and present directors, officers, agents, predecessors, successors, assigns, legal representatives, non-legal representatives, personal representatives, attorneys, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of such non-natural person.

12.    The singular includes the plural and vice versa.

## INSTRUCTIONS

In responding to any of the discovery requests hereinafter set forth, you are instructed as follows:

1.    Please restate each request for admission, interrogatory and request for production before each response. Please give separate responses to each interrogatory or request. If you believe any question is ambiguous, rather than simply stating an objection, counsel for the Village should contact counsel for Plaintiff to attempt to clarify the request.

2.    If you claim a privilege to any response to any interrogatory or request, please identify the nature of the privilege, and provide a privilege log stating the name, current address and present telephone number of each person to whom any privileged communication may have been made, the date, location and circumstances of each privileged communication, and identify any documents or exhibits which may reflect any privileged communication by type of document author, recipient, date and content. Also, identify by name and current address any and all persons having custody or control of the original document or any legible copies thereof.

3.    Your answers to the interrogatories contained herein must be verified, dated, and signed.

4.    Unless otherwise stated, the time-period for these discovery requests is January 1, 2018 through the present.

5.    Where knowledge or information in possession of a party is requested, such request includes knowledge of the party's agents, representatives and, unless privileged, their attorneys.

6.    "Identify" and "identification" when used in reference to an individual person,

means to state their full name, title, and present business or organizational affiliation, including address and telephone number and relationship to you. "Identify" and "identification" when used in reference to an entity other than an individual person, means to state the full name, address, and telephone number of the entity, corporation, organization, partnership, or other appropriate designation. "Identify" and "identification" when used in reference to a document, means to state the date, author (or if different, the signor or signors), addressee, type of document (e.g., letter, memorandum, record, e-mail or other communication, chart, etc.). If any such document was, but is no longer in Defendant's possession or subject to Defendant's control, state what disposition was made of it and the reason for such disposition. In lieu of identifying any document, a true and correct copy thereof may be produced with and incorporated in your answers to the within interrogatories.

7.     "Describe" means to give a full account in words of the person, document, or event including all the relevant characteristics, qualities, and circumstances.

8.     These discovery requests are continuing in character so as to require you to file supplementary answers and responses if you obtain further or different information before trial.

## INTERROGATORIES

**INTERROGATORY NO. 1**:

Identify all documents, witness statements, studies, analyses, data, accounting reports, legislative findings, police reports, Village Clerk memoranda, or other information of any kind upon which the Village relied or which it consulted to determine the $200 Fee amount.

**INTERROGATORY NO. 2**:

Identify each Village employee, Village representative, Village official, or third party involved or consulted by the Village in determining the $200 Fee amount, providing the contact information of each.

**INTERROGATORY NO. 3**:

Identify every background check service and private investigator service, and the fees charged by each for an individual background check, that were considered by the Village in determining the $200 Fee amount.

**INTERROGATORY NO. 4**:

Describe in detail each step involved in the Village Clerk's processing of and decision to approve or deny a solicitor license application.

**INTERROGATORY NO. 5**:

Identify each expense incurred by the Village in processing, investigating, and denying a solicitor license application, listing the approximate dollar amount of each.

**INTERROGATORY NO. 6**:

Identify each expense incurred by the Village in processing, investigating, and approving a solicitor license application, listing the approximate dollar amount of each.

**INTERROGATORY NO. 7**:

Describe in detail each difference between the current version of Village Code Chapter 171 and the current version of Chapter 47 of the Village Code of Floral Park, New York.

**INTERROGATORY NO. 8**:

Identify any calls to the East Rockaway or Town of Hempstead Police Department for service in response to door-to-door solicitation in East Rockaway, including (1) the date and time of the call; (2) whether the call resulted in any action taken by the police; and (3) the nature of any action taken by the police (e.g., arrest, citation, etc.).

**INTERROGATORY NO. 9**:

Describe in detail the process undertaken by the Village in drafting and amending Chapter 171 of the Village Code in 2019. Include in your answer each person involved in the drafting and amendment process, as well as a description of his/her involvement.

