UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

| | | |
|---|---|---|
| APTIVE ENVIRONMENTAL, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| VILLAGE OF EAST ROCKAWAY, | § | No. 2:19-cv-03365-SJF-SIL |
| NEW YORK, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS
TO THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION**

---

Plaintiff Aptive Environmental, LLC ("Aptive") submits this Response to the Objections filed by Defendant, the Village of East Rockaway (the "Village"). *See* Doc. 59. Aptive incorporates its L.R. 56.1 Statement of Material Facts, L.R. 56.1 Counterstatement of Material Facts, Declaration and attached exhibits, and the evidence previously on file with the Court.[1]

The Report and Recommendation ("R&R") correctly found the following:

(1)    The Village's untimely Attorney Affidavits—submitted with its summary judgment briefing—cannot create a genuine issue of material fact by contradicting the Village's prior sworn testimony and discovery responses; and

(2)    The Village has not provided evidence sufficient to justify the $200 Fee[2] and has not established a factual basis for concluding that the $200 Fee is equal to the cost incurred in processing and issuing solicitation licenses. Therefore, the Fee violates the First Amendment.

---

[1] *See* Docs. 56-1 (Summary Judgment Memorandum), 56-2 (Declaration and Exhibits), 56-3 (Statement of Material Facts), 56-4 (Counterstatement of Material Facts), and 56-7 (Reply Memorandum).
[2] *See* Doc. 44-6 (The Village's $200 solicitation license fee (the "Fee"), found at Village Code §§ 171-3 and 171-5(A)).

Accordingly, the R&R correctly recommended that the Court (i) deny the Village's Motion and (ii) grant Aptive's Motion, finding the Fee unconstitutional under the First Amendment. The Court should adopt the R&R in its entirety.

## STANDARD OF REVIEW

Title 28 U.S.C. § 636(b)(1)(C) provides that a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). After reviewing a report, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "[I]n providing for a "de novo determination" ... Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676 (1980); *C.A., Inc. v. Stonebranch, Inc.*, No. 12-CV-5988 SJF, 2014 WL 931223, at *2 (E.D.N.Y. Mar. 7, 2014).

## ARGUMENT

**A.      The R&R Correctly Found that the Village Has Not Raised a Genuine Issue of Material Fact.**

A municipality may charge a license fee for First Amendment activity. But only fees precisely tailored to defray administrative expenses are permissible. *Eastern Connecticut Citizens Action Group v. Powers*, 723 F.2d 1050, 1056 (2d Cir. 1983). A municipality's license fee must be "***designed to defray*** (and [] ***not exceed***) the administrative costs of regulating the protected activity."[3] *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2d Cir. 2013) (emphasis added). As the

---

[3] *See also Int'l Women's Day March Planning Comm. v. City of San Antonio,* 619 F.3d 346, 369–71 (5th Cir. 2010); *Sullivan v. City of Augusta,* 511 F.3d 16, 37–38 (1st Cir. 2007); *Nationalist Movement v. City of York,* 481 F.3d 178, 183 (3d Cir. 2007); *Mainstream Mktg. Servs., Inc. v. F.T.C.,* 358 F.3d 1228, 1247–48 (10th Cir. 2004); *N.E. Ohio*

proponent of the Fee, the Village bears the evidentiary "burden of proving the fee equals the costs of its regulatory scheme." *Turley v. New York City Police Dep't*, 988 F. Supp. 667, 674 (S.D.N.Y. 1997). A fee exceeding the amount necessary to offset these costs is unconstitutional. *E. Connecticut Citizens Action Grp. v. Powers*, 723 F.2d at 1056 ("The court below found no evidence that the administrative fee charged and to be charged to Aptive is equal to the cost incurred or to be incurred by defendants . . . Absent such a showing, DOT's administrative fee cannot be sustained.").

### 1.    The R&R Correctly Found No Fact Issue Because the Village Failed to Submit a L.R. 56.1 Statement and Failed to Controvert Aptive's L.R. 56.1 Statement.