## REQUESTS FOR PRODUCTION

1.      All documents and communications reflecting any research, studies, investigations, analysis, accounting reports, memoranda, or other data related to the processing costs incurred by the Village in licensing solicitors.

2.      All documents and communications reflecting any research, studies, investigations, analysis, or accounting reports, memoranda, or other data related to the costs incurred by the Village in enforcing Chapter 171 of the Village Code.

3.      Documents and communications sufficient to show the Village's procedure for conducting criminal history or background checks on applicants for solicitor licenses.

4.      All documents and communications relating to the Village Clerk's procedures for processing and investigating applications for solicitor licenses.

5.      All documents and communications considered by the Village in determining the $200 Fee amount.

6.      All documents and communications considered by the Village in determining the "twenty-five-dollar process fee," found at Code § 171-3.

7.      Documents and communications sufficient to show the Village's total expense incurred in 2018 for licensing solicitors.

8.      Documents and communications sufficient to show the Village's total expense incurred in 2019 for licensing solicitors.

9.      All documents and communications related to or concerning the Village's determination of the $200 Fee amount.

10.     All documents and communications related to or concerning the Village's determination of the "twenty-five-dollar process fee," found at Code § 171-3.

11.     All documents and communications related to or concerning the Village's drafting, consideration, and passage of Local Law No. 7 to amend Chapter 171 of the Village Code.

## REQUESTS FOR ADMISSION

1.     Admit that the Village did not consult any documents or individuals beyond the Village Attorney (John Ryan) in determining the $200 Fee.

2.     Admit that the total processing cost incurred by the Village to issue a solicitor license is $25.

3.     Admit that, until July 2019, the total annual fee for an individual solicitor license in the Village was $20.

4.     Admit that the Village has performed no studies on the total cost involved in administering its solicitor license ordinance.

5.     Admit that the Village did not contact any background check providers or private investigators to acquire information on their fees, prior to setting the $200 Fee amount.

6.     Admit that the Village conducted no research on the administrative costs involved in its solicitor licensing ordinance prior to setting the $200 Fee amount.

7.     Admit that the Village's solicitor licensing procedure does not involve a criminal background check.

8.     Admit that the total time expended by the Village Clerk to review and approve a solicitor license application is less than 30 minutes.

9.      Admit that the current version of Village Code Chapter 171 was drafted solely by Village Attorney John Ryan.

10.     Admit that Village Attorney John Ryan drafted the current version of Village Code Chapter 171 by copying the provisions of Chapter 47 of the Code of the Village of Floral Park, New York.

11.     Admit that the current version of Village Code Chapter 171 is identical to the current version of Chapter 47 of the Code of the Village of Floral Park, New York.

12.     Admit that the Village's total administrative cost for processing and issuing a license is less than $30.

13.     Admit that the Village's administrative cost for processing and denying an application is the same as the cost of processing and approving an application.

14.     Admit that the Village conducts a background check on solicitor license applicants prior to denying their request for a license.

15.     Admit that the fee for the background check conducted by the Village is the same for each solicitor license applicant.

16.     Admit that the Village researched the administrative costs of its solicitor licensing ordinance prior to setting the $200 Fee.

Dated: October 28, 2019                    Respectfully submitted,

                                           Daniel E. DeCicco, Esq.
                                           DARGER ERRANTE YAVITZ & BLAU LLP
                                           116 East 27th Street at Park Avenue
                                           New York, NY 10016
                                           (212) 452-5300

                                           */s/ Clint Cowan*
                                           Kent D. Krabill, admitted *pro hac vice*
                                           Texas Bar No. 24060115
                                           kkrabill@lynnllp.com
                                           Samuel Clinton Cowan, admitted *pro hac vice*

Texas Bar No. 24109760
ccowan@lynnllp.com
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800

**Attorneys for Plaintiff, Aptive
Environmental, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2019, a true and correct copy of the above and foregoing **PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS** was served on all counsel of record via electronic mail on October 30, 2019 as follows:

**<u>Via Electronic Mail:</u>**
**<u>jryan@rbdllp.net</u>**
RYAN, BRENNAN & DONNELLY LLP
131 Tulip Ave.
Floral Park, NY 11001

*Attorney for Defendant*

/s/ *Clint Cowan*
Clint Cowan, admitted *pro hac vice*

---

New York State Department of State
Division of Corporations, State Records and Uniform Commercial Code
One Commerce Plaza, 99 Washington Avenue
Albany, NY 12231-0001

## Local Law Filing

www.dos.state.ny.us/corps

### (Use this form to file a local law with the Secretary of State.)

Text of law should be given as amended. Do not include matter being eliminated and do not use italics or underlining to indicate new matter.