The Village filed no Statement of Material Facts. Nor did it attempt to controvert Aptive's Statement of Material Facts, filing no Counterstatement under L.R. 56.1. Instead, the Village simply submitted two affidavits from the Village Attorney, restating its conclusory position that the Fee is justified by categories of speculative administrative expenses devised out of thin air. *See* Docs. 55-1 – 55-4; 55-15 – 55-16. But these documents cannot belatedly create a fact issue.

***First***, the Village's Affidavits do not correspond to, and fail to oppose, any specific numbered paragraph in Aptive's Statement of Material Facts. Local Civil Rule 56.1(c) states:

> Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion ***unless specifically controverted*** by a correspondingly numbered paragraph in the statement required to be served by the opposing party.

(emphasis added). The Second Circuit has instructed that the Local Rule 56 "requirement is strict." *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009). In the typical case, failure to respond to a Rule 56.1 statement results in a grant of summary judgment once the court assures

---

*Coal. for Homeless v. City of Cleveland,* 105 F.3d 1107, 1109–10 (6th Cir. 1997); *Nat'l Awareness Found. v. Abrams,* 50 F.3d 1159, 1165–66 (2d Cir. 1995); *Ctr. for Auto Safety, Inc. v. Athey,* 37 F.3d 139, 144–46 (4th Cir. 1994); *South–Suburban Hous. Ctr. v. Greater S. Suburban Bd. of Realtors,* 935 F.2d 868, 897–98 (7th Cir. 1991).

itself that Rule 56's other requirements have been met. *Id.* at 417-18; *see also Luizzi v. Pro Transport Inc.*, No. 02 CV 5388, 2009 WL 252076, at *2 (E.D.N.Y. Feb. 2, 2009) ("Where the party opposing a motion for summary judgment fails to submit a proper counter-statement of material facts, controverting the moving party's statement, courts have deemed the moving party's statement of facts to be admitted and have granted summary judgment in favor of the moving party on the basis of the uncontroverted facts.").

The Village's Attorney Affidavits wholly fail to respond to Aptive's Statement of Material Facts. The Village has not listed a single paragraph from Aptive's Statement that the Village claims to be in dispute, nor has it cited admissible evidence creating a dispute. The Court should rely solely on the undisputed material facts presented by Aptive, which are supported by admissible evidence from the record. The R&R correctly found no genuine fact issue.

**Second**, the Village's Affidavits are not based on personal knowledge, which is a fundamental requirement of Rule 56(c)(4). *See* Docs. 55-1, 55-15. This evidence is therefore improper for summary judgment. *Rohlehr v. Brookdale Univ. Hosp. & Med. Ctr.*, 390 F. Supp.2d 207, 208 (E.D.N.Y. 2005) ("Affidavits in opposition to summary judgment must be made on personal knowledge . . . An attorney affidavit does not meet this standard and is insufficient to defeat a summary judgment motion. . . . Accordingly, facts recited in the defendant's Rule 56.1 statement are deemed admitted, to the extent they are supported by citation to admissible evidence."). The R&R properly found that the Village's Affidavits failed to identify genuine issues of material fact in the record. *Knight v. Nassau Cty.*, No. 17CV0958SFJSIL, 2019 WL 3817392, at *5 (E.D.N.Y. Aug. 14, 2019) ("Naturally, any *factual statements must cite to the record with specificity* in the first instance.") (emphasis original).

2.      **The R&R Correctly Excluded the Attorney Affidavit Portions that Contradicted the Village's Prior Testimony and Discovery Responses.**

The Village's Affidavits baldly contradict its sworn 30(b)(6) testimony and discovery responses. "[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* On this basis, the R&R correctly excluded the following Affidavit assertions for directly contradicting the Village's testimony and discovery responses:

- <u>Affidavit Assertions</u>: Costs and Estimates of Criminal Background Checks.