□ County □ City □ Town ☒ Village
*(select one)*

of     East Rockaway

Local Law No.   7    of the year 2019

A local law amending Chapter 171 of the Code of the Incorporated Village of East Rockaway with Regard to Commercial Solicitation.

*(Insert Title)*

Be it enacted by the    Board of Trustees                                                of the
                    *(Name of Legislative Body)*

□ County □ City □ Town ☒ Village
*(Select One:)*

of    East Rockaway                                           as follows:

### Section 1. Legislative Intent

Originally adopted in 1941 and subsequently amended in 1959, 1975, 1987 and 1999, Chapter 171 of the Village Code addresses solicitation within the Village. Due to developments in the law regarding the regulation of commercial solicitation, this Local Law amends Chapter 47 so as to address the licensing requirements for those engaged in the commercial solicitation of the sale of goods and services.

(If additional space is needed, attach pages the same size as this sheet, and number each.)

### Section 2. Chapter 47 As Amended

### Chapter 171

### HAWKING, PEDDLING AND SOLICITING

§ 171-1. License required.

§ 171-2. Application for license.

§ 171-3. License fee.

§ 171-4. Approval of application.

§ 171-5. Restrictions.

§ 171-6. Notice by those not desiring noncommercial solicitation.

DOS-0239-f-l (Rev/ 02/10)

§ 171-7.  Identification cards.

§ 171-8.  Suspension and revocation of license.

§ 171-9.  Issuance of license to vending vehicle.

§ 171-10. Exemptions.

§ 171-11. Severability.

§ 171-12. Penalties for offenses.

§ 171.1   License required.

Except as may be otherwise provided herein, it shall be unlawful for any person, organization, society, association, company or corporation or their agents or representatives, to proselytize, canvass, solicit business, take orders for goods or services or to distribute handbills, pamphlets or other written material or solicit donations or contributions of money or property or financial assistance of any kind upon the streets, in the offices of business buildings, upon private property, by house-to-house canvass or in public places in the Village of East Rockaway without a license previously issued pursuant to this chapter.

§ 171-2.  Application for license.

Application for a license as provided in this chapter shall be in writing and addressed to the Clerk of the Village of East Rockaway and shall contain the following information:

A.    Name, address and purpose of the cause for which the license is sought.

B.    Names and addresses of the officers and directors of the organization, firm, society, association, company or corporation.

C.    Time for which permission is sought and localities and places of activity, giving the date of the commencement and termination of the solicitation.

D.    Legal and tax status of any organization, firm, society, association, company or corporation so applying.

E.    Whether or not any commissions, fees, wages or emoluments are to be expended in connection with such activity.

F.    The name, address, date of birth, social security number, personal photograph(s) and complete driver's license information of the person or persons who shall be conducting the solicitation or otherwise peddling, soliciting or canvassing.

G.    A brief description of the nature of the business and the goods to be sold or services to be performed for which funds are to be solicited and an explanation of the intended use of the funds toward that purpose.

H.    If a vehicle or vehicles are to be used in the solicitation, a description of same, including year, make and model, together with a license plate number, registration certification information and liability insurance information or other satisfactory means of identification.  Such information shall be presented for inspection, upon demand, by the Village Code Enforcement Officer or Police Officer.

I. The names of any other municipalities in which the person registering has solicited or otherwise peddled, solicited or canvassed within the previous 12 months.

J. Such other information as the Board of Trustees may require.

## § 171-3.  License fee.

All applications must be accompanied by a twenty-five-dollar process fee payable to the Clerk, Village of East Rockaway.  Upon approval of the license, a fee of $200.00 shall be paid to the Village of East Rockaway.