The R&R properly excluded the Attorney Affidavit statements on background-check fees. The Village attempted to introduce evidence on a $100 background check fee based on ipse dixit references to its attorney's "forty years of practice," without any admissible citations to the record about *which* background check services he cites, or *how much* each of those background checks will cost. *See* Doc. 59, at 2 (citing Doc. 55-1, ¶ 7). The Village further cites a Declaration concerning general background check fees on Long Island. Doc. 59, at 2-3 (citing Doc. 55-15, ¶ 9). The Village then implies that it relied on this information in setting its overall $200 Fee.

But these statements directly contradict the Village's sworn testimony that it had ***no evidence*** supporting its background-check estimate. *See* Doc. 56-2, Ex. A, Village Dep. 118:14-119:19. Moreover, evidence of what *other* Long Island municipalities charge is irrelevant to the *Village's* administrative costs. Under the First Amendment, the municipality must provide evidence of what *that municipality* (not others) considered when enacting the speech restriction.

*Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1315 (11th Cir. 2003) ("Absent a record sufficient to support the City's claim that its licensing fee is constitutionally reasonable, we hold that the present fee is unconstitutional.").

The Village testified that it does not have ***any evidence*** about the cost of background checks and indeed, has not even researched which background check companies it may eventually use. Doc. 56-2, Ex. A, Village Dep. 118:14-119:19. The Village conceded under oath that it "doesn't currently have any evidence to support its view that a background check costs a hundred dollars per applicant." *Id.* 119:13-19. And the Village also testified it had not "taken estimates from different background check companies about what the cost is" and "doesn't currently have any evidence to support its view that a background check costs a hundred dollars per applicant." *Id.* 118:14-119:19. The Village conceded that it is unaware of any documents or communications that would show the Village's procedure for conducting a criminal background check. *Id.* 78:16-20; 76:2-5. And the Village further admitted that there has not been any background check done for solicitor licenses in the past three years. *Id.* 27:2-10. If the Village has not researched *which* background check it will employ, or *what* the background check will involve, it cannot make a credible estimate of the expense. Pure conjecture about the cost of a background check—based solely on the Village Attorney's "years of practice"—cannot satisfy the First Amendment standard or create a fact issue. *See* Doc. 55-15, ¶ 9; Doc. 55-1, ¶ 7.

Aptive also requested this very information in Interrogatory No. 3, which asked the Village to "Identify every background check service and private investigator service, and the fees charged by each for an individual background check, that were considered by the Village in determining the $200 Fee amount." Doc. 56-2, Ex. B,[4] at 4 (Interrogatory 3). "If a party fails to provide

---

[4] As used herein, Ex. A, Ex. B and Ex. C refer to the exhibits in the Declaration in support of Plaintiff's Cross-Motion for Summary Judgment. Doc. 56-2.

information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Village did not object and responded to Interrogatory No. 3: "Other than the work product of the Village Attorney, none." Doc. 56-2, Ex. C, at 2 (Response to Interrogatory 3). The Village did not provide this background-check information during discovery, despite being requested. The Village cannot use attorney affidavits—which it never produced in discovery—to introduce this material now.

- Affidavit Assertions: Village Employee Salaries, Hourly Rates, and Time Expended in Licensing.

The R&R properly excluded the Attorney Affidavit statements on Village employee salaries, hourly rates, and hours spent on solicitation licenses. The Village attempted to introduce, through Affidavits, an estimate of 2 hours for Village employees to create a license. Doc. 55-1, ¶¶ 8-9. The Village further attempted to introduce evidence about the yearly salaries and hourly rates of Village employees, in support of its license fee estimates. These estimates are speculative and directly contradict prior testimony and discovery responses.