## § 171-4.  Approval of application.

Upon receiving such application, the Clerk shall present the same to the Board of Trustees at its next regular meeting, but not later than twenty (20) business days from the date upon which the application is filed.  The Board of Trustees shall approve the application of all bona fide applicants who have complied with the above provisions.  The Board of Trustees may deny the application for any of the following reasons:

A. An investigation reveals that the applicant falsified information on the application.

B. The applicant has been convicted of a felony, misdemeanor or ordinance violation involving a sex offense, trafficking in controlled substances or any violent act against persons or property.

C. The applicant is a person against whom a judgment or administrative agency determination has been entered or a conviction obtained within the five (5) years immediately preceding the date of the application based upon fraud, deceit or misrepresentation.

D. The solicitation involves the sale of illegal substances or services.

E. The applicant does not possess any applicable licenses required by the United States, the State of New York, the County of Nassau or the Town of Hempstead.

F. A determination by the Village Code Enforcement Officer that the location and time of the activities described in the application would endanger the safety and welfare of the applicant or potential customers.

## § 171-5.  Restrictions.

Any license approval granted by the Board of Trustees is subject to the following restrictions:

A. Payment by the applicant of the license fee of $200.00.

B. All activity must be conducted on weekdays and Saturdays only between the hours of 9:00 a.m. and dusk (i.e., 30 minutes after sunset).

C. Any organization, society, association, company or corporation licensed under this chapter shall not have more than ten (10) individuals engaged in the activity at any one (1) time.

D.   The license shall be effective for no more than one (1) calendar year from the date of issuance, and all licenses shall terminate on December 31 in the year in which it was issued. There shall be no pro-ration of fees over the calendar year.

E.   The Board of Trustees shall not grant permission for applicants' activity with respect to those persons who have advised the Board of Trustees in writing that they do not desire solicitation.

## § 171-6. Notice by those not desiring solicitation.

Any person not desiring solicitation upon the person's private property may advise the Board of Trustees by written notice objecting to any or all solicitation or distributions. Such notice shall include the name of the person filing; the address of the property affected; the date of such filing; a statement specifically identifying the organizations or institutions which the person filing objects to permitting entrance onto his private residential property for the purpose of solicitation or distribution; or that all such solicitation or distribution is objected to.

## § 171-7.   Identification cards.

All persons soliciting donations or contributions or proselytizing pursuant to this chapter shall, at all times during such period, carry an identification card issued by the organization, society, association, company or corporation licensed to conduct the solicitation. Each identification card shall be displayed on the outer garment and shall plainly show the name of the person who is soliciting, his or her photograph and the person, organization, society, association, company or corporation on whose behalf such solicitation is being made.

## § 171-8.   Suspension and revocation of license.

Any and all licenses which may be granted by the Board of Trustees pursuant to any part of this chapter may, for cause, be suspended by the Mayor and may be revoked by the Board of Trustees after notice and hearing for any of the following causes:

A.   Fraud, misrepresentation or a false statement contained in the application for a license.

B.   Violation of any of the restrictions imposed on the issuance of such license or on the conduct of any solicitations so licensed.

## § 171-9.   Issuance of license to vending vehicle.

No license shall be issued for any vehicle used for solicitation unless a license therefor is obtained as hereinafter provided:

A.   Every applicant for such a license is required to submit to the Village Clerk a written application supplying under affidavit the following information: that he is a citizen of the United States, has never been convicted of a felony or misdemeanor, is a fit and desirable person and is capable of properly conducting the trade or occupation desired. If satisfied that the applicant possesses the required qualifications, the Village Clerk shall, upon receipt of the license fee, issue a license to the applicant upon payment of the license fee of $200.00. Such

        license shall be issued annually and shall expire on the 31st day of December next succeeding the date of issuance thereof.

B.     Every such licensee using the vehicle shall have and keep the number of his license painted in conspicuous figures on a metallic sign on a conspicuous place on the side of such vehicle, and if any person uses or employs more than one vehicle for such business, he shall procure a separate license for each of such vehicles. All licenses shall be displayed in a conspicuous place within the vending vehicles.