The Village testified earlier that it does not know the amount of time it would take to issue a solicitor license, because it has not yet issued any licenses. Doc. 56-2, Ex. A, Village Dep. 28:20-29:9. The Village testified it did not perform any studies or analyses to support its estimates as to the Fee amount. *Id.* at 135:2-15. Aptive also requested this specific information in Interrogatory No. 4, which asked Defendant to "Describe in detail each step involved in the Village Clerk's processing of and decision to approve or deny a solicitor license application." Doc. 56-2, Ex. B, at 5 (Interrogatory 4). The Village did not object and instead responded: "The Village Clerk has not yet approved or denied a solicitation license application under the amended Code." Doc. 56-2, Ex. C, at 2. Under Rule 37, the Village may not belatedly introduce evidence that was previously

requested in discovery, simply to defeat summary judgment. Nor may the Village contradict its previous testimony that it has **no idea** how long it takes to create a license. Doc. 56-2, Ex. A, Village Dep. 28:20 – 29:9. The R&R properly excluded these Affidavit statements as contradicting prior discovery responses, and correctly found no genuine issue of material fact.

**B.    The R&R Correctly Found the Fee Unconstitutional.**

The R&R correctly found that the Fee violates the First Amendment. The Village failed to present sufficient documentary or testimonial evidence to show that the Fee is designed to defray, and does not exceed, the administrative costs of regulating solicitor licensing. Rather, through attorney affidavits alone, the Village offers only generalizations and unsupported estimations as to how the Village decided on the Fee amount.

Courts have repeatedly invalidated First Amendment license fees where the municipality could not produce any accounting reports or other analyses showing the precise amount of administrative expense supposedly defrayed by the license fee. *E. Connecticut Citizens Action Grp. v. Powers*, 723 F.2d 1050, 1056 (2d Cir. 1983) ("The court below found no evidence that the administrative fee charged and to be charged to plaintiffs is equal to the cost incurred or to be incurred by defendants . . . Absent such a showing, DOT's administrative fee cannot be sustained."); *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1314-15 (11th Cir. 2003) (enjoining license fee for First Amendment adult entertainment expression because the city had **no studies** to support its claim that the fee amount matched its administrative expenses and the City conceded "that it ha[d] conducted **no real accounting** of the costs of administering its licensing program.") (emphasis added).

Under the First Amendment, "[i]t is the government's burden to demonstrate that its licensing fee is reasonably related to recoupment of the costs of administering the licensing

program." *Fly Fish*, 337 F.3d at 1314; *see also E. Connecticut Citizens Action Grp. v. Powers*, 723 F.2d 1050, 1056 (2d Cir. 1983); *Northeast Ohio Coalition for the Homeless v. Cleveland*, 105 F.3d 1107, 1110 (6th Cir. 1997) (same); *Fernandes v. Limmer*, 663 F.2d 619, 633 (5th Cir. 1981) (same); *Moffett v. Killian*, 360 F. Supp. 228, 232 (D. Conn. 1973) (same). "Where, as here, a municipal ordinance imposes a fee which threatens to interfere with a right guaranteed by the First Amendment, the burden of proving the reasonableness of that fee rests with those seeking to enforce it." *Chester Branch, Nat'l Ass'n for Advancement of Colored People v. City of Chester*, 253 F. Supp. 707, 712 (E.D. Pa. 1966).

The R&R correctly observed that the Village adduced no evidence demonstrating it designed the $200 Fee to defray the precise amount of its administrative expenses related to solicitation. The Village can make no showing that the Fee equals the costs associated with its solicitation regulatory scheme. Indeed, the Village has not even *calculated* any of its administrative expenses prior to setting its ordinance—and still has not done so. *See* Doc. 56-2, Ex. A, Village Dep. 118:14-119:19; 125:6-9; 135:2-15. The Village has adduced **no evidence** to support the Fee. It has no witness statements, studies, analyses, accounting reports, legislative findings, police reports, memoranda, or other data to support its Fee amount. *See* Doc. 56-2, Ex. B, at 6 (RFP 1); Ex. C, at 3 (Response to RFP 1); Ex. B, at 6 (RFP 2); Ex. C, at 3 (Response to RFP 2); Ex. B, at 6 (RFP 5); Ex. C, at 4 (Response to RFP 5).