C.     The vending vehicle shall, at all times, be kept in a safe operational condition, including fully operational horn, safety lights and safety arm with stop sign. Upon request, the licensee agrees to allow the vehicle to be inspected by the Village of East Rockaway.

D.     It shall be unlawful to stop for the purposes of soliciting without the warning lights, safety arm and stop sign activated and all amplified sound or noise terminated until the vehicle leaves the location.

E.     Vending shall only take place from the side or rear of the vehicle, away from moving traffic and as near as possible to the curb or edge of the roadway.

F.     There shall be no vending to a person standing in the roadway.

G.     The driver of a vending vehicle shall not back up the vehicle to make or attempt a sale.

H.     The driver of a vending vehicle shall not permit any person under 16 years of age nor any unauthorized person to ride in or on the vehicle.

I.     The vending vehicle shall not be stopped within 50 feet of any street intersection or 500 feet of any school or the Village property; in a metered parking area; or within 50 feet of any district designated residential under the Zoning Code of the Incorporated Village of East Rockaway.

J.     No vending vehicle shall operate before 9:00 a.m. or after dusk in the Village.

K.     Any person found to be in violation of any provisions of this section shall be subject to punishment by a fine not to exceed $250.00 and revocation of the vendor's license.

## § 171-10. Exemptions.

This chapter shall not apply to persons for whom exemption is made by any special provision of law from any of the provisions of this chapter, provided they are not engaged in commercial transactions or the solicitation of funds. This chapter also shall not apply to any duly organized religious corporation, lodge, benevolent or fraternal order, political organization; nor to a local community group or organization such as the Boy Scouts, Girl Scouts, or other such youth organization, or to any political party or candidate. In the event such organizations or individuals are involved in commercial transactions or the soliciting of funds, special permission shall first be obtained from the Board of Trustees for soliciting or canvassing.

## § 171-11. Severability.

If any section, subsection or provision of this chapter or the application of such section, subsection or provision to any person or circumstances shall be held invalid, illegal or unconstitutional, the validity of

the remainder of this chapter and the applicability of such section, subsection or provision to other persons or circumstances shall not be affected thereby.

**§ 171-12. Penalties for offenses.**

Any person violating any provision of this chapter shall be liable for the forfeit and pay a penalty not to exceed $250.00 for each offense.

## Section 3.  Severability

If a court determines that any clause, sentence, paragraph, subdivision, or part of this local law or the application thereof to any person, firm or corporation, or circumstance is invalid or unconstitutional, the court's order or judgment shall not affect, impair, or invalidate the remainder of this local law, but shall be confined in its operation to the clause, sentence, paragraph, subdivision, or part of this local law or in its application to the person, individual, firm or corporation or circumstance, directly involved in the controversy in which such judgment or order shall be rendered.

## Section 4. Effective Date

This local law shall take effect immediately upon filing with the Secretary of State.

**(Complete the certification in the paragraph that applies to the filing of this local law and
strike out that which is not applicable.)**

**1.    (Final adoption by local legislative body only.)**
I hereby certify that the local law annexed hereto, designated as local law No. 7 of 2019 of the
(County)(City)(Town)(Village) of East Rockaway was duly passed by the Board of Trustees on February 5, 2019 in
accordance with the applicable provisions of law.

**2.    (Passage by local legislative body with approval, no disapproval or repassage after disapproval by the Elective
Chief Executive Officer*.)**
I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20___ of
the (County)(City)(Town)(Village) of_____was duly passed by the
_____ on _____20_____, and was (approved)(not approved)
*(Name of Legislative Body)*

(repassed after disapproval) by the _____ and was deemed duly adopted
                                      *(Elective Chief Executive Officer*)*
on _____20___, in accordance with the applicable provisions of law.

**3.    (Final adoption by referendum.)**
I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20___ of
the (County)(City)(Town)(Village) of_____was duly passed by the
_____ on _____20___, and was (approved)(not approved)
*(Name of Legislative Body)*

(repassed after disapproval) by the _____ on_____20___.
                                      *(Elective Chief Executive Officer*)*

Such local law was submitted to the people by reason of a (mandatory)(permissive) referendum, and received the affirmative
vote of a majority of the qualified electors voting thereon at the (general)(special)(annual) election held on_____
20____, in accordance with the applicable provisions of law.