The Village confirmed this lack of research, studies, investigations, analysis, accounting reports, memoranda, or other data in the 30(b)(6) deposition. There, the Village testified unequivocally that no documents exist to support its contention that $200 represents the administrative processing costs of each solicitor license. Doc. 56-2, Ex. A, Dep. 75:13-18. The

Village further testified it had no evidence supporting its claims about enforcement costs relative to this Ordinance. *Id.* 75:19-76:1.

The Village also conceded that it performed no research, conducted no studies, and did no investigation of its administrative expenses prior to setting the $200 Fee amount.[5] *First*, the Village failed to consult the Clerk's office prior to setting the Fee—even though that office handles all the administration for solicitation licenses and is the only office that would know the administrative expenses of licensing. Doc. 56-2, Ex. A, Village Dep. 60:2-63:13; *see also* Ex. C, at 1-4 (RFA 1; Interrogatories 1, 2, and 9) (never consulted with Village Clerk before enacting the Fee). The Village cannot carry its burden to show a tight fit between the Fee and its actual administrative expenses, when it failed to consult the only office possessing the information on such expenses.

*Second*, the Village wholly failed to conduct any other types of studies into its administrative expenses for processing licenses or regulating solicitation. Doc. 56-2, Ex. A, Village Dep. 78:3-8. The Village also has no documents or communications that show any research or studies or investigations or analyses or accounting reports or memoranda or other data to support its figures regarding enforcement costs for Chapter 171 of the Village Code. Ex. A, Village Dep. 75:19-76:1; *see also id.* 78:9-20. The Village did not research enforcement costs prior to enacting the $200 Fee amount. *Id.* 124:24-125:9. And the Village does not know how much it spent on enforcement costs related to solicitation in the years 2017–2019, and it has conceded that the amount *could even be zero*. *Id.* 45:5-46:10. Without a record that it considered concrete evidence of administrative costs for processing licenses or enforcing its solicitation ordinance—or even

---

[5] In *Fly Fish, Inc.*, the Eleventh Circuit enjoined a license fee for First Amendment adult entertainment expression because the city had no studies to support its claim that the fee amount matched its administrative expenses. 337 F.3d at 1315. The City conceded "that it ha[d] conducted no real accounting of the costs of administering its licensing program." *Id.* Instead, the City tried to justify its license fee (as the Village does here) based solely on the ipse dixit argument of counsel that the fee was "reasonable as a matter of law." *Id.* The Court rejected this justification and extended no deference to the municipality: "*Absent a record sufficient to support the City's claim that its licensing fee is constitutionally reasonable*, we hold that the present fee is unconstitutional." *Id.* (emphasis added).

showing that it consulted the very people charged with administration (the Clerk)—the Village cannot demonstrate the Fee is constitutional.

*Third*, the Village's estimates of different categories of expenses—***all of which were made months after the $200 was passed into law***—cannot carry its burden to show the Fee is reasonably related to actual administrative costs of licensing solicitors. None of the Village's recently concocted expense categories appeared in the September 2019 ordinance that enacted the $200 Fee, demonstrating that none of these categories were considered at the time of setting the Fee amount. *See* Doc. 44-6. ***Only after*** Aptive challenged the Fee did the Village amend its ordinance to state that the $200 Fee covers the following types of expenses: a) processing costs; b) criminal background checks; c) maintenance of the "No Knock" list; and d) enforcement of the provisions of this chapter of the Code. *See* Doc. 55-1; Doc. 55-2 (§ 171-3) (**enacted February 10, 2020**).

Courts have repeatedly invalidated fees when the purported administrative costs are speculative. *See Baldwin v. Redwood City*, 540 F. 2d 1360, 1371-72 (9th Cir. 1976) (city's cost estimates inadequate because the assumptions underlying them were unreasonable, bearing no relationship to actual time spent inspecting or removing signs; the city's purported inspection and removal fees were "essentially arbitrary, bearing no relationship" to the actual cost of inspection); *Bayside Enterprises, Inc. v. Carson*, 450 F. Supp. 696, 705–06 (M.D. Fla. 1978) ("Although the City's witnesses explained their cost projections in terms of fixed manpower and equipment needs, none of the witnesses was able to tie his particular projections to specific administrative requirements in anything other than a speculative manner."); *Moffett v. Killian*, 360 F. Supp. 228, 232 & n.6 (D. Conn. 1973) (administrative costs based on estimates of clerk's annual salary were speculative because the "State failed to prove exactly what she did, and it leaves entirely to speculation whether or not all of her work was essential for the purposes of [the regulation]").