**4.    (Subject to permissive referendum and final adoption because no valid petition was filed requesting
referendum.)**
I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20___ of
the (County)(City)(Town)(Village) of_____was duly passed by the
_____ on _____20_____, and was (approved)(not approved)
*(Name of Legislative Body)*

(repassed after disapproval) by the _____ on _____ 20_____.Such local
                                      *(Elective Chief Executive Officer*)*
law was subject to permissive referendum and no valid petition requesting such referendum was filed as of_____
20___, in accordance with the applicable provisions of law.

---

*    Elective Chief Executive Officer means or includes the chief executive officer of a county elected on a county-wide basis or, if there be
     none, the chairperson of the county legislative body, the mayor of a city or village, or the supervisor of a town where such officer is vested
     with the power to approve or veto local laws or ordinances.

**5.**      **(City local law concerning Charter revision proposed by petition.)**
I hereby certify that the local law annexed hereto, designated as local law No._____ of 20___ of
the City of _____having been submitted to referendum pursuant to the provisions of section
(36)(37) of the Municipal Home Rule Law, and having received the affirmative vote of a majority of the qualified
electors of such city voting thereon at the (special)(general) election held on _____ 20_____, became
operative.

**6.**      **(County local law concerning adoption of Charter.)**
I hereby certify that the local law annexed hereto, designated as local law No._____ of 20___ of      the
County of_____State of New York, having been submitted to the electors as the General Election of
November _____20_____, pursuant to subdivisions 5 and 7 of section 33 of the Municipal Home Rule Law,
and having received the affirmative vote of a majority of the qualified electors of the cities of said county as a unit and
a majority of the qualified electors of the towns of said county considered as a unit voting at said general election,
became operative.

**(If any other authorized form of final adoption has been followed, please provide an appropriate certification.)**
I further certify that I have compared the preceding local law with the original on file in this office and that the same is
a correct transcript therefrom and of the whole of such original local law, and was finally adopted in the manner
indicated in paragraph _____1_____ above.

*[signature]*

Clerk of the county legislative body, City, Town or Village Clerk or
officer designated by local legislative body

Date:____September____, 2019

*(Seal)*

**(Certification to be executed by County Attorney, Corporation Counsel, Town Attorney, Village Attorney or
other authorized attorney of locality.)**

STATE OF NEW YORK
COUNTY OF NASSAU

I, the undersigned, hereby certify that the foregoing local law contains the correct text and that all proper proceedings
have been had or taken for the enactment of the local law annexed hereto.

Signature    *[signature]* John F. Ryan

Title        Village Attorney

~~County~~
~~City~~
~~Town~~ of     EAST ROCKAWAY
Village

Date: _____September 9, 2019_____

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

| | | |
|---|---|---|
| APTIVE ENVIRONMENTAL, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | No.: 2:19-cv-03365-SJF-SIL |
| VILLAGE OF EAST ROCKAWAY, NEW YORK, | § § § | |
| Defendant. | § § | |

## RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS TO DEFENDANT, THE VILLAGE OF EAST ROCKAWAY, NEW YORK

Defendant Incorporated Village Of East Rockaway, New York ("Village") hereby responds as follows:

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all documents, witness statements, studies, analyses, data, accounting reports, legislative findings, police reports, Village Clerk memoranda, or other information of any kind upon which the Village relied or which it consulted to determine the $200 Fee amount.

### RESPONSE:

Other than the work product of the Village Attorney, no such documents exist.

### INTERROGATORY NO. 2:

Identify each Village employee, Village representative, Village official, or third party involved or consulted by the Village in determining the $200 Fee amount, providing the contact information of each.

### RESPONSE:

John E. Ryan, Village Attorney.

**INTERROGATORY NO. 3:**

Identify every background check service and private investigator service, and the fees charged by each for an individual background check, that were considered by the Village in determining the $200 Fee amount.

**RESPONSE:**

Other than the work product of the Village Attorney, none.