11

Here, the R&R correctly observed that the Village's cost estimates are nothing more than a guess. The Village admitted that it does not know any of its administrative costs because ***it has never licensed a solicitor***. Doc. 56-2, Ex. A, Village Dep. 113:10-21. The Village admits it has no way of knowing how much time (and therefore how much expense) it will take to issue a solicitor license. *Id.* 28:20-29:9. As the Village admitted, it is only providing "an approximation" because it has "performed no studies" as to its administrative costs for solicitors. The estimates about component costs of the overall $200 Fee are pure speculation. *Id.* 135:2-15; *see also id.* 43:3-12 (Village concedes no way to know cost to issue a solicitor license because Village has never issued one); *id.* 106:13-24 ("seventy-five dollar" enforcement cost estimate not made by Village Clerk; Village Clerk not consulted in making that approximation); *id.* 45:5-46:10 (Village has no knowledge of enforcement costs from 2017-2019 and conceded amount "could be zero").

The Court should also disregard the Village's administrative cost estimates as speculation because the Village did not even compute the $200 Fee with East Rockaway specifically in mind. The Village has conceded—in its Objections and at deposition—that it copied the current Fee ***verbatim*** from another municipality's ordinance without any consideration of the Village's administrative costs. Doc. 59, at 4; Doc. 56-2, Ex. A, Village Dep. 71:8-72:2. Because the Village copied and pasted the Fee from another municipality, the Court should reject any post-hoc justifications based on administrative expenses. All these newly asserted "costs" are speculation, created after the fact to justify a fee that was set without study, without research, without investigation, and without a constitutional basis. It is the Village's burden to justify the $200 amount with respect to the specific costs of this municipality. *Eastern Connecticut Citizens Action Group v. Powers*, 723 F. 2d 1050, 1056 (2nd Cir. 1983). It has not done so. The R&R properly recommended summary judgment for Aptive.

## CONCLUSION

The R&R correctly found the Fee unconstitutional under the well-established First Amendment standard. The Fee is arbitrary, which confirms its true intent: to discourage—or prohibit entirely—solicitation in the Village. The Village has now twice defied the Court's orders to allow reasonable commercial solicitation within its borders. The Village has adduced no evidence, and performed no investigation, prior to setting this Fee. Any cost computations offered by the Village came after discovery closed and have no evidentiary support. The Court should therefore declare the Fee, found at Village Code §§ 171-3 and 171-5(A), unconstitutional as violative of the First Amendment, and permanently enjoin enforcement of Village Code §§ 171-3 and 171-5(A).

Dated: January 22, 2021             Respectfully submitted,

<div style="margin-left:40%">

Daniel E. DeCicco, Esq.
DARGER ERRANTE YAVITZ & BLAU LLP
116 East 27th Street at Park Avenue
New York, NY 10016
(212) 452-5300

*/s/ Kent D. Krabill*
Kent D. Krabill, admitted *pro hac vice*
Texas Bar No. 24060115
kkrabill@lynnllp.com
Samuel Clinton Cowan, admitted *pro hac vice*
Texas Bar No. 24109760
ccowan@lynnllp.com
**LYNN PINKER HURST**
**& SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800

**Attorneys for Plaintiff**
**Aptive Environmental, LLC**

</div>

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 22, 2021, a true and correct copy of the above and foregoing was served on all counsel of record via ECF, and that a Judge's Copy will be provided to Chambers pursuant to the Individual Rules.

*/s/ Kent D. Krabill*
Kent D. Krabill