**INTERROGATORY NO. 4:**

Describe in detail each step involved in the Village Clerk's processing of and decision to approve or deny a solicitor license application.

**RESPONSE:**

The Village Clerk has not yet approved or denied a solicitation license application under the amended Code.

**INTERROGATORY NO. 5:**

Identify each expense incurred by the Village in processing, investigating, and denying a solicitor license application, listing the approximate dollar amount of each.

**RESPONSE:**

     (a)     Criminal background check ($100)

     (b)     Intake/review of application, etc. ($50 to $75)

     (c)     Maintenance of No-Knock List ($50 to $75)

     (d)     Enforcement ($50 to $75)

**INTERROGATORY NO. 6:**

Identify each expense incurred by the Village in processing, investigating, and approving a solicitor license application, listing the approximate dollar amount of each.

**RESPONSE:**

See Response to Interrogatory No. 5, supra.

2

**INTERROGATORY NO. 7:**

Describe in detail each difference between the current version of the Village Code Chapter 171 and the current version of Chapter 47 of the Village Code of Floral Park, New York.

**RESPONSE:**

There are no substantive differences between the two Codes.  Both Codes were based upon the "model code" provided by Plaintiff's former counsel, Jeremy Fielding, Esq.

**INTERROGATORY NO. 8:**

Identify any calls to the East Rockaway or Town of Hempstead Police Department for service in response to door-to-door solicitation in East Rockaway, including (1) the date and time of the call; (2) whether the call resulted in any action taken by the police; and (3) the nature of any action taken by the police (e.g., arrest, citation, etc.)

**RESPONSE:**

Neither the Village of East Rockaway nor the Town of Hempstead have a police department.

**INTERROGATORY NO. 9:**

Describe in detail the process undertaken by the Village in drafting and amending Chapter 171 of the Village Code in 2019.  Include in your own answer each person involved in the drafting and amendment process, as well as a description of his/her involvement.

**RESPONSE:**

The Village Attorney.  See Response to Interrogatory No. 7, supra.

## RESPONSE TO REQUESTS FOR PRODUCTION

1.     Other than the work product of the Village Attorney, no such documents exist.

2.     Other than the work product of the Village Attorney, no such documents exist.

3.     No such documents exist.

3

4.      No such documents exist.

5.      Other than the work product of the Village Attorney, no such documents exist.

6.      No such documents exist.  The "twenty-five dollar process fee" was mistakenly included in the amended Code.  This scrivener's error will be eliminated when the Code is re-amended next month.

7.      No such documents exist as no solicitation licenses were sought or issued in 2018.

8.      No such documents exist as no solicitation licenses were sought or issued in 2019.

9.      Other than the work product of the Village Attorney, no such documents exist.

10.     No such documents exist.

11.     Other than the work product of the Village Attorney, no such documents exist.

## **RESPONSE TO REQUESTS FOR ADMISSIONS**

1.      Admit.

2.      Deny.

3.      Admit.

4.      Deny.

5.      Deny.

6.      Deny.

7.      Deny.

8.      Deny.

9.      Admit.

10.     Admit.

11.     Deny.

12.     Deny.

13.     Admit.

14.     Admit.

15.     Admit.

16.     Admit.

Dated: January 6, 2020

                                        Respectfully submitted,


                                        _____
                                        John E. Ryan (JR 3995)
                                        RYAN, BRENNAN & DONNELLY LLP
                                        *Attorneys for Defendant*
                                        VILLAGE OF EAST ROCKAWAY,
                                        NEW YORK
                                        131 Tulip Avenue
                                        Floral Park, New York 11001
                                        (516) 328-1100

5

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2020 a true and correct copy of the above and foregoing

**RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS TO
DEFENDANT, THE VILLAGE OF EAST ROCKAWAY, NEW YORK** was served on all

counsel of record via electronic mail on January 6, 2020 as follows:

**Via Electronic Mail**
**ccowan@lynllp.com**
**LYNN PINKER COX & HURST, LLP**
**2100 Ross Avenue, Suite 2700**
**Dallas, Texas 75201**
**(214) 981-3800**

*Attorneys for Plaintiff*
**Aptive Environmental, LLC**

_____
John E. Ryan

6